UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LaSHAWNDA YOUNG, as Special Administrator, of the Estate of Divonte Young<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, et al.,<br><br>Defendants. | Case No. 13 C 5651<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Plaintiff LaShawnda Young brings this action against defendants City of Chicago and its employees, Officers Orlando Calvo, Jerome Hoffman, Joseph Mirus, and Otis Watts (collectively, "Defendants") for the shooting death of her son, Divonte Young. Ms. Young sues Defendants individually and as the Special Administrator of her deceased son's estate. Before the court is Defendants' motion to dismiss certain allegations of Ms. Young's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

**I. BACKGROUND**

The fatal incident occurred on the morning of August 9, 2012.[1] Officers Watts, Hoffman, Mirus, and Calvo were conducting surveillance on a home located at the 6200 block of South Honore Street in Chicago, Illinois. Watts sat alone in an unmarked police vehicle outside of 6301 South Honore Street, while the other three officers were "within the same vicinity." 3d Am. Compl. ¶ 13, ECF No 55.

---

[1] The court accepts the allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013).

1

Meanwhile, Divonte Young, an unarmed, twenty-year old male, was on his way to a convenience store located on 63rd Street near Honore Street. Young was approaching the intersection of 63rd Street and Honore Street when the sound of apparent gun fire rang out. He and other individuals in the area reacted by running for cover. Young headed southbound away from the shots through an empty lot across the street from the intersection.

Officer Watts's vehicle was parked on the east side of Honore Street near the corner of 63rd Street. As Young fled, Officer Watts stepped out of his car, stood on its running board, and discharged approximately fifteen bullets toward Young. One of the bullets struck Young in the back.

After firing his gun, Officer Watts did not attempt to follow Young, determine whether Young was shot, or attend to Young's emergency medical needs. Instead, Officer Watts returned to his vehicle and put on a bullet-proof vest. He then left the vehicle and displayed his Chicago Police Department ("CPD") badge to persons who had gathered on the street.

"[W]ithin minutes of [Officer] Watts unloading his gun," several other CPD officers arrived at the scene, including Officers Hoffman, Mirus, and Calvo. 3d Am. Compl. ¶ 26. None of the officers "attempted to attend to [Young's] emergency needs . . . as he lay dying on the ground." *Id*. Instead, a family friend ran to Young's aid. Young conveyed to the family friend that he could not breathe. Eventually, Young died on the street. He did not receive any medical attention before dying.

Based on these allegations, Ms. Young brings a two-count complaint. Count I is for "Claims Under 42 U.S.C. § 1983," Count II for "Claims Under State Law."

## II. LEGAL STANDARD

Rule 12(b)(6) permits a defendant to assert by motion that the plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To withstand a Rule 12(b)(6) motion, the complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests. . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be sufficient "to raise a right to relief above the speculative level. . . ." *Id. See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (quotation marks omitted).

## III. DISCUSSION

### A. Ms. Young's Individual Claim Under § 1983 for Loss of Companionship

Ms. Young alleges that Defendants violated § 1983 by depriving her and Divonte Young's heirs of their constitutional right to companionship and society with Divonte Young. *See* 3d Am. Compl. ¶ 54. The crux of Defendants' motion to dismiss is that the purported constitutional right Ms. Young seeks to invoke on her own behalf does not exist. It is undisputed that Ms. Young's purported constitutional right emanates from the Seventh Circuit decision, *Bell v. City of Chicago*, 746 F.2d 1205 (7th Cir. 1984). In *Bell*, the court held that a parent's substantive due process right to associate with his adult son was violated when the son was killed by police. *Id.* at 1243-44.

The problem for Ms. Young is that *Bell* is no longer good law, as it was overruled by *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). Like Ms. Young, the plaintiff in *Russ* sought recovery under § 1983 for the death of an adult child who was shot and killed by police. The

*Russ* parents subsequently sued the individual officers involved in the incident for, *inter alia*, violating their right to associate with their son.

The issue—whether the Constitution accorded the parents a right to relief for the loss of society and companionship of their adult son—provided the court with an occasion to reexamine its holding in *Bell*. *Id.* at 783. At the outset, the court observed that in the wake of *Bell* no other court had "allowed a parent to recover for the loss of his relationship with his child" in circumstances similar to those in *Bell*. *Id.* at 787-88. "That *Bell* [stood] alone" gave the court pause that it had erred in its reasoning. *Id.* at 788. Upon reconsideration, the court concluded that parents have "no constitutional right to recover for the loss of society and companionship" of an adult child. *Id.* at 791. The court thus overruled *Bell* "insofar as it recognized a constitutional right to recover for the loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action." *Id.*

Applied here, *Russ* dictates that Ms. Young cannot state a claim for the alleged violation of her interest in companionship and society with her adult son. To establish a violation of her substantive due process rights, Ms. Young needed to allege "intentional action by the state to interfere with a familial relationship." *Id.* at 790. But there is no such allegation in the complaint. As such, *Russ* precludes Ms. Young from asserting a § 1983 claim for lost companionship with her son.

Attempting to avoid the precedent of *Russ*, Ms. Young advances several unavailing arguments. First, she maintains that the "*Russ* court only limited claims by parents of adult children, [but] it did not foreclose those claims." Resp. at 3, ECF No. 61 (emphasis in original). Ms. Young, however, misconstrues the holding in *Russ*. Of course, "parents and adult children have *some* constitutionally protected interest in being able to associate with each other." *Jones*

*v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006) (emphasis in original). But *Russ* teaches that no substantive due process right is implicated in this case, since no allegation suggests that Officer Watts shot Ms. Young's son "[f]or the specific purpose of terminating [his] relationship with his family." *Russ*, at 790. *See also Thompson v. City of Chicago*, 472 F.3d 444, 452 n.25 (7th Cir. 2006) (noting that district court properly dismissed § 1983 claim by decedent's mother and wife that was predicated on *Bell*, 746 F.2d at 1243-47, because they did "not even allege[] that [the decedent] was killed 'for the specific purpose of terminating [the decedent's] relationship with his family'") (quoting *Russ*, 414 F.3d at 790); *Moore v. City of Chicago*, No. 13-cv-483, 2014 U.S. Dist. LEXIS 73650, at *20 n.3 (N.D. Ill. May 30, 2014) (remarking that plaintiffs "improperly [sought] damages on behalf of [decedent's] heirs for loss of society and companionship"); *Kelderhouse v. Fox*, No. 05-cv-4503, 2006 U.S. Dist. LEXIS 66096, at *8-9 (N.D. Ill. Aug. 31, 2006) (dismissing parent's § 1983 claim for loss of society and companionship with adult child, as plaintiff acknowledged that "the *Russ* case is controlling" and agreed to voluntary dismissal).

Second, Ms. Young contends that *Russ* is distinguishable because the shooting of her son was more egregious and less justified than the shooting in *Russ*. Whereas Ms. Young's son was unarmed and shot in the back while running for safety, she argues that the decedent in *Russ* was killed following an "extensive police chase" and only after the police attempted "to reign-in a moving traffic hazard." *See* ECF No 61 at 5 n.2. But these factual distinctions are immaterial. The key commonality between Ms. Young's § 1983 claim and that of the parents in *Russ* is the liberty interest both parents aimed to protect: their interest in associating with their adult child. Whether one shooting was more justified, or one decedent more culpable, is irrelevant to the conclusion that the parental interest does not equate to a constitutional right.

Third, Ms. Young asserts that the "appropriate test" for determining whether a government actor has violated an individual's due process rights is whether the actor "has abused its power in a way that 'shocks the conscience.'" ECF No. 61 at 4 (quoting *Russ*, 414 F.3d at 789) (quoting *County of Sacramento v. Lewis*, 523 U.S. 88, 846 (1998)). In making this assertion, however, Ms. Young cites *Russ* out of context. The passage Ms. Young references was part of the *Russ* court's summary of the several, "confus[ing]" frameworks in which the Supreme Court has analyzed substantive due process claims. *Id.* at 789. Ultimately, the *Russ* court found it unnecessary to "resolve the issue of precisely what level of scrutiny should apply to allegations of government interference with the parental liberty interest." *Id.* at 789. "Under any standard," the court posited, "finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court." *Id.* at 789-790. Accordingly, regardless of the test Ms. Young applies to her allegations, she cannot state a claim for her loss of familial relationship with her adult son, Divonte Young. Ms. Young's individual claim under § 1983 is thus dismissed with prejudice.

**B. Claim by Ms. Young as Administrator of the Estate for Failure to Intervene**

In Count I of the Complaint, Ms. Young claims that Defendants violated § 1983 by failing to intervene and prevent her son's death. An officer "who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 423 F.3d 763, 774

(7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)) (emphasis in original). "The Seventh Circuit has explained that a 'realistic opportunity' to intervene may exist when an officer could have called for help, or when an officer could have cautioned the officer using excessive force to stop." *Powell v. City of Berwyn*, No. 13-cv-1859, 2014 U.S. Dist. LEXIS 131365, at *23 (N.D. Ill. Sept. 19, 2014) (quoting *Abdullahi*, 423 F.3d at 774). "A claim of failure to intervene almost always implicates questions of fact for the jury." *Powell*, 2014 U.S. Dist. LEXIS 131365, at *23 (citing *Abdullahi*, 423 F.3d at 774); *see also Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997) ("Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.").

Here, Ms. Young has sufficiently pled a claim for failure to intervene. She alleges that Officers Hoffman, Mirus, and Calvo "arrived at the scene within minutes of [Officer] Watts unloading his gun in the direction of Divonte Young," and that none of the officers "attempted to attend to [Divonte Young's] emergency needs . . . as he lay dying on the ground." 3d Am. Compl. ¶ 26. Defendants, for their part, maintain that this allegation is self-defeating; they claim that it shows they lacked a "realistic opportunity" to prevent the shooting, since Officers Hoffman, Mirus, and Calvo were not present "at the scene" when Officer Watts discharged his weapon, and Officer Watts could not have intervened to stop himself from shooting.

Regardless of whether Officers Hoffman, Mirus and Calvo could have prevented the shooting, Ms. Young still states a claim against Defendants for their alleged failure to intervene. She alleges that each officer could have called emergency medical care to the scene to save her

son after the shooting, but before he bled to death.[2] *See Miller v. City of Harvey*, No. 13-cv-95709, 2014 U.S. Dist. LEXIS 95709, at *10-11 (N.D. Ill. July 15, 2014) (denying motion to dismiss failure to intervene claim based, in part, on officer's failure to call for help after shooting the plaintiff's dog, causing the animal to bleed to death). Accepting Ms. Young's allegations as true and drawing all reasonable inferences in her favor, the court finds that her claim for failure to intervene should go forward. Whether any of the defendant officers had a reasonable opportunity to call for help and save Divonte Young's life after the shooting is a fact issue that cannot be resolved the pleading stage. Defendants' motion to dismiss Ms. Young's claim for failure to intervene is denied.

### C. Ms. Young's Claim for Intentional Infliction of Emotional Distress

In Count II of the Complaint, titled "Claims Under State Law," Ms. Young alleges that "Defendant [Watts] intended [for his] conduct to inflict severe emotional distress upon Divonte Young and his heirs and knew that his conduct would cause Divonte Young and his family severe emotional distress." 3d Am. Compl. ¶ 63. Defendants move to dismiss this claim for intentional infliction of emotional distress ("IIED") inasmuch as Ms. Young pleads it on her own behalf.[3]

---

[2] In their reply brief, Defendants assert that "Plaintiff confuses a failure to provide medical care claim, which has not been plead, with a claim for failure to intervene." Reply at 3, ECF No. 62. However, Defendants themselves cite to *Abdullahi*, 423 F.3d at 774, which permits a claim for failure to intervene to proceed if the plaintiff has alleged that an officer who was present could have "called for help." There is nothing confusing about Ms. Young's allegation that Defendants could have called for help after Officer Watts shot her son. The court credits this allegation as putting Defendants on notice of a claim for failure to intervene.

[3] Defendants "do not challenge the right of the estate of [Divonte Young] to bring a claim for intentional infliction of emotional distress on his behalf under the Survival State (755 ILCS 5/27-6), nor the right of [Divonte Young's] next of kind to bring a claim under the Wrongful Death Act. (740 ILCS 180/2) . . . ." ECF No. 62 at 2-3. Thus, only Ms. Young's individual IIED claim is at issue.

"Under Illinois Law, a claim for intentional infliction of emotional distress requires three elements: '(1) the conduct involved must be truly extreme and outrageous; (2) the defendant must either intend the infliction of emotional distress or know that there is a high probability that his conduct will result in such distress; and (3) the conduct must in fact cause severe emotional distress.'" *United States ex rel. Howard v. Urban Inv. Trust, Inc*., No. No. 03 C 7668, 2010 U.S. Dist. LEXIS 2997, at *18 (N.D. Ill. Jan. 14, 2010) (quoting *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 660 (7th Cir. 2001) (citing *McGrath v. Fahey,* 533 N.E.2d 806, 809 (Ill. 1988)). Defendants contend that Ms. Young has failed to satisfy the second element of the claim, as there is no allegation that Defendants intended to cause her severe emotional distress.[4]

The court agrees with Defendants and dismisses Ms. Young's individual claim for IIED. In her response, Ms. Young does not dispute the requirements for the cause of action. Nor does she reference any facts from the complaint to suggest that Defendants "intended to cause her severe emotional distress or [were] aware of a high probability of doing so." *See Yates v. John Marshall Law Sch*., No. 08-cv-4127, 2009 U.S. Dist. LEXIS 39819, at *24 (N.D. Ill. May 11, 2009) (dismissing IIED claim brought under Illinois law for failure to allege requisite intent or awareness).

Instead, Ms. Young avers that the Illinois Wrongful Death Act permits recovery for mental suffering—which suggests, at least to her, that the statute recognizes claims for IIED that flow from a wrongful death. *See* 740 ILCS 180/2. But Ms. Young offers no authority for this

---

[4] Defendants also argue that Ms. Young's claim IIED fails because she was not present at the scene of her son's death. But Defendants appear to conflate a claim for IIED with a claim for negligent infliction of emotional distress. The latter cause of action permits "a bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety" to sue "for physical injury or illness resulting from emotional distress." *Barnes v. Anyanwu*, No. 00-cv-6280, 2009 U.S. Dist. LEXIS 59029, at *5-6 (N.D. Ill. July 10, 2009) (quoting *Rickey v. Chicago Transit Authority,* 457 N.E.2d 1 (Ill. 1983)). Ms. Young, however, has not brought a claim for negligent infliction of emotional distress. As such, Defendants' argument is off the mark.

stretch of a proposition. And she confuses "mental suffering"—a harm for which the Wrongful Death Act makes damages available—with the cause of action, IIED.[5] To proceed with her claim for IIED, Ms. Young must allege facts to satisfy its elements. *See* S.*J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 860 (N.D. Ill. 2010). Because she has not done so, her individual IIED claim is dismissed without prejudice.

**IV. CONCLUSION**

Defendants' motion to dismiss is granted in part and denied in part. Ms. Young's individual claim for loss of companionship pursuant to 42 U.S.C. § 1983 is dismissed with prejudice. Her claim for intentional infliction of emotional distress is dismissed without prejudice. Defendants' motion to dismiss Ms. Young's claim on behalf of the estate for failure to intervene is denied. Ms. Young may amend her complaint by January 8, 2015 to address the deficiencies in her claim for intentional infliction of emotional distress, consistent with counsel's obligations under Federal Rule of Civil Procedure 11. Any amended complaint must delineate the precise federal claims and state law claims she is pursuing, whether individually or in her role as administrator, in separately numbered counts. Status is set for January 16, 2015 at 9:30 a.m.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: December 18, 2014

---

[5] The court notes that its dismissal of Ms. Young's IIED claim does not affect the jury's ability to award damages for "grief, sorrow, and mental suffering" resulting from Divonte Young's death pursuant to the Wrongful Death Act. *See* 740 ILCS 180/2.