UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
<u>EASTERN DIVISION</u>

| | |
|---|---|
| **LASHAWNDA YOUNG, as Independent Administrator, of the Estate of Divonte Young** ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | 13 cv 5651 |
| **CITY OF CHICAGO; CPD Officer Otis Watts; CPD Officer Jerome Hoffman, CPD Officer Joseph Mirus and CPD Officer CPD Officer Orlando Calvo** ) ) ) ) ) | Judge Gottschall |
| Defendants. ) | |

## <u>FOURTH AMENDED COMPLAINT</u>

NOW COMES Plaintiff LASHAWNDA YOUNG independent administrator of the estate of Divonte Young, by and through her attorney, H. Candace Gorman, and complaining of the Defendants CITY OF CHICAGO and Officers WATTS, HOFFMAN, MIRUS and CALVO, states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction of the action pursuant to the civil rights Act, 42 U.S.C. Section 1983 *et seq.*; 28 U.S.C. Section 1331 and 1343(a); and the Constitution of the United States. The state law claims for relief are within the supplemental jurisdiction of the Court, pursuant to *28 U.S.C. § 1367*. Venue is proper under 28 U.S.C. Section 1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted herein occurred within the district.

1

2. LaShawnda Young has been appointed as Independent Administrator of the Estate of Divonte Young, deceased. LaShawnda Young appears here individually and as the Independent Administrator of the Estate.

3. LaShawnda Young was and is a citizen of the United States, residing in the state of Illinois and county of Cook. LaShawnda Young is the mother of Divonte Young.

4. At all relevant times, Divonte Young was a United States citizen and an individual residing in the state of Illinois. As further described below, the unarmed Divonte Young was shot and killed by CPD Officer Otis Watts.

5. Defendant Otis Watts ("Watts")(star number 15226) was a sworn Chicago Police Department officer who, at all relevant times, resided in this Judicial District and who possessed the authority under law to carry out the police powers invested in him by the defendant, City of Chicago, and the State of Illinois. Watts engaged in the conduct complained of in the course and scope of his employment with the City of Chicago and is sued in his individual capacity.

6. Defendant Jerome Hoffman ("Hoffman") (star number 19110) was a sworn Chicago Police Department officer who, at all relevant times, resided in this Judicial District and who possessed the authority under law to carry out the police powers invested in him by the defendant, City of Chicago, and the State of Illinois. Hoffman engaged in the conduct complained of in the course and scope of his employment with the City of Chicago and is sued in his individual capacity.

7. Defendant Joseph Mirus ("Mirus") (star number 12043) was a sworn Chicago Police Department officer who, at all relevant times, resided in this Judicial District and who possessed the authority under law to carry out the police powers invested in him by the defendant, City of Chicago, and the State of Illinois. Mirus engaged in the conduct complained of in the course and scope of his employment with the City of Chicago and is sued in his individual capacity.

8. Defendant Orlando Calvo ("Calvo") (star number 15753) was a sworn Chicago Police Department officer who, at all relevant times, resided in this Judicial District and who possessed the authority under law to carry out the police powers invested in him by the defendant, City of Chicago, and the State of Illinois. Calvo engaged in the conduct complained of in the course and scope of his employment with the City of Chicago and is sued in his individual capacity.

9. The City of Chicago ("City") is a municipal corporation operating and existing within the State of Illinois. The City of Chicago is responsible for the acts of its employees while acting within the scope of their employment, and is responsible for the policies, practices, and customs of the Chicago Police Department.

10. Ms. Young is informed and believes, and thereon alleges that each of the defendants named herein is responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged.

11. At all times herein mentioned, the named defendants were and, upon information and belief, now are, each duly appointed peace officers and ranking

officers and employees of defendants Chicago Police Department and the City of Chicago, and qualified and acting under color of law, and as the employee, agent and representative of every other defendant.

**FACTS**

12. On the morning of August 9, 2012, Defendants Watts, Hoffman, Mirus and Calvo were conducting a surveillance operation of a house located in the 6200 block of South Honore in Chicago, Illinois. Each of the defendants was in plain clothes.

13. Defendant Watts was alone in an unmarked car parked at 6301 S. Honore in Chicago. The other defendants were within the same vicinity.

14. On the morning of August 9, 2012, Divonte Young, was walking to a convenience store located on 63rd street near Honore, in Chicago, Illinois. Divonte Young was twenty years of age.

15. At all times relevant to this action, Divonte Young was unarmed.

16. As Divonte Young approached the intersection of 63rd and Honore in Chicago, the sound of apparent gunfire rang out – fired by an unknown individual.

17. After hearing shots Divonte Young fled southbound through an empty lot across the street from the intersection.

18. At the time that Divonte Young was fleeing from the sound of what appeared to be gunfire, defendant Watts' unmarked Chicago police vehicle was parked on the east side of Honore Street near the corner of 63rd street, facing southward.

19. Other individuals, who were also in the area, ran from what sounded like gunfire.

20. As Divonte Young fled from the sound of what might have been gunfire, defendant Watts, without warning, stepped out of the unmarked car that was parked on the east side of Honore Street near the corner of 63rd street, stood on the running board of the vehicle and shot approximately 15 bullets in the direction of the unarmed Divonte Young hitting him once in the back.

21. The area that Officer Watts sprayed with approximately 15 bullets, hitting and killing Divonte Young, was in an urban area of the City of Chicago where other individuals were also gathered.

22. The actions by Watts violated long standing CPD police policy and orders.

23. After Officer Watts finally stopped wildly shooting his gun at the unarmed Divonte Young, the officer went into his vehicle, obtained his bullet-proof vest, put his bullet proof vest on, and then displayed his Chicago police badge to the people gathered on the street.

24. Watts never attended to the emergency medical needs of Divonte Young.

25. Upon information and belief, Watts never attempted to follow Divonte Young, after firing his approximately 15 rounds in the general direction of Divonte Young, and never attempted to ascertain whether or not he had even shot Divonte Young.

26. Several other Chicago Police Department officers arrived at the scene within minutes of Watts unloading his gun in the direction of Divonte Young; these officers included but were not limited to defendants Hoffman, Mirus and Calvo – but

not one of those officers attempted to attend to the emergency needs of Divonte Young, as he lay dying on the ground.

27. Upon information and belief, defendants Hoffman, Mirus and Calvo contaminated the crime scene.

28. Divonte Young was severely wounded by the shots fired by Officer Watts; he obtained moral comfort from a family friend who ran to his aid as he lay injured; however, Divonte Young eventually died on the street without any medical attention. Before dying Divonte Young exclaimed to the family friend that he was unable to breathe.

29. The shooting and killing of the unarmed Divonte Young by officer Watts was excessive in the extreme.

30. Officers Watts, Hoffman, Mirus and Calvo and other individuals from the City not only failed to obtain medical attention for Divonte Young, but also left Divonte Young's body uncovered in the heat of August for several hours while they conducted an "investigation."

31. LaShawnda Young, the mother of Divonte Young learned that her son had been shot and rushed to the scene. LaShawnda Young identified herself to police at the scene as the mother of the victim and asked to see her son. Police officials refused to allow LaShawnda Young to attend to her son. LaShawnda Young stayed near the scene of her son's shooting the entire afternoon waiting for her son's body to be released. The defendants knew that the young man's mother was at the scene and they left Divonte Young's body face up and uncovered in the August heat. Divonte Young's body laid

uncovered in the alley this entire time, his pants and underwear pulled down to his knees and his body eventually covered in maggots.

32. As LaShawnda Young waited nearby for her son's body to be released numerous individuals came to her to give her updates on the police activity which included, but was not limited to,: disrespecting her son's body by repeatedly kicking his body; pulling her son's pants down and spreading his buttocks; and the sight of flies feasting on her son's uncovered body.

33. The conduct of the defendants in shooting, failing to provide medical care, (and after Divonte Young died) disrespecting the body of Divonte Young—by (amongst other things) leaving his partially unclothed body face up on public display for several hours while maggots feasted on his body-- was purposeful and intentional, and with the aim to cause Divonte Young (prior to his death) and his mother severe emotional distress.

34. The conduct of the defendants in shooting, killing and then leaving Divonte Young's partially unclothed body on public display for hours while maggots feasted on his body was also purposeful and intentional and with the aim to cause the heirs of Divonte Young grief, sorrow and mental distress.

35. The CPD continues to refuse to provide any of the pertinent information from its "investigation" into the shooting of Divonte Young; however Plaintiff has learned that the City, the CPD and the so-called Chicago "Independent" Police Review Authority found the killing of the unarmed Divonte Young to be *justified* despite the

fact that there was no reasonable evidence that Divonte Young had engaged in any violence, and no weapon was recovered on or about Divonte Young's body.

36.     Upon information and belief, Officer Watts was not disciplined for his conduct in wildly shooting approximately 15 bullets at an unarmed individual in an urban setting.

37.     According to the Chicago Independent Police Review Authority there were 50 investigations into CPD shootings in 2012 alone, almost one shooting incident for every week of the year; these incidents involved the injuring of 49 people and the killing of 8 – including Divonte Young (for a total of 57 victims), and yet, upon information and belief, not one officer involved in those shootings was disciplined.

38.     According to the Chicago Independent Police Review Authority there were 58 investigations into CPD shootings in 2011 alone, more than one shooting incident for every week of the year; these incidents involved the injuring of 37 people and the killing of 23 (a total of 60 victims), and yet, upon information and belief, not one officer involved in those shootings was disciplined.

39.     The City of Chicago maintains a de facto policy, practice, and custom of justifying almost every shooting by a Chicago Police Officer, even when, like in the case of Divonte Young, there is absolutely no justification for the use of deadly force.

40.     The City of Chicago maintains a de facto policy, practice, and custom of exonerating almost every police officer involved in shootings, even when, like in the case of Divonte Young, it is clear that the CPD officer failed to follow established police orders.

41.     The City of Chicago's de facto policy, practice, and custom of exonerating almost every officer involved in police shootings, instills a culture of impunity which enabled Officer Watts' decision to fire his weapon with total indifference to human life and without fear of professional consequences.

42.     Officer Watts' conduct in wildly shooting approximately 15 bullets in the general direction of Divonte Young, without any evidence that Mr. Young posed any danger to the officer or anyone else, would not have been officially designated as justified, had it not been for the policy of the City to exculpate police personnel in nearly every incident involving a police shooting.

43.     In addition, the City continues to refuse to provide the actual investigation documents related to the shooting of Divonte Young (pursuant to the City's policy of considering almost every shooting by a CPD officer to be justified) despite the fact that more than two years have passed since Mr. Young's shooting death. Upon information and belief, those materials will further support the Plaintiff's allegation that the investigation was nothing more than a sham, orchestrated pursuant to the City's policy of considering almost every shooting by a CPD officer to be justified.

44.     The City of Chicago also maintains a de facto policy, practice, and custom of failing to properly train, supervise, discipline and control its officers on the use of deadly force, which was an additional cause of the unjustified shooting and death of Divonte Young, as it contributed to Officer Watts failure to adequately assess the non-existent threat posed by Mr. Young, and withhold his fire accordingly.

45. A properly trained officer would never have conducted him or her self in the manner in which Watts conducted himself.

46. A properly trained officer would never spray approximately 15 bullets at an unarmed individual running away from the sounds of what might have been gunfire, in an urban setting, putting that and other individuals in harm's way.

47. All of the actions by the Chicago Police Department, Watts, Hoffman, Mirus and Calvo violated long standing police policy and orders.

48. Despite the fact that the shooting was completely unjustified, the City of Chicago and the CPD, have maintained the department's code of silence regarding this shooting and the City refuses to disclose the contents of the investigation into the actual shooting of Divonte Young by Watts except to announce that the shooting is "justified."

49. Municipal policymakers have long been aware of the City's policy and practice regarding shootings by CPD; and of the City's failures to properly train, monitor and discipline its police officers.

## I. CLAIMS UNDER 42 U.S.C. § 1983

50. Each of the forgoing paragraphs is incorporated as if restated fully herein.

51. The actions of Defendants violated Divonte Young's rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries set forth above.

52. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct described in this action by failing to adequately punish and discipline prior instances of similar misconduct, effectively condoning such behavior on the part of Chicago police personnel.

53. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that: (a) as a matter of policy and practice, the Chicago Police Department encourages the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

54. As a matter of practice so prevalent as to amount to municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged in this complaint, on a frequent basis.

55. The actions of Defendants as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the City of Chicago, its police department, Police Board, O.P.S., I.P.R.A. and I.A.D., Personnel Division, and/or Superintendents.

56. At all times material to this complaint the Defendant City and its police department, Superintendents, O.P.S., I.P.R.A., I.A.D., Personnel Division and/or Police Board had interrelated *de facto* policies, practices, and customs which included, *inter alia*, a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers who commit acts of excessive force; b)

the police code of silence; and/or c) the encouragement of excessive and unreasonable force.

57. At all times herein, each and every defendant had the legal duty to intervene but failed to do so.

58. As a result of officer Watts' unjustified and excessive use of force, the failure to intervene and provide emergency medical care required of each of the defendants, the violation of CPD policies and orders by each of the defendants, and as a result of the City of Chicago's policy and practice, Divonte Young and the heir(s) of Divonte Young, suffered injury.

59. These actions of the defendants and the policies, practices and customs of the CPD encouraged, *inter alia*, police misconduct, and were, separately and together, a moving force and a direct and proximate cause of the unconstitutional acts committed by Defendants in this case and the injuries sustained by Divonte Young and his heir(s).

II. **CLAIMS UNDER STATE LAW**

60. Each of the forgoing paragraphs is incorporated as if restated fully herein.

**A. Survival Statute Claim on behalf of Divonte Young and his Estate**

61. Divonte Young was survived by his mother LaShawnda Young, daughter Danavea Young, and father John Clay, who constitute his heirs under Illinois law.

62. Divonte Young was pronounced dead on August 9, 2012. As a direct and proximate result of the wrongful actions of Defendants, as set forth above, Divonte

Young suffered serious injuries of a personal and pecuniary nature, including but not limited to, pain and suffering experienced as he was dying from the gunshot wounds inflicted by Defendant Watts, subjecting Defendants to liability pursuant to 755 ILCS 5/27-6, commonly referred to as the Survival Statute.

### B. Claims Under Wrongful Death Statute on behalf of Estate

63. The wrongful death of Divonte Young was proximately caused by the negligent and/or willful and wanton conduct of Defendant Watts when he discharged his firearm multiple times at Divonte Young without legal cause and the actions or inactions of the other defendants in violation of 740 ILCS § 180/1, commonly referred to as the Wrongful Death Statute.

64. Defendant Watts engaged in extreme and outrageous behavior including, *inter alia*, unreasonably and unlawfully discharging his firearm at Divonte Young, causing his death.

65. Defendants' wrongful conduct as alleged herein was the direct and proximate cause of injury and caused grief, sorrow, mental suffering and other damage to the heirs of Divonte Young.

66. The heirs of Divonte Young have lost and will continue to lose, pecuniary support, consortium, society, companionship as well as the love and affection of their cherished son and father, and have incurred losses including funeral and burial experiences as a proximate result of his wrongful death.

### C. Intentional Infliction of Emotional Distress Claim on behalf of Divonte Young and LaShawnda Young

67. That the conduct of the Defendants, as described above, in shooting, killing and disrespecting the body of Divonte Young was extreme and outrageous.

68. The Defendants' conduct, as described herein, was intentional in that they either knew that there was a high probability that their conduct would result in severe distress to the dying Divonte Young and his mother, or they were aware of a high probability that their conduct would result in severe emotional distress.

69. As a direct and proximate result of the intentional and outrageous conduct by the defendants, Divonte Young and his mother, LaShawnda Young suffered severe emotional distress.

### D. Respondeat Superior

70. Defendant officers were, at all times material to this complaint, employees and agents of the Defendant City of Chicago acting within the scope of their employment. Defendant City of Chicago is liable for the acts of Defendants which violated state law under the doctrine of *respondeat superior*.

71. Defendant officers committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago, and the City is liable for his actions pursuant to 745 ILCS 10/9-102.

WHEREFORE, Plaintiff, LaShawnda Young, Independent Administrator of the Estate, respectfully requests that this Court enter judgment against defendants,

awarding compensatory damages, including funerary expenses, punitive damages against each and every individually named defendant, as allowable under the law, a trial by jury on all issues so triable, as well as any further relief this Court deems just and appropriate. Plaintiff also seeks costs and attorneys' fees against the defendants.

                                        Respectfully Submitted,

                                        /s/H. Candace Gorman
                                        Attorney for Estate

H. Candace Gorman
Law office of H. Candace Gorman
220 S. Halsted, Suite 200
Chicago Illinois 60661
312-427-2313