# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LASHAWNDA YOUNG, as Independent Administrator, of the Estate of Divonte Young | ) ) ) | No. 13 CV 5651 |
| Plaintiff, | ) ) | Judge Gottschall |
| v. | ) ) | Jury Demand |
| CITY OF CHICAGO; CPD Officer OTIS WATTS; CPD Officer JEROME HOFFMAN CPD Officer JOSEPH MIRUS and CPD Officer ORLANDO CALVO, Defendants. | ) ) ) ) ) ) | |

### DEFENDANT CITY OF CHICAGO'S ANSWER, JURY DEMAND AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FOURTH AMENDED COMPLAINT

Defendant, City of Chicago, (herein "the City") by Stephen Patton, Corporation Counsel for the City of Chicago, hereby files its Answer, Jury Demand, and Affirmative Defenses to Plaintiff's Fourth Amended Complaint, and in support thereof, states:

### JURISDICTION AND VENUE

1. This Court has jurisdiction of the action pursuant to the civil rights Act, 42 U.S.C. Section 1983 *et seq.*; 28 U.S.C. Section 1331 and 1343(a); and the Constitution of the United States. The state law claims for relief are within the supplemental jurisdiction of the Court, pursuant to *28 U.S.C. § 1367*. Venue is proper under 28 U.S.C. Section 1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted herein occurred within the district.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to whether Lashawnda Young resides in this judicial district. The City denies this Court has supplement jurisdiction over the state law claims pursuant to 28 U.S.C §1367. The City admits the remaining allegations contained in paragraph 1 above, but denies any alleged wrongdoing.

2. LaShawnda Young has been appointed as Independent Administrator of the Estate of Divonte Young, deceased. LaShawnda Young appears here individually and as the Independent Administrator of the Estate.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 above.

3. LaShawnda Young was and is a citizen of the United States, residing in the state of Illinois and county of Cook. LaShawnda Young is the mother of Divonte Young.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 above.

4. At all relevant times, Divonte Young was a United States citizen and an individual residing in the state of Illinois. As further described below, the unarmed Divonte Young was shot and killed by CPD Officer Otis Watts.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to whether Divonte Young was at all relevant times a U.S. citizen and an individual residing in the state of Illinois. On information and belief, the City admits Divonte Young was shot and killed by CPD Officer Otis Watts but denies Divonte Young was unarmed.

5. Defendant Otis Watts ("Watts")(star number 15226) was a sworn Chicago Police Department officer who, at all relevant times, resided in this Judicial District and who possessed the authority under law to carry out the police powers invested in him by the defendant, City of Chicago, and the State of Illinois. Watts engaged in the conduct complained of in the course and scope of his employment with the City of Chicago and is sued in his individual capacity.

**ANSWER:** The City admits Defendant Watts was a sworn Chicago Police Department officer, who, at all relevant times, resided in this judicial district and who possessed the authority under law to carry out the police powers invested in him by the City and the State of Illinois. The City admits Defendant Watts was acting in the scope of his employment with the City and that Plaintiff purports to sue Defendant Watts in his individual capacity, but, upon information and belief, denies Defendant Watts engaged in any alleged wrongdoing.

6. Defendant Jerome Hoffman (" Hoffman") (star number 19110) was a sworn Chicago Police Department officer who, at all relevant times, resided in this Judicial District and who possessed the authority under law to carry out the police powers invested in him by the

defendant, City of Chicago, and the State of Illinois. Hoffman engaged in the conduct complained of in the course and scope of his employment with the City of Chicago and is sued in his individual capacity.

**ANSWER:** The City admits Defendant Hoffman was a sworn Chicago Police Department officer, who, at all relevant times, resided in this judicial district and who possessed the authority under law to carry out the police powers invested in him by the City and the State of Illinois. The City admits Defendant Hoffman was acting in the scope of his employment with the City and that Plaintiff purports to sue Defendant Hoffman in his individual capacity, but, upon information and belief, denies Defendant Hoffman engaged in any alleged wrongdoing.

7. Defendant Joseph Mirus ("Mirus") (star number 12043) was a sworn Chicago Police Department officer who, at all relevant times, resided in this Judicial District and who possessed the authority under law to carry out the police powers invested in him by the defendant, City of Chicago, and the State of Illinois. Mirus engaged in the conduct complained of in the course and scope of his employment with the City of Chicago and is sued in his individual capacity.

**ANSWER:** The City admits Defendant Mirus was a sworn Chicago Police Department officer, who, at all relevant times, resided in this judicial district and who possessed the authority under law to carry out the police powers invested in him by the City and the State of Illinois. The City admits Defendant Mirus was acting in the scope of his employment with the City and that Plaintiff purports to sue Defendant Mirus in his individual capacity, but, upon information and belief, denies Defendant Mirus engaged in any alleged wrongdoing.

8. Defendant Orlando Calvo ("Calvo") (star number 15753) was a sworn Chicago Police Department officer who, at all relevant times, resided in this Judicial District and who possessed the authority under law to carry out the police powers invested in him by the defendant, City of Chicago, and the State of Illinois. Calvo engaged in the conduct complained of in the course and scope of his employment with the City of Chicago and is sued in his individual capacity.

**ANSWER:** The City admits Defendant Calvo was a sworn Chicago Police Department

officer, who, at all relevant times, resided in this judicial district and who possessed the authority under law to carry out the police powers invested in him by the City and the State of Illinois. The City admits Defendant Calvo was acting in the scope of his employment with the City and that Plaintiff purports to sue Defendant Calvo in his individual capacity, but, upon information and belief, denies Defendant Calvo engaged in any alleged wrongdoing.

9. The City of Chicago ("City") is a municipal corporation operating and existing within the State of Illinois. The City of Chicago is responsible for the acts of its employees while acting within the scope of their employment, and is responsible for the policies, practices, and customs of the Chicago Police Department.

**ANSWER:** The City admits it is a municipal corporation operating and existing within the State of Illinois. The City states that the allegation it is responsible for the acts of its employees while acting within the scope of their employment is vague, incomplete and/or an incorrect statement of the City's relationship with its employees and is therefore denied. The City states that the allegation that it is responsible for the policies, practices and customs of the Chicago Police Department, is vague, incomplete and/or an incorrect statement of the City's relationship with the Chicago Police Department, and is therefore denied.

10. Ms. Young is informed and believes, and thereon alleges that each of the defendants named herein is responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged.

**ANSWER:** The City lacks knowledge or information as to what Ms. Young is informed about and what she believes, and whether what she alleges herein in regard to the named defendants is based upon such information and belief. On information and belief, the City denies the remaining allegations contained in paragraph 10 above.

11. At all times herein mentioned, the named defendants were and, upon information and belief, now are, each duly appointed peace officers and ranking officers and employees of defendants Chicago Police Department and the City of Chicago, and qualified and acting under

color of law, and as the employee, agent and representative of every other defendant.

**ANSWER:** The City admits at all times herein mentioned, the named defendants were and, upon information and belief, now are, each duly appointed peace officers and employees of defendants Chicago Police Department and the City of Chicago and qualified and acting under color of law. The City lacks knowledge or information sufficient to form a belief as to whether the defendant officers are ranking officers and the employee, agent and representative of every other defendant.

## FACTS

12. On the morning of August 9, 2012, Defendants Watts, Hoffman, Mirus and Calvo were conducting a surveillance operation of a house located in the 6200 block of South Honore in Chicago, Illinois. Each of the defendants was in plain clothes.

**ANSWER:** On information and belief, the City admits the allegations contained in paragraph 12 above.

13. Defendant Watts was alone in an unmarked car parked at 6301 S. Honore in Chicago. The other defendants were within the same vicinity.

**ANSWER:** On information and belief, the City admits, at some time on August 9, 2012, Defendant Watts was alone in a covert vehicle parked at 6301 S. Honore in Chicago. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

14. On the morning of August 9, 2012, Divonte Young, was walking to a convenience store located on 63rd street near Honore, in Chicago, Illinois. Divonte Young was twenty years of age.

**ANSWER:** On information and belief, the City admits Divonte Young was twenty years of age on August 9, 2012. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 14 above.

15. At all times relevant to this action, Divonte Young was unarmed.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 15 above.

16. As Divonte Young approached the intersection of 63rd and Honore in Chicago, the sound of apparent gunfire rang out - fired by an unknown individual.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 16 and avers that Officer Watts observed Divonte Young on the west side of Honore at approximately 6304 S. Honore, holding a gun with both hands and shooting the gun in a northbound direction.

17. After hearing shots Divonte Young fled southbound through an empty lot across the street from the intersection.

**ANSWER:** On information and belief, the City admits, at some point on August 9, 2012, Officer Watts observed Divonte Young run southbound into a vacant lot and the City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 17 above.

18. At the time that Divonte Young was fleeing from the sound of what appeared to be gunfire, defendant Watts' unmarked Chicago police vehicle was parked on the east side of Honore Street near the corner of 63rd street, facing southward.

**ANSWER:** On information and belief, the City admits that at the time Officer Watts observed Divonte Young run southbound into a vacant lot, Officer Watts' covert vehicle was parked at 6301 S. Honore, facing southbound on the east side of the street. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 18 above.

19. Other individuals, who were also in the area, ran from what sounded like gunfire.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 above.

20. As Divonte Young fled from the sound of what might have been gunfire, defendant Watts, without warning, stepped out of the unmarked car that was parked on the east side of Honore Street near the corner of 63rd street, stood on the running board of the vehicle and shot approximately 15 bullets in the direction of the unarmed Divonte Young hitting him once in the back.

**ANSWER:** On information and belief, the City admits, at some point on August 9, 2012, Defendant Watts stepped out of his covert vehicle, admits said vehicle was parked at 6301 S. Honore Street, and admits Defendant Watts fired his weapon at Divonte Young. On information and belief, the City denies the remaining allegations contained in this paragraph.

21. The area that Officer Watts sprayed with approximately 15 bullets, hitting and killing Divonte Young, was in an urban area of the City of Chicago where other individuals were also gathered.

**ANSWER:** On information and belief, the City admits Officer Watts shot and killed Divonte Young, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 21 above.

22. The actions by Watts violated long standing CPD police policy and orders.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 22 above.

23. After Officer Watts finally stopped wildly shooting his gun at the unarmed Divonte Young, the officer went into his vehicle, obtained his bullet-proof vest, put his bullet proof vest on, and then displayed his Chicago police badge to the people gathered on the street.

**ANSWER:** On information and belief, the City admits at some point on August 9, 2012, Officer Watts went into his vehicle, obtained his bullet-proof vest and put his bullet proof vest on. On information and belief, the City denies Officer Watts shot his gun wildly at an

unarmed Divonte Young. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 23 above.

24. Watts never attended to the emergency medical needs of Divonte Young.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 above and avers that an ambulance was called to the scene by a Defendant Officer.

25. Upon information and belief, Watts never attempted to follow Divonte Young, after firing his approximately 15 rounds in the general direction of Divonte Young, and never attempted to ascertain whether or not he had even shot Divonte Young.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 above and avers that an ambulance was called to the scene by a Defendant Officer.

26. Several other Chicago Police Department officers arrived at the scene within minutes of Watts unloading his gun in the direction of Divonte Young; these officers included but were not limited to defendants Hoffman, Mirus and Calvo - but not one of those officers attempted to attend to the emergency needs of Divonte Young, as he lay dying on the ground.

**ANSWER:** On information and belief, the City admits that at some point on August 9, 2012, other Chicago Police Department officers arrived at the scene, including but not limited to, Defendants Hoffman, Mirus and Calvo. The City avers that an ambulance was called to the scene by a Defendant Officer. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 26 above.

27. Upon information and belief, defendants Hoffman, Mirus and Calvo contaminated the crime scene.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 27 above.

28. Divonte Young was severely wounded by the shots fired by Officer Watts; he obtained moral comfort from a family friend who ran to his aid as he lay injured; however, Divonte Young eventually died on the street without any medical attention. Before dying Divonte Young exclaimed to the family friend that he was unable to breathe.

**ANSWER:** On information and belief, the City admits Divonte Young died on August 9, 2012 but the City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 28 above.

29. The shooting and killing of the unarmed Divonte Young by officer Watts was excessive in the extreme.

**ANSWER:** On information and belief, the City admits Officer Watts shot and killed Divonte Young but denies Divonte Young was unarmed and that it was excessive in the extreme.

30. Officers Watts, Hoffman, Mirus and Calvo and other individuals from the City not only failed to obtain medical attention for Divonte Young, but also left Divonte Young's body uncovered in the heat of August for several hours while they conducted an "investigation."

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 above avers that an ambulance was called to the scene by a Defendant Officer.

31. LaShawnda Young, the mother of Divonte Young learned that her son had been shot and rushed to the scene. LaShawnda Young identified herself to police at the scene as the mother of the victim and asked to see her son. Police officials refused to allow LaShawnda Young to attend to her son. LaShawnda Young stayed near the scene of her son's shooting the entire afternoon waiting for her son's body to be released. The defendants knew that the young man's mother was at the scene and they left Divonte Young's body face up and uncovered in the August heat. Divonte Young's body laid uncovered in the alley this entire time, his pants and underwear pulled down to his knees and his body eventually covered in maggots.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 above.

32. As LaShawnda Young waited nearby for her son's body to be released numerous individuals came to her to give her updates on the police activity which included, but was not limited to: disrespecting her son's body by repeatedly kicking his body; pulling her son's pants down and spreading his buttocks; and the sight of flies feasting on her son's uncovered body.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 above.

33. The conduct of the defendants in shooting, failing to provide medical care, (and after Divonte Young died) disrespecting the body of Divonte Young-by (amongst other things) leaving his partially unclothed body face up on public display for several hours while maggots feasted on his body-- was purposeful and intentional, and with the aim to cause Divonte Young (prior to his death) and his mother severe emotional distress.

**ANSWER:** On information and belief, the City denies the allegations contained in this paragraph.

34. The conduct of the defendants in shooting, killing and then leaving Divonte Young's partially unclothed body on public display for hours while maggots feasted on his body was also purposeful and intentional and with the aim to cause the heirs of Divonte Young grief, sorrow and mental distress.

**ANSWER:** On information and belief, the City denies the allegations contained in this paragraph.

35. The CPD continues to refuse to provide any of the pertinent information from its "investigation" into the shooting of Divonte Young; however Plaintiff has learned that the City, the CPD and the so-called Chicago "Independent" Police Review Authority found the killing of the unarmed Divonte Young to be *justified* despite the fact that there was no reasonable evidence that Divonte Young had engaged in any violence, and no weapon was recovered on or about Divonte Young's body.

**ANSWER:** The City denies that it is refusing to provide any pertinent information from its investigation into the shooting of Divonte Young beyond it legitimate invocation of the law enforcement investigative privilege or other legal privileges so invoked. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 35 above.

36. Upon information and belief, Officer Watts was not disciplined for his conduct in wildly shooting approximately 15 bullets at an unarmed individual in an urban setting.

**ANSWER:** On information and belief, the City admits that Officer Watts, to date, has not been disciplined in regard to his conduct involving his shooting of Divonte Young. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 36 above.

37. According to the Chicago Independent Police Review Authority there were 50 investigations into CPD shootings in 2012 alone, almost one shooting incident for every week of the year; these incidents involved the injuring of 49 people and the killing of 8 - including Divonte Young (for a total of 57 victims), and yet, upon information and belief, not one officer involved in those shootings was disciplined.

**ANSWER:** On information and belief, the City admits the allegations contained in paragraph 37 above.

38. According to the Chicago Independent Police Review Authority there were 58 investigations into CPD shootings in 2011 alone, more than one shooting incident for every week of the year; these incidents involved the injuring of 37 people and the killing of 23 (a total of 60 victims), and yet, upon information and belief, not one officer involved in those shootings was disciplined.

**ANSWER:** On information and belief, the City admits the allegations contained in paragraph 38 above.

39. The City of Chicago maintains a de facto policy, practice, and custom of justifying almost every shooting by a Chicago Police Officer, even when, like in the case of Divonte Young, there is absolutely no justification for the use of deadly force.

**ANSWER:** The City denies the allegations contained in paragraph 39 above.

40. The City of Chicago maintains a de facto policy, practice, and custom of exonerating almost every police officer involved in shootings, even when, like in the case of Divonte Young, it is clear that the CPD officer failed to follow established police orders.

**ANSWER:** The City denies the allegations contained in paragraph 40 above.

41. The City of Chicago's de facto policy, practice, and custom of exonerating almost every officer involved in police shootings, instills a culture of impunity which enabled Officer Watts' decision to fire his weapon with total indifference to human life and without fear of professional consequences.

**ANSWER:** The City denies the allegations contained in paragraph 41 above.

42. Officer Watts' conduct in wildly shooting approximately 15 bullets in the general direction of Divonte Young, without any evidence that Mr. Young posed any danger to the officer or anyone else, would not have been officially designated as justified, had it not been for the policy of the City to exculpate police personnel in nearly every incident involving a police shooting.

**ANSWER:** The City denies the allegations contained in paragraph 42 above.

43. In addition, the City continues to refuse to provide the actual investigation documents related to the shooting of Divonte Young (pursuant to the City's policy of considering almost every shooting by a CPD officer to be justified) despite the fact that more than two years have passed since Mr. Young's shooting death. Upon information and belief, those materials will further support the Plaintiff's allegation that the investigation was nothing more than a sham, orchestrated pursuant to the City's policy of considering almost every shooting by a CPD officer to be justified.

**ANSWER:** The City denies that it is refusing to provide any pertinent information from its investigation into the shooting of Divonte Young beyond it legitimate invocation of the law enforcement investigative privilege or other legal privileges so invoked. The City denies the remaining allegations contained in paragraph 43 above.

44. The City of Chicago also maintains a de facto policy, practice, and custom of failing to properly train, supervise, discipline and control its officers on the use of deadly force, which was an additional cause of the unjustified shooting and death of Divonte Young, as it contributed to Officer Watts failure to adequately assess the nonexistent threat posed by Mr. Young, and withhold his fire accordingly.

**ANSWER:** The City denies the allegations contained in paragraph 44 above.

45. A properly trained officer would never have conducted him or herself in the manner in which Watts conducted himself.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 45 above.

46. A properly trained officer would never spray approximately 15 bullets at an unarmed individual running away from the sounds of what might have been gunfire, in an urban setting, putting that and other individuals in harm's way.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 above.

47. All of the actions by the Chicago Police Department, Watts, Hoffman, Mirus and Calvo violated long standing police policy and orders.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 47 above.

48. Despite the fact that the shooting was completely unjustified, the City of Chicago and the CPD, have maintained the department's code of silence regarding this shooting and the City refuses to disclose the contents of the investigation into the actual shooting of Divonte Young by Watts except to announce that the shooting is "justified."

**ANSWER:** The City denies that it is refusing to provide any pertinent information from its investigation into the shooting of Divonte Young beyond it legitimate invocation of the law enforcement investigative privilege or other legal privileges so invoked. The City denies the remaining allegations contained in paragraph 48 above.

49. Municipal policymakers have long been aware of the City's policy and practice regarding shootings by CPD; and of the City's failures to properly train, monitor and discipline its police officers.

**ANSWER:** The City denies the allegations contained in paragraph 49 above.

### I. CLAIMS UNDER 42 U.S.C. § 1983

50. Each of the forgoing paragraphs is incorporated as if restated fully herein.

**ANSWER:** The City's answers to each of the foregoing paragraphs 1-49 are incorporated as if restated fully therein.

51. The actions of Defendants violated Divonte Young's rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries set forth above.

-13-

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 51 above.

52. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct described in this action by failing to adequately punish and discipline prior instances of similar misconduct, effectively condoning such behavior on the part of Chicago police personnel.

**ANSWER:** The City denies the allegations contained in paragraph 52 above.

53. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that: (a) as a matter of policy and practice, the Chicago Police Department encourages the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

**ANSWER:** The City denies the allegations contained in paragraph 53 above.

54. As a matter of practice so prevalent as to amount to municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged in this complaint, on a frequent basis.

**ANSWER:** The City denies the allegations contained in paragraph 54 above.

55. The actions of Defendants as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/ or customs of the City of Chicago, its police department, Police Board, O.P.S., I.P.R.A. and IA.D., Personnel Division, and/or Superintendents.

**ANSWER:** The City denies the allegations contained in paragraph 55 above.

56. At all times material to this complaint the Defendant City and its police department, Superintendents, O.P.S., I.P.R.A., I.A.D., Personnel Division and/or Police Board had interrelated *de facto* policies, practices, and customs which included, *inter alia*, a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers who commit acts of excessive force; b) the police code of silence; and/ or c) the encouragement of excessive and unreasonable force.

**ANSWER:** The City denies the allegations contained in paragraph 56 above.

57. At all times herein, each and every defendant had the legal duty to intervene but failed to do so.

**ANSWER:** The City admits to all duties imposed by law but, on information and belief, denies the Defendants violated any duties imposed by law.

58. As a result of officer Watts' unjustified and excessive use of force, the failure to intervene and provide emergency medical care required of each of the defendants, the violation of CPD policies and orders by each of the defendants, and as a result of the City of Chicago's policy and practice, Divonte Young and the heir(s) of Divonte Young, suffered injury.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 58 above.

59. These actions of the defendants and the policies, practices and customs of the CPD encouraged, *inter alia*, police misconduct, and were, separately and together, a moving force and a direct and proximate cause of the unconstitutional acts committed by Defendants in this case and the injuries sustained by Divonte Young and his heir(s).

**ANSWER:** The City denies the allegations contained in paragraph 59 above.

## II. CLAIMS UNDER STATE LAW

60. Each of the forgoing paragraphs is incorporated as if restated fully herein.

**ANSWER:** The City's answers to each of the foregoing paragraphs are incorporated as if restated fully therein.

### A. Survival Statute Claim on behalf of Divonte Young and his Estate

61. Divonte Young was survived by his mother LaShawnda Young, daughter Danavea Young, and father John Clay, who constitute his heirs under Illinois law.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 61 above.

62. Divonte Young was pronounced dead on August 9, 2012. As a direct and proximate result of the wrongful actions of Defendants, as set forth above, Divonte Young suffered serious injuries of a personal and pecuniary nature, including but not limited to, pain and suffering experienced as he was dying from the gunshot wounds inflicted by Defendant Watts, subjecting Defendants to liability pursuant to 755 ILCS 5/27-6, commonly referred to as the Survival Statute.

**ANSWER:** On information and belief, the City admits Divonte Young died on August 9, 2012, and on information and belief, the City denies the remaining allegations contained in paragraph 62 above.

## B. Claims Under Wrongful Death Statute on behalf of Estate

63. The wrongful death of Divonte Young was proximately caused by the negligent and/ or willful and wanton conduct of Defendant Watts when he discharged his firearm multiple times at Divonte Young without legal cause and the actions or inactions of the other defendants in violation of 740 ILCS § 180/1, commonly referred to as the Wrongful Death Statute.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 63 above.

64. Defendant Watts engaged in extreme and outrageous behavior including, *inter alia*, unreasonably and unlawfully discharging his firearm at Divonte Young, causing his death.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 64 above.

65. Defendants' wrongful conduct as alleged herein was the direct and proximate cause of injury and caused grief, sorrow, mental suffering and other damage to the heirs of Divonte Young.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 65 above.

66. The heirs of Divonte Young have lost and will continue to lose, pecuniary support, consortium, society, companionship as well as the love and affection of their cherished son and father, and have incurred losses including funeral and burial experiences as a proximate result of his wrongful death.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 66 above.

## C. Intentional Infliction of Emotional Distress Claim on behalf of Divonte Young and LaShawnda Young

67. That the conduct of the Defendants, as described above, in shooting, killing and disrespecting the body of Divonte Young was extreme and outrageous.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 67 above.

68. The Defendants' conduct, as described herein, was intentional in that they either knew that there was a high probability that their conduct would result in severe distress to the dying Divonte Young and his mother, or they were aware of a high probability that their conduct would result in severe emotional distress.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 68 above.

69. As a direct and proximate result of the intentional and outrageous conduct by the defendants, Divonte Young and his mother, LaShawnda Young suffered severe emotional distress.

**ANSWER:** On information and belief, the City denies the allegations contained in paragraph 69 above.

### D. Respondeat Superior

70. Defendant officers were, at all times material to this complaint, employees and agents of the Defendant City of Chicago acting within the scope of their employment. Defendant City of Chicago is liable for the acts of Defendants which violated state law under the doctrine of *respondeat superior*.

**ANSWER:** On information and belief, the City admits Defendant officers were at all times material to this complaint, employees and agents of the City acting within the scope of their employment, but deny any alleged wrongdoing. The City states that the allegation that the City is liable for the acts of Defendants which violated state law under the doctrine of respondeat superior, is a vague, incomplete and/or an incorrect statement of the nature of the City's liability under the doctrine of *respondeat superior*, and is therefore denied.

71. Defendant officers committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago, and the City is liable for his

actions pursuant to 745 ILCS 10/9-102.

> **ANSWER:** On information and belief, the City admits Defendant officers were acting under color of law and in the scope of their employment with the City, but deny any alleged wrongdoing. The City states that the allegation that is liable for his actions pursuant to 745 ILCS 10/9-102, is a vague, incomplete and/or an incorrect statement of the City's liability under 745 ILCS 10/9-102, and is therefore denied.

**WHEREFORE**, the City respectfully requests this Court enter judgment in its favor and against Plaintiff on Plaintiff's Fourth Amended Complaint, award it such costs and fees as allowed by law, and grant such further relief as this Court deems just and proper.

## JURY DEMAND

The City demands a trial by jury for all issues so triable.

## AFFIRMATIVE DEFENSES

1. The City is not liable to the Plaintiff if its employees or agents are not liable to the Plaintiff for federal claims. *See* City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

2. To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff has a duty to mitigate, commensurate with the degree of failure to mitigate attributed to Plaintiff by the injury in this case.

3. Under the Tort Immunity Act, the City is not required to pay punitive or exemplary damages in any action brought directly or indirectly against an employee by the injured party or a third party. 745 ILCS 10/2-2-1-2 (2010).

4. Plaintiff is not entitled to attorney's fees for his state law claims. *See* Pennsylvania Truck Lines, Inc. v. Solar Equity Corp., 882 F.2d 221, 227 (7th Cir. 1989); Kerns v. Engelke, 76 Ill.2d 154, 166, 390 N.E.2d 859, 865 (1979); Miller v. Pollution Control Board, 267 Ill.App.3d 160, 171, 642 N.E. 2d 475, 485 (4th Dist. 1994).

5. The City is not liable for injury proximately caused by the failure of an employee to take reasonable action to furnish or obtain medical care. 745 ILCS 10/4-105 (2012).

6. Plaintiff is not entitled to recover punitive damages for his claim of intentional infliction of emotional distress. *See* Knierim v. Izzo, 22 Ill.2d 73, 88, 174 N.E.2d 157, 165 (1961); Gragg v. Calandra, 297 Ill. App. 3d 639, 649, 696 N.E.2d 1282, 1290 (2nd Dist. 1998); Morrison v. Sandell, 112 Ill. App. 3d 1057, 1060, 446 N.E.2d 290, 292 (4th Dist. 1983).

7. The City is not liable for any state claim based upon the conduct of the Defendant officers since the applicable 1-year statute of limitations and the Tort Immunity Act (745 ILCS 10/2-109 (2012)) bar such claims against the Defendant officers.

                                              Respectfully submitted
                                              STEPHEN R. PATTON,
                                              Corporation Counsel
                                              City of Chicago

                                              By:/s/ Jason Marx
                                              JASON MARX
                                              Assistant Corporation Counsel

City of Chicago-Department of Law
30 North LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 744-8364
Attorney No. 6279266