UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LaShawnda Young, ) | |
| Independent Administrator for the estate ) | |
| Of Divonte Young ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 13 CV 5651 |
| CITY OF CHICAGO, et. al. ) | |
| ) | Hon. Joan B. Gottschall. |
| ) | |
|     Defendants. ) | |

## AMENDED RULE TO SHOW CAUSE WHY THE INDEPENDENT POLICE REVIEW AUTHORITY SHOULD NOT BE HELD IN CONTEMPT OF THIS COURTS ORDERS OF JUNE 8, 2016 AND JULY 29, 2016.

NOW COMES Plaintiff LaShawnda Young, Independent Administrator for the estate of Divonte Young, by and through her attorney, H. Candace Gorman, amending her previously filed Rule and asks this Court to enter this Amended Rule to Show Cause against the Independent Police Review Authority, (hereinafter IPRA) for the following reasons:

### BACKGROUND

Plaintiff received the "official IPRA file" from the City's attorneys in the spring of 2015-more than two and a half years after Plaintiff's son was shot and killed by officer Watts.[1] It was clear from reviewing that file that either documents were withheld from Plaintiff or IPRA

---

[1] IPRA contends it closed its file on January 3, 2014 however Plaintiff was not notified that the file was closed until October 16, 2014 and did not receive the file until 2015.

miserably failed in this investigation (or both). Counsel for Plaintiff has made numerous requests for all documents generated in the investigation because it was clear that even an inadequate investigation would involve correspondence between various agencies as well as notes and memoranda from investigators. Every request was met with the same response "we have given you everything." One year ago, on October 27, 2015, Plaintiff filed a motion to compel the deposition of the person(s) responsible for collecting defendants' discovery in this case. (Doc. 113) Amongst the numerous other problems in the city's response(s) to discovery Plaintiff specifically alleged the deficiencies from the IPRA file and her suspicion that she did not have everything. (Doc 113, pages 2-3) It was not until May of this year that counsel learned from the corporation counsel in this case that he could not directly confer with IPRA regarding discovery. It was then that Plaintiff realized that the city's attorneys could never legitimately claim that they provided the entire IPRA file because anything the attorneys learned about the file would be second hand from an individual not on record in this case. For that reason, Plaintiff's counsel decided to subpoena the IPRA documents directly.

On May 6, 2016 Plaintiff served a subpoena on IPRA seeking "The complete investigative file for the incident that occurred on August 9, 2012 resulting in the death of Divonte Young. Plaintiff seeks all investigative documents including but not limited to internal communications, external communications, emails, notes, facsimiles." (EX. A) IPRA ignored the subpoena which in turn prompted Plaintiff to file a motion to enforce the subpoena. (Doc. 131) At the hearing on the motion to enforce (June 8, 2016) IPRA was represented by the Corporation Counsel's office. IPRA raised no exceptions, objections, or privilege issues in regards to the subpoena itself. Apparently IPRA just did not want to comply with the subpoena.

This Court granted Plaintiff's motion to enforce against IPRA, gave IPRA six weeks to comply with the Order, and set a status date of July 29, 2016. (Doc 133)

At the July 29, 2016 status hearing counsel for Plaintiff reported to this Court that although she was engaged in a dialog with IPRA regarding the court ordered documents she believed it was necessary to set a compliance date because IPRA exhibited no indication of actually providing the documents to Plaintiff in a timely fashion.[2] In house counsel for IPRA informed plaintiff's counsel that she had hired an outside vendor because there were approximately 700 emails that needed to be downloaded and copied. The corporation counsel's office again represented IPRA at that status hearing and this Court asked the city's attorney for a realistic date for IPRA's compliance with the Court's Order. The city's attorney agreed with this Court that 30 additional days was a realistic time table for IPRA to finish gathering the hundreds of emails and other documents and to comply with the Court's Order. Again, corporation counsel raised no objection to any of the documents sought in the subpoena and this Court Ordered IPRA to comply with the subpoena by August 26, 2016. (Doc. 138)

**IPRA'S FAILURE TO COMPLY WITH THIS COURT'S ORDER**

On August 26, 2016, IPRA, through a private law firm retained by IPRA (Jackson, Lewis) provided a fraction of the more than 900 emails that IPRA had previously claimed relates to this investigation. IPRA provided few notes, memorandum, faxes or other materials sought in the subpoena and in addition to withholding more than 900 emails as a "courtesy" withheld

---

[2] As discussed with the Court during that hearing the IPRA employee told Plaintiff's counsel that there were more than 700 emails that directly related to this case. The letter from IPRA's new counsel clarifies that the actual number was more than 900.

3

other emails on the claim of - attorney work product and the attorney/client privilege and deliberative process privilege. In the letter accompanying the documents the attorney representing IPRA explained "lPRA provided us with 972 records that consist of e-mails and e-mail attachments. After reviewing those records, we identified 88 records that *arguably are responsive to the subpoena*. Of that set, we identified 54 records over which IPRA is not asserting a privilege and 34 records that are subject to objections on the basis of attorney client privilege, attorney work product doctrine or deliberative process privilege. (Ex. B) (*emphasis added*) Later, IPRA agreed to release some of the documents that it originally withheld pursuant to its assertion of privilege, and those documents confirmed that there was no valid argument for the various privileges asserted.

Upon receipt of the limited documents provided by IPRA Plaintiff's Counsel immediately wrote a letter to Jackson, Lewis attorney Elan Shpigel and explained that the documents tendered were not in compliance with this Court's Order. Counsel explained in the letter that a preliminary review of the documents raised several deficiencies. Those deficiencies included the fact that the vast majority of the emails were not tendered and the imposition of objections and privilege issues which Plaintiff believes were waived in the first instance and were inappropriate given the role of IPRA. In addition, plaintiff's counsel did not believe the privilege log adequately complied with the federal rules (primarily because the descriptions of the subject matter were so vague). Counsel asked IPRA's attorney for complete compliance with this Court's Order within one week's time and no later than September 2, 2016. (Ex. C)

The following day (August 27, 2016) counsel for Plaintiff completed a more thorough review of the documents and realized the full extent of IPRA's noncompliance with this Court's

Order- in fact, IPRA not only submitted only a handful of the more than 900 emails related to this case but most of the important *non-email* documents that Plaintiff specifically sought (some of which were referenced in the emails) were not tendered, including, but not limited to, witness statements, underlying notes taken by investigators during the course of their investigation and complete notes from meetings including the *complete* notes from the "major case review" attended by representatives of IPRA, CPD and the Illinois State Police a few days after the shooting. Counsel sent a second letter to IPRA's counsel and demanded full compliance *immediately*. (EX. D)

On August 29, 2016 attorney Shpigel responded to the two letters and asked for the full week counsel had originally offered for full compliance in her first letter- Attorney Shpigel also stated that IPRA did not understand what was missing from the file that was produced, that the emails that IPRA did not produce *primarily* consist of freedom of information requests and as *a courtesy* to counsel they decided not to burden counsel with those materials. Attorney Shpigel's letter also confirmed that the search for documents was limited to a computer search and therefore notes, faxes etc. held on paper at IPRA were apparently not searched for. However, IPRA's counsel agreed *that they would produce all of the other emails if Plaintiff's counsel still sought those emails* after review of the few "samples" that they had sent. (Ex. E) Although counsel for Plaintiff appreciates courtesies she did not appreciate IPRA's wholesale attempt to ignore this Court's Order in the guise of a "courtesy" and sought all of the material related to the investigation. [3]

---

[3] Over the course of the week of August 29 IPRA, through its attorneys, sent several emails and made other computer generated documents available to counsel including sending for the third

On August 31, 2016 counsel for Plaintiff sent a detailed letter explaining the nature of the problems and providing examples of missing documents that could be gleaned from the few emails that were sent. (Ex. F)

Over the weeks between the August 31, 2016 letter and the court date of September 21st, 2016 IPRA's counsel supplied some additional documents and counsel for Plaintiff agreed that she did not need to have all 900+ emails copied for her review and that she would be satisfied with going to IPRA's counsel office, where the emails are being held, and conduct her own spot check of the 900 emails. On September 19, 2016, just prior to the next court date of September 21st, 2016 Plaintiff's counsel sent an email to IPRA's counsel making it clear that she wanted "everything" unless an agreement was worked out and she outlined the scope of the subpoena. (Ex. G)

Prior to appearing before this Court on the morning of September 21st counsel for both sides again discussed the issues and IPRA's counsel was in agreement that IPRA would preserve everything, finish collecting documents including providing signed litigation hold agreements for the current and former IPRA employees who were involved in the investigation.[4] IPRA's counsel also stated that he did not expect a problem in arranging for Plaintiff's counsel to perform a spot check of the 900+ emails and that they would have to determine where and how that would be conducted. Finally, IPRA's counsel stated that he "understood why Plaintiff's counsel would not want to just take his word" that the emails

---

time the "official IPRA file" however, the vast majority of the materials that Plaintiff was/is seeking are still not provided to Plaintiff.

[4] To date Plaintiff has only received two of the ten litigation hold agreements signed by current and former employees as promised by IPRA.

primarily related to FOIA requests and that he would work with counsel to ensure she was satisfied that her subpoena was complied with. The parties went before this Court on September 21and asked for three weeks to complete the agreement. At the same time this Court entered a preservation order requiring IPRA to preserve the materials responsive to the subpoena.

    After a week went by from the time of the court appearance without any word from counsel for IPRA counsel for Plaintiff sent an email and inquired as to the status of the agreement. (EX. H) Counsel for IPRA wrote back that he was busy but would get report back soon. (Ex. XI) Plaintiff's counsel sent more emails and was repeatedly met with pushback until October 4, 2016 when IPRA's counsel announced that they had done an exemplary job in complying but that they were now taking what IPRA described as a very narrow reading of the subpoena and concluded that Plaintiff was not entitled to the emails after all because *most* were dated after IPRA officially closed the file. (Ex. J) IPRA's counsel provided a few samples, with its version of a summary, and announced that they considered the matter "resolved." (Ex. K)

    Counsel for Plaintiff did not (and does not) agree that the matter was resolved and sent another letter outlining some of her concerns. (Ex. L) Finally, the afternoon prior to the October 12, 2016 court date IPRA's counsel provided an excel work sheet with *its* version of a summary of less than half of the emails in dispute. IPRA now takes the position that despite the fact that months were wasted while IPRA gathered the emails responsive to the subpoena that counsel for Plaintiff was not only not entitled to those emails but was not entitled to even

come to their offices to conduct her own spot check to confirm that the emails were not responsive.

**ARGUMENT**

This is not a discovery dispute in the traditional sense. This Court has already Ordered the relief that Plaintiff seeks- the enforcement of the subpoena duly served on IPRA. Plaintiff now asks this Court to enter a Rule to Show Cause against IPRA for its failure to abide by this Court's Order and to sanction IPRA for its contumacious conduct. As mentioned above, the subpoena which this Court *Ordered* IPRA to comply, sought "The *complete investigative file* for the incident that occurred on August 9, 2012 …including but not limited to *all investigative documents* including but not limited to internal communications, external communications, emails, notes, facsimiles." (EX. A, *emphasis added*) More than five months has passed since IPRA was served with the subpoena and in ordering compliance with the subpoena this Court did not grant IPRA the right to pick and choose which documents it would provide.

"The power to punish for contempt is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice." *Curlee v. Howle*, 277 S.C. 377, 287 S.E.2d 915 (1982). As the Rule to Show Cause is the court's command, the court may find a party in contempt for willfully violating an earlier court order or for violating the Rule to Show Cause itself. A finding of contempt rests within the sound discretion of the trial judge. *Henderson v. Henderson*, 298 S.C. 190, 197, 379 S.E.2d 125, 129 (1989).

In *National Hockey League v. Metropolitan Hockey Club, Inc.*, the Supreme Court held that contempt is "the most severe sanction" a court can issue and that it has three purposes: (1) to

undo the prejudice caused by the violation of the order; (2) to penalize the violators; and (3) to deter others from engaging in contempt. [The] basic difference between civil and criminal contempt sanctions is that civil contempt sanctions are intended "to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained," while criminal contempt sanctions are intended "to vindicate the authority of the court by punishing the contemnor and deterring future litigants' misconduct. . . ." *Bradley v. Am. Household, Inc.*, 378 F.3d 373, 378 (4th Cir. 2004) (quoting *Buffington v. Baltimore Cnty.*, 913 F.2d 113, 133 (4th Cir. 1990)) (emphasis added).

A finding of civil contempt must be established by clear and convincing evidence, *Bradley*, 378 F.3d at 378 but the court need not make a finding that the defendant's actions were willful or intentional in order to find [him] in contempt of court. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("Since the purpose [of civil contempt] is remedial, it matters not with what intent the defendant did the prohibited act. . . . An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently."); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1353 (Fed. Cir. 1998) ("The general rule in civil contempt is that a party need not intend to violate an injunction to be found in contempt.") (citing *McComb*, 336 U.S. 191–93)). Before imposing civil contempt sanctions, the court must afford the alleged contemnor notice and the opportunity to be heard. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994); *In re Computer Dynamics, Inc.*, 253 B.R. 693, 699 (E.D. Va. 2000).

In this case Plaintiff has been severely penalized by IPRAs flagrant violation of this Court's Order. For literally years, Plaintiff has been attempting to obtain the *complete* IPRA file,

including all documents generated *internally* regarding this investigation. The reason is simple- the file that was tendered to Plaintiff showed no genuine investigation being conducted. In fact, the IPRA file showed only one witness being interviewed by IPRA- the officer who shot Divonte Young. *If,* in fact, an investigation was conducted- *if,* other witnesses (besides the shooting officer) were in fact interviewed (as stated by Mr. Ando in emails he sent to the two aldermen)- *if,* at the "Major Case Review" the three agencies made a decision to test (or not test) certain evidence, (or made any other decisions or observations) this information is crucial for Plaintiffs claims.

The subpoena that was issued in May was yet another attempt by Plaintiff's counsel to ensure that she has everything- and the limited *new* documents tendered in response to that subpoena show clearly that she *still* does not have everything. Plaintiff has been prejudiced by the failure to receive every relevant document in that this has led to the slowdown of discovery and the ultimate disposition of this case (she has not been able to set up any of the depositions that she wishes to take- including the depositions of current and former employees of IPRA) because of the need to obtain and review all of the IPRA materials prior to the depositions.

In addition, Plaintiff contends that IPRAs now belated attempt to withhold certain documents on the basis of attorney- client privilege, work product, deliberative process and its "new theory" that the subpoena is limited in its scope to documents generated prior to IPRA "officially closing" its file, are not only waived at this point, but also begs the questions as to who exactly it is that IPRA serves and who exactly is the client of IPRA? IPRA is an office of the City of Chicago created by the Municipal Code of Chicago, Chapter 2-57. The stated purpose of IPRA is to make certain that complaints concerning police misconduct and abuse are

resolved fairly and timely. *Municipal Code of Chicago*, 2-57-160. Counsel for IPRA creates fundamental confusion for Plaintiff regarding IPRA's role and stated purpose when asserting "attorney-client privileges" against this public office created for the purpose of police accountability and protection of the civilians of the City of Chicago. Plaintiff has alleged that the City has failed to address and appropriately investigate police involved shootings including the shooting and killing of Plaintiff's son and the documents and evidence that create the framework for the Plaintiff's case that "IPRA is part of the 'Blue Wall of Silence'" are quickly becoming more apparent.

Although IPRA has not given a detailed description of all of the withheld documents, from what is known at present, some of those withheld documents are exactly the type of documents that plaintiff seeks. In fact, many of the descriptions contradict an assertion of work product as they appear to be summaries of "work completed" during different time periods. Further, these summaries do not appear to suggest they are "work product" of counsel that would show the mental impressions of an attorney preparing *in anticipation of litigation*. (Ex. M) Indeed, if in fact IPRA attorneys are generating "work product" protecting the City from litigation involving police-involved shootings, not only would these documents be relevant - they would be disastrous revelations to the citizens of the City of Chicago regarding the efficacy of IPRA.

In any event, IPRA has clearly waived any privilege by not asserting a privilege when served with the subpoena or at the time the Motion to Enforce the Subpoena was before this Court and IPRA should also be deemed to have waived its "new" theory that the subpoenas are limited in time to IPRA's official closing of its file as that argument was never raised

previously and indeed contradicts the clear language of the subpoena. IPRA's argument regarding its definition of the timing not only contradicts the plain language of the subpoena but also raises issues related to the information IPRA received after it "officially" closed its file. IPRA should be ordered to produce all of the documents withheld on the basis of privilege as well as each and every document and/or emails sought pursuant to this Court's Order.

**NEGOTIATIONS WITH IPRA**

After IPRA obtained private counsel in this matter counsel for Plaintiff attempted to work with its counsel to resolve the issues still pending. Plaintiff's counsel offered to review the emails and attachments obtained by IPRA either on paper or electronically at IPRA's counsel's office enabling counsel to conduct a sampling of the email files- a sampling of her own choosing- to determine whether or not she was in agreement with IPRA's counsel that the files were not relevant. IPRA's counsel stated at the time that he understood Plaintiff's counsel wanting to conduct her own review and promised to get back to counsel regarding her proposal. The parties agreed to ask this Court to continue the matter for three weeks to attempt to work this out. After this Court agreed to continue the matter IPRA's counsel then promptly ignored Plaintiff's requests for status on the issues. Only after repeated emails from Plaintiff's counsel did IPRA's counsel announced its "new theory" that *all* of the emails fell outside the subpoena because some of those emails were dated after IPRA *officially* closed its file. IPRA then *generously* agreed to allow plaintiff to spot check *less than half* of the email files.

Plaintiff's counsel respectfully disagrees with the new restrictive definition IPRA is attempting to impose on the subpoena and continues to seek a spot check of all of the more than 900 emails that were generated by IPRA related to this investigation and as laid out in the

subpoena to wit: "including but not limited to internal communications, external communications, emails, notes, facsimiles." (Ex. A) As to IPRA's theory that only documents generated prior to the "official" closing of the IPRA file are relevant plaintiff states that not only was the subpoena not restricted in time but that Plaintiff does not care when those emails were created. Indeed, IPRA could have learned new and important information after the "official close" of its file and that information could very well be contained in emails generated after the "official close" of the file.

Finally, it might seem that Plaintiff is spinning wheels in her attempts to garner every fact related to the investigation of her son's murder by a Chicago police officer, however, the fact remains that the file tendered by IPRA shows, at best, a woefully inadequate investigation (and, at worst, an unconstitutional travesty of immeasurable proportions). Plaintiff has alleged in her 4th amended complaint that IPRA found the killing of the unarmed Divonte Young to be *justified* despite the fact that there was no reasonable evidence that Divonte Young had engaged in any violence, and no weapon was recovered on or about Divonte Young's body. (Doc. 78, ¶35) Plaintiff also alleged facts pointing to the general insufficiently of IPRA investigations by pointing to the rubber stamping of the police version of events in almost every single "investigation." This was a fact brought glaringly to light in this case when the official file showed that the only interview conducted by IPRA was the interview of the offending officer who was being provided the answers to IPRAs questions by his attorney who sat next to him and whispered those answers.[5] (¶36-37) For these reasons, at a minimum, Plaintiff contends

---

[5] Whispers and answers are both audible on the audio file of the statement of Officer Watts produced in discovery.

she is entitled to learn in discovery every single fact that IPRA knew not only when it found the shooting of Divonte Young to be justified and the effort (or lack of effort) by which they sought or obtained those facts but also every fact that came to IPRA's attention after it "officially" closed its file.

**RELIEF REQUESTED**

This Court Ordered IPRA to fully comply with the subpoena on June 8th, 2016- more than four months ago. IPRA was granted the extensive amount of time that it claimed it needed to comply and its failure to tender those documents in the face of this Court's Order belies the stated motto of IPRA- "Integrity Transparency Independence Timeliness" and instead exhibits arrogance and disdain for the rule of law. Plaintiff has tried to negotiate in good faith with IPRA but negotiations were fruitless after IPRA reneged on its agreement to allow counsel to review and spot check all of the emails and reinterpreted the subpoena in such a manner as to forgo Plaintiff's receipt of most of the documents that Plaintiff waited months to receive. It is also clear from the few emails that were finally provided that more substantial documents exist and have been withheld.

This Court ordered IPRA, at the hearing on September 21, 2016, to preserve all of the documents that are responsive to Plaintiff's subpoena and Plaintiff is now concerned that responsive documents are not being properly protected because of the "new" restrictive definition of that subpoena raised by IPRA's counsel following this Court's order. With IPRA's counsel now restricting *its* definition of what documents are responsive to the subpoena and with IPRA in its waning months, it is imperative that this Court's Order be complied with now

and that all documents generated be preserved and tendered to Plaintiff. Counsel requests that this Court enter the Rule, Order full compliance within 5 days and to sanction IPRA for not only its flagrant violation of its previous Orders but also for its stalling techniques capped by its newly formed reinterpretation of the subpoena. Counsel for plaintiff has spent too many hours on this issue for no other reason than IPRA's obstinacy. Counsel asks this Court to Order fees to Plaintiff's counsel for the time expended in attempting to garner this relief. The sanction is particularly important at this time so as to send a message to the City that these shenanigans, in the pretext of public accountability, will not be tolerated by this Court whether under the name of IPRA or under any new name.

Wherefore, Plaintiff asks this Court: to enter the Rule and find IPRA in direct contempt of this Court's Orders; to immediately order IPRA to provide access to Plaintiff's counsel to all of the emails and attachments, to confirm that all current and former IPRA employees who were in any way involved in this investigation are contacted to obtain any documents in their possession; to require IPRA to immediately turn over- *directly to counsel for the Plaintiff*- all of the documents that in anyway relate to this investigation of the incident that occurred on August 9, 2012 resulting in the death of Divonte Young *including* information related to this investigation received after the "official" close of the investigation. Finally, Plaintiff asks this Court to Order IPRA to pay Counsel's fees as a sanction for IPRA's defiant conduct; and for such other and further relief as this Court deems just.

Respectfully Submitted,

 /s/H. Candace Gorman
Attorney for Plaintiff

/s/ Matthias D. Gill
Attorney for Plaintiff


H. Candace Gorman
Law office of H. Candace Gorman
220 S. Halsted
Suite 200
Chicago Illinois 60661
312-427-2313
hcgorman@igc.org

Matthias D. Gill
Illinois ARDC# 6282953
The Gill Law Firm, PC
1820 Ridge Road, Suite 216
Homewood, Illinois 60430
(708) 816-8080
mgill@gillfirm.com

CERTIFICATE OF SERVICE

I, H. Candace Gorman, hereby certify that the foregoing Rule to show cause was served to the parties via Pacer.

Dated: October 26, 2016

                                                Respectfully Submitted,

                                                /s/H. Candace Gorman

                                                Attorney for Plaintiff

For LaShawnda Young,

H. Candace Gorman
Law office of H. Candace Gorman
220 S. Halsted
Suite 200
Chicago Illinois 60661
312-427-2313

Matthias D. Gill
Illinois ARDC# 6282953
The Gill Law Firm, PC
1820 Ridge Road, Suite 216
Homewood, Illinois 60430
(708) 816-8080
mgill@gillfirm.com