Representing Management Exclusively in Workplace Law and Related Litigation



| Jackson Lewis P.C. | ALBANY, NY | GREENVILLE, SC | MONMOUTH COUNTY, NJ | RALEIGH, NC |
| 150 North Michigan Avenue | ALBUQUERQUE, NM | HARTFORD, CT | MORRISTOWN, NJ | RAPID CITY, SD |
| Suite 2500 | ATLANTA, GA | HONOLULU, HI* | NEW ORLEANS, LA | RICHMOND, VA |
| Chicago, Illinois 60601 | AUSTIN, TX | HOUSTON, TX | NEW YORK, NY | SACRAMENTO, CA |
| | BALTIMORE, MD | INDIANAPOLIS, IN | NORFOLK, VA | SALT LAKE CITY, UT |
| Tel 312 787-4949 | BIRMINGHAM, AL | JACKSONVILLE, FL | OMAHA, NE | SAN DIEGO, CA |
| Fax 312 787-4995 | BOSTON, MA | KANSAS CITY REGION | ORANGE COUNTY, CA | SAN FRANCISCO, CA |
| www.jacksonlewis.com | CHICAGO, IL | LAS VEGAS, NV | ORLANDO, FL | SAN JUAN, PR |
| | CINCINNATI, OH | LONG ISLAND, NY | PHILADELPHIA, PA | SEATTLE, WA |
| | CLEVELAND, OH | LOS ANGELES, CA | PHOENIX, AZ | ST. LOUIS, MO |
| | DALLAS, TX | MADISON, WI | PITTSBURGH, PA | STAMFORD, CT |
| | DAYTON, OH | MEMPHIS, TN | PORTLAND, OR | TAMPA, FL |
| | DENVER, CO | MIAMI, FL | PORTSMOUTH, NH | WASHINGTON, DC REGION |
| | DETROIT, MI | MILWAUKEE, WI | PROVIDENCE, RI | WHITE PLAINS, NY |
| | GRAND RAPIDS, MI | MINNEAPOLIS, MN | | |

*through an affiliation with Jackson Lewis P.C., a Law Corporation

MY DIRECT DIAL IS: (312) 803-2555
MY EMAIL ADDRESS IS: PATRICK.ROCKS@JACKSONLEWIS.COM

October 4, 2016

## VIA E-MAIL AND HAND DELIVERY

H. Candace Gorman
Law Office of H. Candace Gorman
220 South Halsted Street
Suite 200
Chicago, Illinois 60661

Re:     Motion for Rule to Show Cause, *Young v. City of Chicago*, 13 C 5651

Dear Ms. Gorman:

We write to provide a status report regarding the Independent Police Review Authority's compliance with Plaintiff's subpeona in this action and additional support for IPRA's request that the Plaintiff's pending motion for a rule to show cause should be withdrawn.

First, it is important to focus on the scope of the subpoena. It requests the following records:

> The complete investigative file for the incident that occured (sic) on August 9, 2012 resulting in the death of Divonte Young. Plaintiff seeks all investigative documents including but not limited to internal communications, external communications, e-mails, notes, fascmiles.

### The investigative file.

IPRA has produced a copy of the entire investigative file, including file covers. Specifically, on August 29, 2016, IPRA produced a copy of the investigative file, with records marked IPRA_0000213-1236.[1] On the same date, IPRA also produced records marked IPRA_0001237-1243. We understand those records are part of the investigative file but may not have been included in IPRA's previous production on July 8, 2016. Finally, on September 1, 2016, IPRA produced records marked IPRA_0001244-1259. These records included copies of the covers of the investigative file and a few notes located in the file, or on a cover.

---

[1] On information and belief, this file was produced on July 8, 2016, but we provided a second copy, as explained in our September 1, 2016 letter, so that we can refer to the pages of that document by bates numbers.


As we explained in our September 1, 2016 letter, IPRA has complied with Plaintiff's request for the complete investigative file.

### Investigative documents.

The plain reading of the second sentence of the subpeona shows that the phrase "all investigative documents" clarifies the first sentence and refers to investigative records that are not part of IPRA's investigative file but could be argued to be related to the investigation.

IPRA's investigation of the August 9, 2012 incident was closed on January 3, 2014 (see IPRA_0000214) and sent to the Records Division on January 22, 2014 (see IPRA_0001249). Thus, any documents created after that date are, by the terms of the subpoena itself, not responsive to the subpoena. But, in an effort to resolve this discovery dispute, IPRA has included records that are not part of IPRA's investigation of the August 9, 2012 incident, but refer to the incident or the investigation. By taking an generous view of Plaintiff's request, IPRA has engaged in a good faith attempt to satisfy Plaintiff that it has produced all documents responsive to the subpoena. IPRA reserves the right, however, to reject any arguments Plaintiff might attempt to advance that its good faith efforts to resolve this discovery dispute are somehow concessions that the scope of the subpeona is broader than it actually is.

To confirm IPRA's production of documents that may be related to the August 9, 2012 incident, but not are part of the investigative file, please refer to the records marked as IPRA_0000001-114 (produced on August 26, 2016), IPRA_00001260-1340 (produced on September 1, 2016) and IPRA_00001341-1352 (also produced on September 1, 2016).

Enclosed with this letter are additional records marked IPRA_00001353-1379. The only records IPRA has withheld that are related to the investigation of the August 9, 2012 incident and are not part of the investigative file are the few documents listed on the September 1, 2016 privilege log as subject to the deliberative process privilege. With this production, IPRA has exhausted its search for investigative documents.

### Non-responsive e-mails and attachments.

Plaintiff's pending motion persists in the erroneous contention that IPRA has "provided a fraction of the more than 900 emails that IPRA claims relates to this investigation." [ECF 144 at at 3-4]. The motion also incorrectly asserts that IPRA is withholding those e-mails as part of "IPRA's wholesale attempt to ignore this Court's Order in the guise of a courtesy." *Id.* at 4.

IPRA does *not* agree that e-mails referred to in the motion are responsive to the subpoena. IPRA actually contends the opposite, that the approximately 900 e-mails and attachments at issue are not related to the investigation of the August 9, 2012 incident or responsive to the subpoena. We repeatedly have informed you of IPRA's position on this issue.

> ➢ On August 26, 2016, we wrote: "IPRA provided us with 972 records that consist of e-mails and e-mail attachments. After reviewing those records, we identified 88 records that arguably are responsive to the subpoena." In the same letter, we invited



you to call us if you had any questions regarding IPRA's response, but you did not do so.

➢ On August 29, 2016, in response to letters you wrote to us on August 26, and August 27, 2016, we explained that "on August 26, 2016, we produced to you e-mails responsive to the subpoena that were acquired based on a search of IPRA's electronic records. The search terms used to generate these results were: 1056189, Otis Watts, Divonte Young, HV 422612, U#12-21 and LaShawnda Young." We also produced a copy of the e-mail that requested that search.

➢ On August 29, 2016, we also wrote: "... the e-mails and attachments that IPRA has chosen not to produce primarily consist of e-mails related to *freedom of information act requests*. We chose not to include these e-mails in our response as a courtesy to you *as they are not part of the investigative file and they are large files*." We estimate that these non-responsive files and their respective attachments have *in excess of 170,000 total pages*. (emphasis added).

➢ To illustrate the fact that the group of approximately 900 e-mails is not responsive to the subpoena and that production of those files would unreasonably burden IPRA, we produced two e-mails with attachments.

   o On March 28, 2016, IPRA produced to Dan Hinkel at the Chicago Tribune a zip file containing two Excel files. One file included 4,203 pages. The other included 706 pages.

   o On January 15, 2016, IPRA produced to Todd Lighty at the Chicago Tribune two Excel files. One file included 21 pages. The other included 24 pages.

As you know, these Excel files are lists of files. Presumably, a search term exists somewhere in each of these files, but the files indisputably do not qualify as parts of the investigative file, or investigative records. Thus, these records, and the many other records like them, are not responsive to the subpeona.

➢ On August 29, 2016, we also wrote: "If after seeing these files you would like us to produce the other non-responsive files, we would need until the end of the week to do so." You did not respond to this inquiry.

➢ On August 29, 2016, we also wrote: "We believe the documents you have received to date, as well as the records we sent on Friday, August 26, 2016, represent the entire investigative file. We are unsure what documents you believe are part of the file that have yet to be produced. *We would like to discuss these issues further with you to insure that all of your concerns are resolved.*"



> On September 1, 2016, we further explained our concern that production of nearly 170,000 pages of non-responsive records would be unreasonable. Specifically, we wrote: "We are following up to ask for clarification regarding Plaintiff's position on the production of the large number of e-mails and attachments we think are not responsive to the subpoena. Elan raised this issue in his letter to you on August 29, 2016. We are concerned that production of approximately 170,000 pages that may contain a search term used to capture e-mails for review, but are not related to the investigation, would be unreasonable. Elan provided examples of the type of record we are describing in his August 29, 2016 letter. *Please let us know Plaintiff's position on this issue as soon as possible.* (emphasis added).

> We also wrote in the September 1, 2016 letter, "Please convey any additional concerns you have regarding the records produced to date [and] any other records you believe exist but have not been located to date. We are committed to working with you and IPRA to resolve this matter as soon as possible."

> On September 19, 2016, we wrote an e-mail stating:

We think part of the issue is that IPRA's search terms captured a large number of emails that included a search term but were not responsive to the subpeona. Elan sent an example on August 29th. (Will you please confirm that you have his email? If not, we definitely think you should see it). It is an email dated March 28, 2016 from Dan Hinkel at the Tribune in relation to a FOIA request for information related to a large number of IPRA cases. Attached to the email was a spread sheet with thousands of lines of information in it (approximately 51,000 lines). Lines 41,004, 41,005 and 41,006 of that spreadsheet include the log number for the Young case, 1056186. The email was captured in IPRA's search because one of the search (the log number) was in the attachment, but the email and the attachment are not responsive to the subpeona.

Following up on our offer to provide additional examples of emails that include a search term somewhere in the email or, more likely, in an attachment, we are providing the enclosed Excel sheet. This sheet shows the correspondents, the subject of the e-mail, the names and file extensions of attachments and the number of pages for those attachments. It is important to note that of the approximately 400 records listed in the enclosed spreadsheet, over 75 percent of them were created *after* IPRA's investigation closed in January 2014.

Please also note that many of the e-mails in the non-responsive set are communications between IPRA and its attorneys, including outside counsel, and are protected by the attorney client communication privilege and the attorney work product doctrine. This set of e-mails also includes a few e-mails that are subject to the deliberative process privilege.

The e-mails and attachments over which IPRA is asserting privilege were created after January 2014. And, like the e-mails related to FOIA requests and other communications listed in the enclosed Excel sheet, the attachments to the privileged e-mails often are spreadsheets that





include a search term. These records are not responsive to the subpoena. IPRA contends that Plaintiff in good faith cannot pursue an argument that she is entitled to these records based on her subpoena. Moreover, IPRA contends that forcing it to create a privilege log for these records is unduly burdensome given the volume of material at issue and the fact that the e-mails and attachments are not responsive to the subpoena.

In summary, IPRA has exhausted its search for documents responsive to the subpoena. We ask that Plaintiff withdraw the pending motion.

Sincerely,

Patrick J. Rocks

PJR/va

Enclosures

cc:     Helen O'Shaughnessy, Independent Police Review Authority