IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LaShawnda Young, Independent Administrator for the estate of Divonte Young,<br><br>            Plaintiff,<br><br>vs.<br><br>The City of Chicago, et al.,<br><br>           Defendants. | Case No. 13-cv-5651<br><br>Hon. Joan B. Gottschall |

**IPRA'S RESPONSE TO PLAINTIFF'S AMENDED
MOTION FOR RULE TO SHOW CAUSE**

The Independent Police Review Authority ("IPRA"), by its attorney Patrick J. Rocks of Jackson Lewis P.C., submits this response to Plaintiff's Amended Rule to Show Cause ("Amended Motion") [ECF 149].

## INTRODUCTION

There are three disputed issues in this matter.

1.    The Parties[1] dispute the scope of the subpoena issued by Plaintiff to IPRA [ECF 149-1] (the "Subpoena"). IPRA contends the Subpoena is limited by its plain meaning: it seeks IPRA's investigative file, including "investigative documents" that are not in the file but are part of IPRA'S investigation of the death of Divonte Young on August 9, 2012 (the "Young Investigation"). IPRA disputes Plaintiff's contention that the Subpoena asks for records that are not, in any reasonable sense, part of the Young Investigation.

---

[1] Here, "Parties" refers to Plaintiff and IPRA, not the parties to the action. IPRA is a department of the City of Chicago, not a separate legal entity.

1

2. IPRA believes it has complied with the Plaintiff's discovery requests. Plaintiff insists, without evidence, that IPRA is withholding responsive documents.

3. IPRA objects to Plaintiff's contention that she is entitled to review thousands of pages of non-responsive records.

IPRA has conducted a thorough and reasonable search and has provided all documents responsive to the Subpoena, or, where the deliberative process privilege is asserted, a detailed privilege log in lieu of production. Accordingly, this Court should deny the Amended Motion.

## STATEMENT OF FACTS

IPRA responded to the Subpoena on May 17, 2016, asserting that because IPRA is a department of the City and discovery requests should be directed to the City's attorneys. [ECF 131-3]. Plaintiff moved to enforce. [ECF 131]. The Court granted that motion on June 3, 2016. [ECF 33][2] On July 29, 2016, by agreement [*see*, ECF 149 at 3], the Court set August 26, 2016 as the date for production of documents responsive to the Subpoena. [ECF 138].

### IPRA's Collection and Production of Documents

IPRA investigated the shooting death of Divonte Young from August 9, 2012 (the date of the shooting) until January 3, 2014. (IPRA Ex. A: Silva Affidavit at ¶ 7).[3] IPRA published a summary of the Young Investigation on the IPRA website on or around January 21, 2014. (Ex. A at ¶ 8). The Young Investigation has not been reopened. (Ex. A at ¶¶5-8). The period from August 9, 2012 to January 21, 2014, therefore, defines the outer limits of the period in which documents responsive to the Subpoena could have been created.

---

[2] In her motion to enforce, Plaintiff specifically sought notes from an August 14, 2012 Major Case Review meeting attended by IPRA employees that was related to the Young Investigation. [ECF 131 at 1-2]. The motion supports IPRA's belief that the Subpoena seeks only the Young Investigation file and related "investigative documents."
[3] In this memorandum, IPRA refers to its exhibits as "Ex. _ at _" and to Plaintiff's exhibits by ECF filing number.

The Subpoena was served on a former IPRA paralegal. [ECF149-1, p.2] The paralegal responded on May 17, 2016 [ECF 131-1], but apparently did not take further action regarding the Subpoena. (Ex. A at ¶10-11). The matter was assigned to IPRA attorney Claudia Silva ("Silva") on June 21, 2016. (Ex. A at ¶ 11). On July 8, 2016, Silva produced the records that were stored in the system used to store IPRA's investigative files, but did not have access to emails that could be reviewed for other responsive records. (Ex. A at ¶ 12-13).

To obtain emails for review, Silva requested a search of emails sent to or from any "@iprachicago" email address (*i.e.*, Silva did not limit the search to specific IPRA custodians) from August 9, 2012 to July 7, 2016 that included the following search terms: 1056189, Otis Watts, Divonte Young, HV422612, LaShawnda Young, and U #12-21 (the "Search Terms"). (Ex. A at ¶ 14-15.)[4] Silva drafted the request to be broader than the scope of the Subpoena (*e.g.*, it exceeded the time frame of the investigation and was not limited to custodians involved in the investigation) with the intention that she would review emails retrieved by the search and produce responsive records. The Search Terms, however, generated a much larger number of emails and attachments than Silva anticipated. (Ex A. at ¶ 16).

On July 14, 2016, Silva sent an email to Gorman, stating, "This Tuesday, we received e-mail communications relating to the IPRA investigation. The amount of materials and their attachments are significant." (Ex. A at ¶17; Ex. B). Silva did not intend her e-mail to mean she had reviewed the communications or determined whether they were responsive. (Ex. A at ¶18). Instead, Silva only was advising Gorman that the emails were responsive to the Search Terms.

---

[4] A copy of Silva's search request was provided to Gorman on August 29, 2016. (Ex. A at ¶15). Plaintiff has not objected to the scope of the search request.

(Ex. A at ¶18). In addition, when she referred to "600-700 e-mails," Silva was providing only an estimate. (Ex. A at ¶19).[5]

On July 18, 2016, Silva wrote Gorman: "After the [email data] is ready for our review, we will require some turn-around time in order to review the data for responsive documents." (Ex. A at ¶ 20; Ex. B). Silva wrote this to inform Gorman that the entire set of records yielded by the Search Terms was not responsive to the Subpoena, but that IPRA intended to review those records and produce responsive documents; Silva did not agree that the Subpoena asked for all emails or attachments yielded by the Search Terms. (Ex. A at ¶¶ 21).

IPRA provided its emails and attachments to DTI Global ("DTI"), which loaded them onto its e-discovery application. (Ex. A at 22-23). And, because IPRA did not have the capacity to review the large number of records resulting from the Search Terms, even with the assistance of DTI, the City of Chicago retained Jackson Lewis P.C. ("Jackson Lewis") to assist in reviewing the documents yielded by the Search Terms, identifying and producing responsive records, and preparing a privilege log for responsive, privileged records. (Ex. A at ¶ 26).

**Additional Efforts By IPRA To Locate Responsive Documents**

Silva interviewed current IPRA employees who may have been involved in the Young Investigation and obtained the responsive records in their possession or control, all of which IPRA produced, with the exception of drafts of the summary report listed on its privilege log. (Ex. A at ¶29). Silva also contacted former IPRA employees and IPRA's former chief administrator; all confirmed they did not have records responsive to the Subpoena. (Ex A at ¶ 30). Silva also worked with IPRA's data services director to search IPRA's computer system, but did not locate

---

[5] DTI Global, the system used by IPRA to review the emails yielded by the Search Terms, reports that the records loaded into its system are comprised of 972 records consisting of 422 emails and 550 attachments or other records for a total of 149,724 pages of what DTI refers to as "Relativity images." (Ex. A at ¶19).

responsive records other than those that already had been discovered. (Ex. A at ¶ 31). And, Jackson Lewis paralegal Michael Hernandez ("Hernandez") reviewed files in storage boxes at IPRA's offices. Hernandez did not find any responsive records in those files. (Ex. C: Affidavit of Michael Hernandez).

**Jackson Lewis Document Production and Communication With Gorman**

<u>August 26, 2016</u> – Jackson Lewis attorney Elan Shpigel ("Shpigel") produced documents and a privilege log. [ECF 149-2]. In the letter that accompanied that production, Shpigel explained that Jackson Lewis had reviewed the emails and attachments yielded by the Search Terms, provided documents that were deemed responsive to the subpoena, and held back other responsive documents on the basis of privilege. Jackson Lewis also produced copies of notes from the Major Case Review meeting (IPRA_0000210) that Silva discovered in her search and which Plaintiff previously had identified as a record she was seeking. (Ex. A at ¶¶ 27-28); see also, [ECF 131 at 1-2 and ECF 143-149-2, p.2].

<u>August 26, 2016 and August 27, 2016</u> – Gorman responded to Shpigel, making an assertion about responsive emails not being produced. [ECF 149-3 and 149-4].

<u>August 29, 2016</u> – Shpigel again clarified how the Search Terms were used to yield a set of emails for review. [ECF 149-5]. In the e-mail Shpigel sent with his first communication to Gorman on August 29th, he also provided examples of documents that were yielded by the Search Terms but deemed non-responsive to the subpoena, namely, two responses to FOIA requests made to IPRA that included large excel spreadsheets containing IPRA data. (Ex. A at ¶ 32, Ex. D: August 29, 2016 Shpigel to Gorman e-mail with partial attachments). In Shpigel's second communication to Gorman on this date, he sent a Bates-numbered copy of the investigative file that IPRA had produced on July 8, 2016, and additional documents from the investigative file,

5

including an audio recording that Silva had located. (Ex. A at 33; Ex. E: August 29, 2016 Shpigel to Gorman letter).

August 31, 2016 – Gorman sent a letter incorrectly alleging that IPRA had not produced responsive documents related to: (1) witness interviews, (2) notes from former IPRA chief administrator Scott Ando ("Ando"), (3) notes taken at the Major Case Review, and (4) a case review summary from the Illinois State Police. [ECF 149-6 at 2-3].

September 1, 2016 – Rocks sent a letter in response to Gorman's statements about alleged missing documents. (Ex. F: September 1, 2016 letter from Rocks to Gorman). Rocks explained: (1) Gorman's assumption that certain witnesses had been interviewed was incorrect because the investigative file showed that the witnesses had not responded to IPRA's requests to schedule interviews; (2) IPRA had produced the notes from the Major Case Review; (3) IPRA did not have a copy of the Illinois State Police case review summary; and, (4) IPRA was, with the September 1st letter, producing communications with the State's Attorney that IPRA had located in its continuing search for records.

In the September 1, 2016 letter to Gorman, Rocks also confirmed that IPRA was asserting only the deliberative process privilege and provided a revised privilege log and redacted copies of documents previously listed on the August 26, 2016 version of the log.[6] Contrary to Plaintiff's argument at pages 10 and 11 of the Amended Motion, [ECF 149], the other records listed on the previous log were produced. (Ex. F, referring to IPRA_0001260-1340). IPRA also produced copies of covers of the investigative file and other documents related to the investigative file that

---

[6] Plaintiff included only the August 26, 2016 log in the Amended Motion. [ECF 149-13]. The correct version of the log is part of IPRA Ex. F.

6

were located as part of IPRA's continuing effort to insure full compliance. (Ex. A at ¶¶34-35; see also, the privilege log sent with Ex. F).

September 15, 2016– Plaintiff filed her original motion for a rule to show cause but did not refer to the September 1, 2016 letter, the revised privilege log or the documents produced on September 1st. [ECF 143][7] After realizing the September 1, 2016 letter included material information, Gorman informed Rocks that Plaintiff would be amending the motion. Nonetheless, Plaintiff inexplicably omitted the September 1, 2016 letter and its attachments from the Amended Motion, too.

September 19, 2016 through October 4, 2016 – On September 19, 2016, Rocks wrote to Gorman, asking her to reconsider Plaintiff's position that all of the records yielded by the Search Terms were responsive. To illustrate this issue, Rocks referred to Shpigel's August 29, 2016 sample production of non-responsive documents and explained how the log number for the Young Investigation appeared at lines 41,004, 41,005, and 41,006 of the 51,000 line spreadsheet sent to the Chicago Tribune in response to a FOIA request. (Ex. A at ¶37; Ex. G: September 19, 2016 email from Rocks to Gorman).

October 4, 2016 – In a continuing effort to show full compliance with the Subpoena, Rocks sent a letter and additional records from a supplemental search of IPRA's emails. [ECF 149-10]. Rocks also provided a spreadsheet detailing 400 additional records resulting from IPRA's email search to further support IPRA's observation that the records were not responsive. (Ex. A at ¶ 38; Ex. H: Excerpts from spreadsheet sent on October 4, 2016.).

---

[7] Over the weekend of September 17 and 18, Gorman informed Jackson Lewis that she did not receive the September 1, 2016 letter, revised privilege log or additional records. On September 17, 2016, Shpigel re-sent the letter and enclosed documents. Gorman confirmed receipt on September 17, 2016.

October 5, 2016 – Gorman wrote to Rocks, stating, "I want to review the hundreds of emails that your client is now claiming are not responsive to my subpoena." [ECF 149-12].

October 10 and 11, 2016 – Rocks responded to Gorman's October 5, 2016 letter, explaining that IPRA remained committed to resolving Plaintiff's concerns, but objected to the unnecessary cost of reviewing a large amount of non-responsive material for privilege. Rocks asked Gorman to review the October 4th spreadsheet and select a reasonable number of samples for further discussion, a proposal that would have allowed Plaintiff to select records for review and allowed IPRA to examine those records for privilege on a case by case basis. Based on another supplemental review of emails to insure full compliance, Rocks also wrote that IPRA would be supplementing its production with additional records. (Ex. A at ¶ 39; Ex. I: October 10 e-mail from Rocks to Gorman). The following morning, Rocks sent additional records (IPRA_0001380-1443). (Ex A at ¶ 39; Ex. J: October 11, 2016 email from Rocks to Gorman (without attachments)).

October 26, 2016 – Plaintiff filed the Amended Motion, in which she did not refer to the September 1, 2016 letter, the September 19, 2016 email, the October 10 and 11, 2016 emails or any of the records produced on those dates. In addition, she attached the wrong privilege log, argued against privileges that IPRA was not asserting, and argued that she was entitled to see documents IPRA had already produced to her on September 1st.

## ARGUMENT

### I. IPRA'S EFFORTS TO COMPLY WITH THIS COURT'S ORDERS SHOW THE PLAINTIFF CANNOT ESTABLISH A BASIS FOR A RULE TO SHOW CAUSE HEARING OR A FINDING OF CONTEMPT

Plaintiff cannot insist on a contempt hearing because she is dissatisfied with the documents IPRA has produced, but must make "some threshold *factual* showing" that is "sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and

that there are disputed issues of material fact which will affect the outcome of the motion." *Sommerfield v. City of Chicago*, 252 F.R.D. 407, 414 (N.D. Ill. 2008) (emphasis in original). Plaintiff has not met this threshold burden.

Furthermore, the Court should deny the Amended Motion because even if a contempt hearing were scheduled, the records shows IPRA has made significant efforts to comply with the Court's Orders and because Plaintiff cannot prove IPRA violated the Court's Orders by "clear and convincing" evidence. *See Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989); *Israel Travel Advisory Serv. v. Israel Identity Tours*, No. 92 C 2379, 1993 U.S. Dist. LEXIS 1337, at *2-3 (N.D. Ill. Feb. 5, 1993) (Gottschall, J.). Absent a willful violation of this Court's Orders, IPRA may only be found in contempt if it has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Stotler & Co.*, 870 F.2d at 1163 (citations and quotations omitted); *see also Israel Travel Advisory Serv.*, 993 U.S. Dist. LEXIS 1337, at *2-3. The record shows that despite initial delays, for which IPRA recognizes its responsibility, IPRA has devoted substantial resources to fully and completely complying with its discovery obligations in this matter in as timely a manner as possible in light of the volume of material at issue.

## II. IPRA HAS COMPLIED WITH THE SUBPOENA

### a. IPRA Properly Interpreted the Scope of the Subpoena

The only investigation identified in the Subpoena is the Young Investigation. Plaintiff's argument that spreadsheets created for unrelated purposes, some years after the Young Investigation closed, are part of the Young Investigation file is not supported by the plain language of the Subpoena or this record. Plaintiff's alternative argument, that IPRA agreed that all records responsive to the Search Terms are responsive to the Subpoena also is unavailing. First, the argument distorts Silva's July 14, 2016 email. (Ex. A at ¶17). Second, on July 18, 2014, Silva

explained that she would be reviewing emails and attachments and producing the records that were responsive to the Subpoena. (Ex. A at ¶20).

IPRA's reliance on the plain language of the Subpoena is appropriate. In addition, it is supported by the plain meaning of "investigate," which is "[t]o inquire into (a matter) systematically; to make (a subject) the subject of a criminal inquiry" or "[t]o make an official inquiry." BLACKS LAW DICTIONARY 844 (8th ed. 2004). *See McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*, No. 05 C 760, 2009 U.S. Dist. LEXIS 111290, *8-9 (N.D. Ill. Dec. 1, 2009) (citing definition provided in Black's Law Dictionary to clarify the scope of a court order).

### b. IPRA Has Provided All Non-privileged Documents In Its Possession or Control That Are Responsive to the Subpoena

Under the Federal Rules, discovery is restricted based on relevance. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 222 (N.D. Ill. 2013). In addition, a party is not required to produce documents that do not exist or are not in its possession or control. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii).

IPRA has produced all responsive records, except for those listed in the September 1, 2016 privilege log. Plaintiff's contention that IPRA is obligated to review non-responsive records, produce a privilege log and produce the non-privileged, non-responsive records is contrary to the rules. And, if Plaintiff's theory were accepted, the Parties will be engaged in wide-ranging, unreasonably burdensome, expensive disputes over records that bear no relationship to the Young Investigation.

In addition, in her Amended Motion, Plaintiff repeats arguments about documents that either do not exist or are not in IPRA's possession. Plaintiff also argues about records that have been produced, presumably because she did not review the revised privilege log and documents

produced on September 1, 2016. [See, ECF 149 at 11 "the withheld documents are exactly the type of documents that plaintiff seeks. In fact, many of the descriptions of work product as they appear in the summaries of "work completed" during different time periods."].

### c. The Deliberative Process Privilege Appropriately Applies To The Documents Identified As Such On The September 1, 2016 Privilege Log

IPRA appropriately withheld five documents pursuant to the deliberative process privilege. The determination of whether the deliberative process "privilege attaches entails a two-part test: in order to be protected from disclosure, a communication must be both pre-decisional in the sense that it is 'actually [a]ntecedent to the adoption of an agency policy,' and deliberative in the sense that it is 'actually . . . related to the process by which policies are formulated.'" *Guzman v. City of Chicago*, No. 09 C 7570, 2011 U.S. Dist. LEXIS 1730, *8 (N.D. Ill. Jan. 7, 2011) (quoting *Enviro Tech Int'l v. Envt'l Prot. Agency*, 371 F.3d 370, 375 (7th Cir. 2004)). The deliberative process privilege applies to IPRA summary reports and discussions related to their contents. *See id.*, at *11-12. In order to assert the deliberative process privilege, a party must satisfy three elements: "(1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and, (3) the official must specifically identify and describe the documents." *Id.* at *5-6.

As reflected in the September 1, 2016 privilege log, the documents over which IPRA is asserting the deliberative process privilege include: (1) a preliminary typed draft of the summary report of the Young Investigation; (2) Ando's hand-written notes on a typed draft; (3) a final typed, unsigned version of the summary report; and (4) the cover e-mails for the two typed versions. (Ex.

11

K: Affidavit of Sharon Fairley ("Fairley") at ¶ 6.)[8] Here, IPRA has established the basis for asserting the deliberative process for the five documents at issue: (1) Fairley is the chief administrator of IPRA and is making a formal claim of privilege based on her personal consideration of the privileged records; (2) she has set forth precise and certain reasons for preserving confidentiality; and, (3) she had described the documents for which the privilege is being claimed. (Ex. K at ¶1, 6, 7-9).

### d. IPRA Timely Provided An Appropriate Privilege Log.

A privilege log must contain the following information for each separate document identified as privileged: (1) the date, (2) the author and all recipients, (3) the capacities of the recipients, (4) the subject matter of the document, (5) the purpose for its production, and (6) a specific explanation of why the document is privileged. *See RBS Citizens,* 291 F.R.D. at 218. In other words, a party must establish all of the essential elements of the privilege being asserted. *See United States v. BDO Seidman,* 337 F.3d 802, 811 (7th Cir. 2003).

If a party fails to produce a privilege log, or produces a deficient log, that party may *potentially* waive the right to assert the privilege. Such a discovery sanction "may only be imposed where a party displays willfulness, bad faith, or fault." *Am. Nat'l Bank & Trust Co. v. Equitable Life Assur. Soc'y of the United States,* 406 F.3d 867, 877 (7th Cir. 2005) (internal quotation omitted). In addition, blanket waiver is not favored. *See Chatman v. Morgan, Lewis & Bockius, LLP,* No. 10 C 4679, 2013 U.S. Dist. LEXIS 64316 (N.D. Ill May 1, 2013) (finding a two month delay insufficient grounds for waiver); *Muro v. Target Corp.,* 250 F.R.D. 350, 360 (N.D. Ill. 2007).

IPRA had not located the documents for which it claims privilege when it originally

---

[8] The draft summary report that Ando edited was prepared by IPRA investigator Looby. She forwarded that draft to IPRA employee Tammy Clark in an e-mail on December 9, 2014. This is the only version of the initial draft located to date. The other attachment to Looby's December 9, 2014 email related to a separate IPRA investigation.

responded to the Subpoena. (Ex. A at ¶27, 36). Shortly after locating these documents, IPRA provided a privilege log on August 26, 2016 and a revised log on September 1, 2016. IPRA's production of the privilege log was timely. *See Guzman*, No. 09 C 7570 at *6.

## III. THE AMENDED MOTION RESTS ON AN UNREASONABLE READING OF THE SUBPOENA AND IS NOT CONSISTENT WITH E-DISCOVERY PROCEDURES

### a. The Subpoena Does Not Request All Records Responsive To The Search Terms.

The Subpoena does not request all documents that contain the Search Terms. Plaintiff's argument that IPRA conceded that all records yielded by the Search Terms are *per se* responsive reflects a misinterpretation of Silva's July 2016 emails. Moreover, Plaintiff's argument that she is entitled to see all records responsive to the Search Terms, regardless of cost or benefit, violates core e-discovery principles.

### b. IPRA's Efforts To Resolve This E-Discovery Dispute Were Proper And Reasonable

Federal Courts look to *The Sedona Conference Cooperation Proclamation* (the "*Cooperation Proclamation*") for guidance on parties' obligations to cooperate during e-discovery. *See DeGeer v. Gillis*, 755 F. Supp. 2d 909, 918 (N.D. Ill. 2010). The *Cooperation Proclamation* provides that: "Courts see [the Federal Rules of Civil Procedure] as a mandate for counsel to act cooperatively. Methods to accomplish this cooperation may include: . . . [e]xchanging information on relevant data sources, including those not being searched, or scheduling early disclosures on the topic of Electronically Stored Information . . . [and] [j]ointly developing automated search and retrieval methodologies to cull relevant information . . . ." *The Sedona Conference Cooperation Proclamation*, p. 2, available at https://thesedonaconference.org/cooperation-proclamation. In addition, federal courts have recognized that "sampling" of e-discovery results is an effective means of quality management.

See *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125 (S.D.N.Y. 2015) (Peck, J.).

Following these protocols, IPRA provided Plaintiff with samples of the results of the email search deemed non-responsive to the Subpoena as well as a spreadsheet detailing information related to 400 other samples of non-responsive records. IPRA also explained that the non-responsive records include privileged communications with attorneys, and that review of the records for privilege would be unreasonably burdensome. Instead, IPRA offered reasonable suggestions on how Plaintiff could become comfortable that the records are not responsive, including offering additional examples of non-responsive emails. Plaintiff has rejected these proposals; instead she apparently insists on reviewing all non-responsive emails, including privileged communications regarding matters unrelated to the Young Investigation.[9] In a renewed effort to find a cooperative way to resolve this issue, however, IPRA intends revise its previous proposal by providing an Excel spreadsheet that reports *all* 972 records in the DTI database and again inviting Plaintiff to select records for further discussion.

IPRA recognizes Plaintiff's frustration with the delay that occurred before Silva began working on this matter, but her unwillingness to cooperate imposes an unreasonable burden IPRA. And, if the Parties disputed privilege, Plaintiff's position would bring hundreds of disputed records to the Court for review and resolution.

## **CONCLUSION**

IPRA respectfully requests the following relief from the Court;

(1) An order denying Plaintiff's Motion for a Rule to Show Cause;

---

[9] For example, on October 5, 2016, Gorman wrote to Jackson Lewis, speculating "Finally, I understand that the DOJ is looking into the police shooting files including this file, which means that this investigation is not "closed." [ECF 149-12]. Gorman offered no foundation for her "understanding" or for the conclusion that if another agency is investigating the CPD, IPRA's Young Investigation somehow is not closed. It is undisputed, in any event, that IPRA has not reopened the Young Investigation, and the Subpoena clearly cannot be read to include IPRA's communications with outside counsel representing the City in relation to an external federal investigation.

(2) An order finding that the Subpoena is limited to the Young Investigation file and other documents that are substantively related to the investigation of the death of Divonte Young;

(3) An order finding that documents yielded by the Search Terms are not responsive to the Subpoena unless they are part of the Young Investigation file or are "investigative documents" related to the Young Investigation;

(4) A finding that IPRA has appropriately asserted the deliberative process privilege as to the records outlined in the September 1, 2016 log;[10] and,

(5) An order finding that IPRA has complied with the Subpoena and this Court's Orders.

In the alternative, if the Court finds the Subpoena includes all records yielded by the Search Terms, IPRA asks the Court to recognize that IPRA interpreted the Subpoena reasonably and in good faith based on its plain language. IRPA also asks that the Amended Motion be denied under those circumstances because the Subpoena, and by extension the Orders to comply with it, did not "set forth in specific detail an unequivocal command" to produce the documents claimed by Plaintiff sufficient to support a rule to show cause or a finding of contempt. *Stotler & Co.*, 870 F.2d at 1163. Under these circumstances, should they arise, IPRA asks that the Court instead issue an order clarifying the scope of the Subpoena and setting a date for production of non-privileged documents and a new privilege log.

Respectfully submitted,

**INDEPENDENT POLICE REVIEW AUTHORITY**

By: /s/ Patrick J. Rocks
    One of Its Attorneys

Patrick J. Rocks
Jackson Lewis P.C.
150 N. Michigan, Suite 2500
Chicago, IL 60610
(312) 787-4949
patrick.rocks@jacksonlewis.com

---

[10] IPRA also is prepared to provide the records listed in the privilege log for in camera review.

**CERTIFICATE OF SERVICE**

I, Patrick J. Rocks, an attorney, certify that on November 9, 2016, I caused a true and correct copy of the attached **IPRA'S RESPONSE TO PLAINTIFF'S AMENDED MOTION FOR RULE TO SHOW CAUSE** to be filed with the Court by electronic filing protocols, and that the same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.

/s Patrick J. Rocks