UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LaShawnda Young, ) | |
| Independent Administrator for the estate ) | |
| Of Divonte Young ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 13 CV 5651 |
| CITY OF CHICAGO, et. al. ) | |
| ) | Hon. Joan B. Gottschall. |
| ) | |
| Defendants. | |

**PLAINTIFF'S REPLY TO IPRA'S RESPONSE TO THE RULE TO SHOW CAUSE WHY THE INDEPENDENT POLICE REVIEW AUTHORITY SHOULD NOT BE HELD IN CONTEMPT OF THIS COURTS ORDERS OF JUNE 8, 2016 AND JULY 29, 2016.**

NOW COMES Plaintiff LaShawnda Young, Independent Administrator for the estate of Divonte Young, by and through her attorney, H. Candace Gorman and Matthias D. Gill, and in reply to the response of the Independent Police Review Authority regarding Plaintiff's Petition for Rule to Show Cause, Plaintiff replies as follows:

**I. BACKGROUND**

In its Response, IPRA, an agency of the City of Chicago, claims that the issues of this Motion for Rule to Show Cause boil down to four main points: 1) the scope of the subpoena; 2) IPRA's belief it complied with the subpoena; 3) IPRA's theory that many of the pertinent documents are protected by privilege; and 4) IPRA's objection to counsel reviewing IPRA emails that were discovered by way of standard e-discovery location techniques. (See

Response, Doc. 156, page 3-5 re: techniques undertaken by counsel Silva and IPRA generally). As shown below, IPRA's arguments are without merit.

A. SCOPE OF THE SUBPOENA

The subpoena is clear on its face. IPRA's attempt to argue that the subpoena is not clear on its face falls flat given IPRA did not even raise this specious argument until long after they agreed to provide all of the emails, if Plaintiff's counsel was not satisfied with IPRAs initial disclosure. (Am. Rule Doc. 149, Pg. 5) It is also clear that IPRA understood the subpoena to be seeking "all investigative documents including but not limited to internal communications, external communications, emails, notes, facsimiles" when it sent all of the materials to an outside vendor for organizing and cataloging. These simple facts, in and of themselves, are also clear and convincing evidence of a contumacious violation of the Order Granting Plaintiff's Motion to Compel. In addition, as discussed in the Amended Motion for Rule and below, Plaintiff believes IPRA's recent objections were waived (including IPRAs newest objection as to the scope of the subpoena). (Doc. 149, pages 10-11)

B. IPRA'S FAILURE TO COMPLY

Plaintiff has been seeking compliance of this very important discovery for, literally, years. Plaintiff first brought up the issue of IPRA's failure to produce all pertinent documents in her Complaint. (Fourth Amended Complaint-Doc. 78,¶s 35-38 & 43) The subject matter of the subpoena was requested from the City years ago in written discovery between the City and the Plaintiff. Plaintiff's counsel made numerous follow up requests to the City because, frankly, she did not believe that the file tendered was complete. (See, Amended Rule Doc. 149, pgs. 1-2) Plaintiff was repeatedly informed by the corporation

2

counsel's office that she had all of the documents from the IPRA investigation. The City *never* made any objection to the requested documents, the City just failed to produce all of the materials related to the complete investigation, ultimately forcing Plaintiff to serve a subpoena on IPRA.

The subpoena was only served after Plaintiff learned, this past May, that corporation counsel could not directly approach IPRA regarding the documents Plaintiff sought. Realizing there was no one of record who could attest to the completeness of the discovery disclosures she served a subpoena directly on IPRA on June 8, 2016. After IPRA ignored the Subpoena this Court granted Plaintiff's Motion to Enforce on July 29th and also granted IPRA the extensive amount of time IPRA claimed to need in order to gather the materials (IPRA had almost three months to comply from the time of receiving the subpoena). (Doc. 133 & 138) Almost seven months have now passed since Plaintiff served the subpoena and the City and IPRA continue to stall. IPRA should not be allowed to continue to avoid producing this vital discovery.

In its Response, IPRA documents its counsel's efforts to work with Plaintiff's counsel beginning in late August of 2016. (See Response, Doc. 156, pages 5-8). The Rule to Show Cause however was filed on August 15, 2016. There was no effort by IPRA to work with Plaintiff until that Rule was filed and IPRA's after-the-fact attempts to comply were dismal. Although IPRA, in its response brief, has continued to indicate that it would be willing to "resolve the issue" short of going to hearing on the motion, the facts belie that assertion. IPRA's arguments demonstrates that after the initial production on August 26, 2016, Plaintiff's counsel objected to the incomplete production and was provided with more

documents on August 29, 2016. Additional objections were rewarded with more documents on September 1, 2016. From Plaintiff's perspective, all of these documents should have been produced in discovery long ago, without the need for a subpoena, and IPRA continues to withhold pertinent documents.

c. **THIS COURT SHOULD REJECT IPRA'S PLEA FOR A PRIVILEGE**

The City, with additional counsel appointed for this separate agency, has now engaged in a lengthy discovery dispute regarding the production of the documents and emails that were discovered by way of the subpoena presently at issue before the Court. As further argued below in Section II, Plaintiff does not believe that any privilege should be granted to the documents, not only because of the late date in the City raising the privilege, but also because the documents Plaintiff seek go to the very heart of Plaintiff's complaint- that IPRA continues to refuse to provide pertinent and relevant documents, and also that IPRA helps cover up wrongful police shootings. The subpoena served upon IPRA subsequent to the City's assertions has yielded some fruit and Plaintiff asks this Court to not allow IPRA to hide other critical discovery under the guise of privilege.

d. **IPRA'S PROPOSAL FOR EMAIL REVIEW IS FUNDAMENTALLY UNFAIR**

IPRA's current recommendation is that Plaintiff's counsel should be forced to select random emails (that IPRA organized on spreadsheets) to review *and after Plaintiff makes her selection* IPRA will decide whether or not to tender the requested document or to continue to withhold the document(s) based on a privilege it will assert *after-the-fact*. This is in addition to the documents that IPRA is already attempting to withhold based on privilege. IPRA's argument is, in essence, if Plaintiff selects a random email that IPRA does not believe

Plaintiff is entitled to see, it will continue to withhold the document based on a privilege that, to date, has not been asserted for the document. If Plaintiff selects a random email that does not contain relevant information they will tender the document and argue that fact somehow proves the entire batch of emails that they are withholding must also be irrelevant. This approach is fundamentally unfair and also ensures at least one more round of motions before this Court, as Plaintiff does not agree that a privilege is warranted in this situation and certainly wouldn't agree that IPRA could do an after-the-fact designation of privilege. Plaintiff would once again be required to file a motion for compliance for the documents still being withheld.

    IPRA also claims that it would be overly burdened by reviewing these emails in advance of production. Plaintiff does not agree. Plaintiff's position is that she is entitled to all of the emails and that no privilege should be granted to the documents and, therefore, there is no need for a further review. In addition, the detail and scope of IPRA's spreadsheets and the cataloguing of these emails at issue shows that, at least to a certain extent, this work seems to have been mostly completed already. Perhaps even more troubling is the admission by IPRA that they have not really conducted a sufficient review of documents they are withholding. That certainly begs the question as to how IPRA can claim the documents are not responsive. In short, Plaintiff does not accept the approach set out by IPRA and Plaintiff does not agree, as further argued below, that any of the documents should be withheld based on privilege.

## II. IPRA SHOULD NOT BE ALLOWED TO WITHHOLD DOCUMENTS ON THE BASIS OF PRIVILEGE

In addition to refusing to turn over the emails that IPRA has collected in response to this subpoena, IPRA also refuses to turn over numerous pertinent and relevant documents, including drafts of its final report. IPRA attempts to bootstrap a deliberative process objection in their Response to a Rule to Show Cause by generating an affidavit of Sharon Fairley for the purpose of their privilege argument. Again, Plaintiff's position is that this is too little and too late. IPRA has admitted that documents upon which they claim deliberative process privilege include draft reports, hand written notes, an unsigned version of a report, and cover emails for those drafts. (Doc. 156, pgs. 11-12) Surely, a qualified privilege cannot be asserted by the government to conceal its widespread efforts to cover-up unlawful shootings by police officers, which is the claim being made in this case. Officers, like Defendant Watts, rely on IPRA's methods, which IPRA calls an investigation and Plaintiff calls a sham, in deciding to use deadly force because Officers know that IPRA is a willing participant in the code of silence.

IPRA's need to keep this process secret is not outweighed by Plaintiff's need for the discovery, since this is the very matter at issue in this case. IPRA should not be permitted to operate in this fashion in the name of the City of Chicago; it is not privileged to do so, and the Court should not enable this deception on the public. Documents withheld include notes by Mr. Scott Ando[1] and those notes are going to be germane to this case. Plaintiff has

---

[1] Scott Ando was head of IPRA at the time of this investigation and was in charge of this particular investigation. Within hours after the DOJ announced its investigation into the practices of the CPD Mr. Ando's abruptly resigned from the agency.

already learned from the discovery tendered pursuant to this subpoena, that Mr. Ando claimed to have interviewed witnesses in his investigation but that claim is not supported by any of the documents thus far received. If, in fact, Mr. Ando was lying about the nature of his investigation, his notes and the other documents generated in this investigation, which IPRA seeks to keep under wraps, will be crucial.

IPRA cannot deny that Plaintiff will discover that IPRA supervisors, including Mr. Ando, have been ordering their investigators to change their recommendations through the use of draft summary reports. In fact, IPRA has been accused by its own employees of forcing investigators to change findings against their will and judgment, or lose their job. *See Davis v. City of Chicago*, 15-cv-7771, Doc. 28, p. 3 (Davis claims he was fired because he refused to change sustained findings on a deadly shooting cases) (order granting motion to dismiss federal claims and declining supplemental jurisdiction). In this case, one of the very preliminary documents in the IPRA investigation shows the deceased in a very different location at the time Officer Watts began shooting, then later documents show. That fact completely contradicts the CPD's theory of this shooting. It is very likely that the withheld documents will shed some light on that extremely important change in the facts. At the very least, the deliberative process privilege should not apply to the draft summary reports and notes of IPRA for two reasons: (1) the draft summary reports and notes are not the type of materials covered by the privilege; and (2) Plaintiff has a compelling need to review these documents and prevent the ongoing deception of the public related to this IPRA investigation.

### a. LEGAL STANDARD

It is well-settled that the law enforcement investigatory privilege (sometimes called the deliberative process privilege) is hardly absolute, especially given the fact that there is a broad federal mandate for discovery in all civil actions. *Wood v. Breier*, 54 F.R.D. 7, 10 (E.D.Wis.1972). The purpose of the law enforcement privilege is to protect law enforcement efforts from harm that might arise from public disclosure of investigatory files. *In re the Marriage of Daniels*, 607 N.E.2d 1255 (Ill.App. 1992).

In determining whether the law enforcement privilege applies, courts have considered and weighed ten factors: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant to any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to plaintiff's case. *Kampien v. Individuals of Chicago Police Department*, 2002 WL 238443, at *4 (N.D.Ill. 2002). The claim for application of the privilege is "somewhat stronger" when law enforcement is seeking to protect ongoing

investigations as contrasted with closed files, decisions to prosecute as contrasted with decisions not to prosecute, confidential informant identities as contrasted with names of incidental witnesses, confidential law enforcement methods and tactics as contrasted with simple interview materials, and evaluative opinions as contrasted with facts. *G-69 v. Degnan,* 130 F.R.D. 326, 332 (D.N.J.1990).

In *Dellwood Farms, Inc. v. Cargill, Inc.,* 128 F.3d 1122, 1125 (7th Cir. 1997), the Seventh Circuit explicitly declared that the law enforcement investigatory privilege "can be overridden in appropriate cases by the need for the privileged materials" and that balancing the need of the litigant against harm to the government from disclosure is a "particularistic and judgmental task", one that varies with the facts of each case. *See Doe v. Hudgins*, 175 F.R.D. 511, 514 (N.D. Ill. 1997) ("the investigative privilege is not an absolute bar to discovery" and the party asserting privilege bears burden of justifying its application); *In re Polypropylene Carpet Antitrust Litigation*, 181 F.R.D. 680, 688 (N.D. Ga. 1998) ("a finding that the documents fall within the scope of the law enforcement investigatory privilege does not end the Court's analysis"). As the privilege is not absolute, a decision regarding the applicability of such privilege must balance the need of the litigant seeking the information versus the harm to the government if the information is disclosed.

If this Court does not deem the privilege waived, Plaintiff still overcomes any prima facia case that IPRA claims it has made in its Response Brief because Plaintiff can show a particularized need for the documents. As discussed in a recent decision denying the privilege to IPRA in a police shooting case where, like here, the victim was killed, Judge Chang held "When undergoing the 'particularized need' analysis the court balances the

9

plaintiffs need for disclosure against the government's need for secrecy. "*Ferrell v. U.S. Dept of Hous.and Urband Dev.*, 177 FRD 425, 429; *Accord United States v. Farley,* 11 F.3d 1385, 1390 (7th Cir. 1993). Although not binding on this Court, Judge Chang's recent opinion contains an exhaustive analysis of the investigative privilege asserted by IPRA and determined that the internal documents should be disclosed to a Plaintiff in a police shooting case similar to this case. In that decision Judge Chang considered the following factors when conducting the balancing test:

the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; more than just facts; they contain the back-and-forth communications between supervisors and investigators, which is the precise reason why Holmes wants to review them. (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is would hinder frank and independent discussion about government policies and decisions.
*Ferrell*, 177 F.R.D. at 429 (quoting *Edgar*, 964 F. Supp. At 1209)."

*Holmes v. Chicago* 14 C 8536 (Doc. 238; November 22, 2016).

**i. THE DOCUMENTS SOUGHT ARE RELEVANT**

As in the *Holmes* case, the documents Plaintiff seeks are relevant to Plaintiff's theory. [2] Plaintiff's complaint alleges a widespread practice by IPRA of facilitating the CPD's code of silence for refusing to find that officers engage in misconduct when killing individuals without provocation. In addition, as mentioned above, Plaintiff has discovered from the few documents she received, that a major fact was changed from the preliminary report to the

---

[2] However, two facts that differ from the *Holmes* case is the fact that IPRA refuses in this case to provide a substantial amount of evidence that it agreed to provide in *Holmes* and *Holmes* is actually seeking hundreds of files in support of his *Monell* claim not just the file from the Holmes investigation.

later report (the location of the victim at the time the officer started shooting). There is no explanation or indication of this change in the documents that were provided, however, the changing of a crucial fact surely must be linked to some discussion and/or noted somewhere in the documents. Like in the *Holmes* case, the notes, drafts and other documents should shed light on this factual change and may also point to other evidence showing IPRAs *help* to officer Watts and support for the theories that the police later came up with in this investigation.

Finally, the draft summary reports and other documents may show that supervisors ordered investigators to change their recommendation or to otherwise edit the report. As mentioned above, a former IPRA investigator has a lawsuit pending asserting that he was fired for refusing to change his recommendations. Indeed, Judge Chang found that fact supported relevance and the disclosure of the draft reports. (Id. at 12)

ii. UNAVAILABILITY OF OTHER EVIDENCE

Although IPRA allows an investigator to file a non-concurrence memo if they do not agree with the final recommendation by IPRA, Plaintiff does not know if such a non-concurrence memo was generated in this investigation, only that one has not been tendered. Plaintiff does know, however, that the investigator who wrote the preliminary report in this matter included an important fact related to the location of the victim at the time of the shooting. Later, and for unknown reasons, another investigator was assigned to the case and provided the final recommendation- with that important fact changed. Although IPRA stated that they would provide litigation hold agreements from the employees who worked on this file most of those signed agreements have not been tendered. Perhaps even more

11

importantly, no litigation hold document was even generated for the initial investigator who recorded the important fact that was later changed for the final report.

It is also important for this Court to be aware of the fact that the investigation in this case has been closed for years- Plaintiff is not seeking an open investigative file. The documents which IPRA refuses to turn over from this long closed file include documents that could very well shed light on why an important fact in this investigation changed from the preliminary report to the final report. Indeed, the draft reports will show if a supervisor in this case directed an investigator to change this fact (and/or other facts) as well as show whether there was pressure on an investigator to change her recommendation. These documents are crucial in this case and cannot be replicated with any other evidence.

iii. **IPRA'S ROLE IN THIS LITIGATION**

The fact that IPRA is an agency of the City of Chicago and, therefore, a party to this litigation, defeats any argument by IPRA that they do not have a role in this litigation. Plaintiff's complaint makes clear that she considers the actions by IPRA, in condoning excessive force by police officers to be a central fact, not only for her individual cause of action, but also in her *Monell claim* against the City alleging that IPRA condones this pattern and practice of violence by police officers by failing to hold the officers accountable.

iv. **SERIOUSNESS OF THE LITIGATION AND ISSUES**

This is a police shooting case that resulted in the death of a young unarmed man. Plaintiff has alleged that IPRA is part of the problem- that IPRA routinely lets the police off the hook for any responsibility and, in fact, IPRA routinely covers-up the unlawful shootings by police officers. The documents that IPRA is withholding include draft reports

that are sent to supervisors before becoming final. Supervisors in turn make comments and changes. The final report is a result of the interaction between the supervisors and investigators. In other words, the decision-making process is the issue because that decision-making process results in the final report. It is this process that Plaintiff challenged in her complaint and courts routinely find that there is a particularized need for disclosure in situations such as this. See, *Smentek v. Sheriff of Cook County* 2013 WL 2588709 *4 (N.D. Il. 6-11-2013)

v. **CHILL ON DELIBERATIONS WILL BE MINIMAL**

Although IPRA claims that disclosing all of the documents that it has withheld will chill their deliberations, Plaintiff maintains that the opposite will actually be the case. Knowing that their deliberations, through documents such as the draft summary reports, can be reviewed by the citizens of Chicago could actually result in a more transparent organization. If supervisors know that their strong arming of an investigator to turn the tide towards exonerating violent police officers will be public knowledge, that practice could be minimized. Also, as Judge Chang (at 20-21) pointed out in the *Holmes* case "But the extent of the impact on IPRA deliberations is dampened because IPRA already purportedly generates a record of internal dissent: the formal non-concurrence memoranda[3]."

---

[3] As pointed out above this memo allows investigators to formally oppose a finding in a matter that they have been investigating.

Judge Chang allowed the summary reports to be produced "for attorneys' eyes only" but the case before Judge Chang was seeking the discovery of multiple files in support of the Monell theory. Plaintiff is only seeking the documents from the file at issue herein and Plaintiff submits that those documents should not be produced with that restriction.

**III. CONCLUSION**

Plaintiff has spent an inordinate amount of time in order to ensure that she has all of the pertinent documents that were generated relating to this investigation. When the City failed to provide all of the documents pursuant to discovery requests, Plaintiff was forced to serve a subpoena on IPRA, move to compel the subpoena, file a Rule to Show Cause, and finally, after exhausting her legitimate attempts to negotiate at least some of the disputes- was duty-bound to amend her Rule to explain to the Court what she has now received and what is still outstanding. Lastly, the ongoing "piecemeal" production from IPRA, that at this point has literally spanned years, is evidence that the City has not complied with discovery or the subpoena and that IPRA's conduct has been deliberate and willful. Wherefore, Plaintiff asks this Court to Order the following relief: That IPRA is in direct contempt of this Court's orders; That IPRA is required to immediately make available, directly to Plaintiff's counsel, all of the documents generated relating to the investigation of the incident that occurred on August 9, 2012 that resulted in the death of Divonte Young without the attachment of any privilege; to order IPRA to tender signed "litigation hold" documents insuring that everyone who worked on this file (including the investigator who worked on the initial report) has conducted a diligent search for documents and has tendered all documents; finally, to order IPRA to pay Counsel's fees as a sanction for IPRA's contumacious conduct and for such other and further relief as this Court deems just.

Respectfully Submitted,

 /s/H. Candace Gorman
Attorney for Plaintiff

/s/ Matthias D. Gill
Attorney for Plaintiff




H. Candace Gorman
Law office of H. Candace Gorman
220 S. Halsted
Suite 200
Chicago Illinois 60661
312-427-2313

Matthias D. Gill
Illinois ARDC# 6282953
The Gill Law Firm, PC
1820 Ridge Road, Suite 216
Homewood, Illinois 60430
(708) 816-8080
mgill@gillfirm.com