## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## <u>EASTERN DIVISION</u>

| | | |
|---|---|---|
| LaShawnda Young, | ) | |
| Independent Administrator for the estate | ) | |
| Of Divonte Young | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 13 CV 5651 |
| CITY OF CHICAGO, et. al. | ) | |
| | ) | Hon. Joan B. Gottschall. |
| | ) | |
| Defendants. | ) | |

## OPPOSITION TO MOTION TO RECONSIDER

Now comes the Plaintiff LaShawnda Young, by and through her attorneys H. Candace Gorman and Matthias Gill, and states the following in response and opposition to defendant's Motion to Reconsider:

### A. INTRODUCTION

The City of Chicago has filed a motion to reconsider which argues that this Court relied on grounds "outside the adversarial issues presented by the *parties*" and that this Court "misapprehended" the facts. (Doc. 209, p. 5). The City is wrong in regards to both of its arguments and its Motion to Reconsider should be denied. This Court's January 3, 2017 Memorandum Opinion and Order was a thorough analysis of the briefing. In its response to the Amended Rule the City laid out "the three issues in dispute in this matter:" 1. the scope of the subpoena; 2. it's belief that it complied with Plaintiff's discovery requests; and, 3. it's objection to what the City characterized as "Plaintiff's contention that she is entitled to review thousands of pages of non-responsive records."

(Doc. 156, pg. 1-2) Plaintiff argued that the City waived any assertion of privilege and outlined the history and failure of the City to comply with the subpoena.

In ruling on the Amended Rule this Court correctly relied on the briefing for the Amended Rule which was extensive, including both a Sur Response and Sur Reply. This Court specifically found that: "The issues in dispute have been fully briefed. The matters raised do not call for the resolution of disputed factual issues[1]. Rather, the parties ask for rulings on the scope of the subpoena and a waiver question premised on actions taken in open court." (Doc. 179, pg. 10) In its Memorandum Opinion and Order, this Court resolved the issues by finding that the subpoena clearly covered all documents related to the investigation- not just documents generated prior to the closing of the investigative file- and that the City waived any privilege by not asserting it until long after this Court's Order enforcing the subpoena. With this Court's findings in place, the issue as to whether some of the documents might be "non-responsive" became moot, as all of the documents were ordered to be produced.

Nevertheless, the City has now filed extensive briefing on a Motion to Reconsider which not only reargues the points raised in the underlying briefing, but which also attempts to weave in facts and arguments that it either neglected to make the first time around or which it chose not to raise for strategic reasons. Seemingly, this is an attempt to battle against an award of attorney's fees, perhaps due to the Court's mention in its

---

[1] The City's Response (as with the Motion to Reconsider) acknowledged the piecemeal production of documents over the months following the compliance date and its withholding of hundreds of documents under its belated theory of "outside the scope of the subpoena." (Doc. 156, pgs. 5-8)

January 3, 2017 order that: "The City devotes little, if any, of its response to the propriety of awarding fees – under Rule 37 or 45 – if it were to lose the motion." (Doc. 179, p. 23). However, the fact that the City did not spend much time responding to the fees issue does not make this issue ripe for *reconsideration*. If anything, this motion, which does not meet the standard for a motion to reconsider and which strains the resources of this Court, inadvertently answers the question of the propriety of fees in this matter and confirms that fees are justified.

### B.    LEGAL STANDARD FOR RECONSIDERATION

The standard for granting reconsideration of a court's ruling is daunting, under the view expressed by the Seventh Circuit in *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990), reconsideration is appropriate where the Court has obviously misunderstood a party, where the Court's decision rests on grounds outside the adversarial issues presented to the Court by the parties, where the Court has made an error not of reasoning but of apprehension, where there has been a controlling or significant change in the law since the submission of the issue to the Court, or where there has been a controlling or significant change in the facts of the case. See, *FDIC v. Mahajan*, 2013 U.S. Dist. LEXIS 99450, *4-*5 (N.D. Ill. July 16, 2013); also see *Bank of Am., N.A. v. First Mut. Bancorp of Ill., Inc.*, 2011 U.S. Dist. LEXIS 17697, *5-*6 (N.D. Ill. Feb. 23, 2011)(quoting Above the *Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

The City has hung its hat on arguments that this Court's decision contained manifest errors. In regard to the "manifest error" prong, the Seventh Circuit has

explained that a motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'"); *Bilek v. American Home Mortg. Servicing*, 2010 WL 3306912, at *1 (N.D. Ill. Aug. 19, 2010). There was no error in this Court's opinion, let alone a manifest error.

## C. DEFENDANT HAS NOT MET THE STANDARD FOR RECONSIDERATION

Prior to getting into the myriad of misstatements and new and old arguments raised in the City's motion, Plaintiff points out to this Court that the City's 19-page motion to reconsider attempts to incorporate *at least* ten pages of its previously filed "Pre-Hearing Memorandum" (See, Doc. 209, pgs. 5, 7, 8, 9, 15; see also, City's Pre-Hearing Memorandum, Doc. 196). In essence, this approach requires the Court (and Plaintiff) to engage in an exercise of comparing two separate and lengthy filings to piece together the defendant's argument. [2] The City's incorporation of facts from its pre-hearing memorandum adds yet another layer of alleged factual issues in an attempt to justify its behavior and oppose Plaintiff's request for reasonable attorney fees as part of the

---

[2] In furtherance of the City's gamesmanship, when assistant corporation counsel Avendano contacted plaintiff's counsel to determine whether the Plaintiff would object to her filing the City's 18 ½ page memorandum she specifically stated in her email "It's down from the 28 pages memo we filed earlier." (sic) (Ex. A) However, with the incorporated pages from the Pre-hearing memorandum the motion to reconsider is actually an increase in pages.

sanction. Plaintiff objects to this ambush by dual documents in the guise of "reconsideration." This long factual exercise which attempts to create or convince the Court that there were "misapprehensions" is actually an attempt to bait the Plaintiff, and this Court, into wading into the waters of disputed issues of fact that were not at issue in the Amended Rule.

Counsel will not go through each of the issues that are now being argued, but will instead focus on those issues that the City claims this Court *misapprehended.* The alleged *misapprehended facts* confirm that this Court not only made the right call when it found City's conduct in responding to the subpoena to be willful, but also confirms that the City continues its cavalier attitude towards this Court's Orders.

As discussed above and below, the City's own motion (and pre-hearing memorandum) show conclusively the gamesmanship and piecemeal production of IPRA documents covering a period of over four months *after the August 26, 2016 compliance date ordered by this Court*. This piecemeal production only came about after repeated complaints by Plaintiff's counsel to IPRA attorney Patrick Rocks that the City was dragging its feet and failing to comply with this Court's Order granting the motion to enforce the subpoena. In addition to withholding more than half of the documents pursuant to the City's "reinterpretation" of the subpoena the City lays out, in a series of admissions, a clear case of their own piecemeal and insufficient production related to the IPRA subpoena in its Prehearing Memorandum (Doc. 196, p. 7-13) and in its Motion to Reconsider (Doc. 209, p. 16 footnote 3). In the motion to reconsider the City's piecemeal

production is given less prominence, but is admitted in the context of a footnote[3] in which the City admits to providing "*small supplementary productions* on September 1, October 4, October 11, and December 8 of documents *marginally relevant* to IPRA's investigation of the Young shooting, which were produced to ensure that Gorman received, as she had demanded, everything even potentially relating to that investigation." [4] (*Id.*)(*Emphasis added*) No amount of after-the-fact spin changes the utter failure of the City to comply with this Court's order.

### D.    THE CITY HAS HUNG ITS HAT ON THE WRONG HOOK

**i.**   The City begins with the untenable premise that it did not raise, in its Response to the Amended Rule, its failure to comply with discovery prior to the subpoena because plaintiff did not rely on that failure in filing its Rule and Amended Rule and therefore this issue was outside the adversarial issues. (Doc. 209, pg. 3-4, 6-8)

Defendant first argues that this Court went outside the Plaintiff's arguments when it discussed the discovery problems that led to Plaintiff's filing of the Subpoena, the Motion to Enforce, the Rule to Show Cause and the Amended Rule.  This argument is absurd. The background facts related to the serving of the subpoena were not only discussed in open court but were reiterated in each of Plaintiff's filings. This Court was correct in pointing to that history when finding the City's actions to be willful, especially considering that this subpoena came on the heels of an almost five month stay of discovery while the City made sure that "everything" was tendered to Plaintiff.

---

[3] That footnote does not acknowledge the other documents that were provided earlier in the week of August 29th following Plaintiffs initial letters complaining about the response to this Court's Order. (See, Doc. 149, pg. 5, Ftnt. 3)

[4] Ironically the City apparently *still* does not understand that it was a Court order that demanded that "everything even potentially relating to that investigation "was required to be turned over.

Nevertheless, the City takes the astonishing position that it ignored the issue of the failure to comply with discovery prior to the subpoena, in its Response brief, because Plaintiff did not rely on the discovery problems in filing the Rule and Amended Rule. This is a false premise. This whole exercise has taken place because, as Plaintiff's counsel explained to this Court multiple times in the context of the subpoena, Plaintiff knew she did not have the entire IPRA file which she *repeatedly* sought in discovery. When attorney Gorman learned in May 2016, that the corporation counsel's office had an internal rule that forbade the attorney she was dealing with from directly contacting IPRA, she immediately served a subpoena.[5] As discussed in the motion to enforce the subpoena, the search for IPRA's complete file, which had not been tendered pursuant to the many discovery requests, was the basis for: serving the subpoena (Doc. 131, pgs. 1-2); for seeking a compliance date from the Court (Doc. 138); for following up with a Rule to show Cause (Doc. 143, pgs. 1-3); and finally filing the Amended Rule to Show cause (Doc. 149, pgs.1-3). Plaintiff's counsel repeated the history and concerns in each of those motions and in open court. The documents that Plaintiff has received in response to the subpoena confirm counsel's concern that they did not have the entire file and that important documents were withheld.

The City's failure to address this history (and the reasons behind the City's failures) whether tactical or negligent, is not a basis for a motion to reconsider. Because the

---

[5] To do otherwise would have put Plaintiff's counsel in the position of relying on discovery from an unknown individual who was not of record and who could not be held accountable for failures in that discovery.

premise of the City's motion to reconsider is not on firm ground, Plaintiff will not delve into each and every detail regarding IPRA's failure to provide all of the documents in discovery, but notes that Plaintiff included that background in each of the previously filed documents which this Court considered in finding the defendant's failure to be willful. The City not only failed to provide documents pursuant to discovery requests but failed, and continues to fail, to provide all of the responsive documents pursuant to the unopposed subpoena.[6]

## ii. THE CITY'S MENTION OF COUNSEL MATT HURD

The City's Motion to Reconsider and its Pre-Trial Memorandum provide affidavits in support of the character and reputation of attorney Matt Hurd. Matt Hurd represents individual officers and also works for the City's Corporation Counsel office. Discussion related to Matt Hurd's character and reputation is a diversion. Neither the Court nor Plaintiff's counsel have impugned his reputation or accused him of acting in bad faith. Plaintiff's counsel believes that Matt Hurd has demonstrated an eagerness to "right the ship" with respect to discovery in this case since he filed his appearance. However, Matt Hurd made the effort to attend all Court hearings on this case since he filed his

---

[6] One of the mantras by the City in its response to the Rule (Doc. 156, pg.3 footnote 4) was that Plaintiff has not complained about the search terms utilized by IPRA in response to the subpoena- as though Plaintiff is in the best position to understand the City's computer system. Counsel considers this mantra as possible bait by the City as to why particular document(s) still have not been produced- as though it is Plaintiff's fault. Documents tendered pursuant to the subpoena show a discrepancy in the search terms actualized utilized in response to this subpoena as opposed to what IPRA's in-house counsel thought she be utilized. Another document involves deletions of records in the City's computer program related to this investigation. Plaintiff has been waiting more than two months for IPRA's attorney Rocks to respond to the deletion issue. Plaintiff will continue to investigate these and other issues raised by the documents tendered.

appearance and the City's attorneys did not. The City attorneys did not address the subpoena until it was too late. It doing so, it was the City, and clearly not Matt Hurd, that took a cavalier attitude towards discovery and this Court's orders. Plaintiff's counsel agrees with the Court's comments at the last status conference that Matt Hurd was "in the middle" and should not be perceived as having acted in bad faith.

E. **THIS COURT DID NOT MISAPPREHEND THE FACTS**

Following its premise that the history that led to the subpoena, Motion to Enforce, Rule to Show Cause, and Amended Rule to Show Cause was somehow off limits, and therefore properly ignored by the City in its response to the Amended Rule, the City then directs its attention to rearguing issues, raising new "facts," making up new facts and blaming Plaintiff's counsel for the City's failure to comply with discovery. These issues are not properly before this Court in a motion to reconsider.

In attempting to sneak these issues in, the City argues that this Court *misapprehended* the facts. In other words, the City claims that this Court did not "get it." To the contrary, the Court did "get it" and made no small effort to flush out and resolve the issues raised in Plaintiff's Amended Rule and the City's Response. Plaintiff does not believe that these new "facts" and arguments are properly before this Court in a motion to reconsider. However, Plaintiff will attempt to briefly respond so as not to be deemed to waive her objections.[7]

_____

[7] If Plaintiff's counsel has missed a newly raised issue in this response it is not intentional and they ask that this Court not consider Plaintiff as having waived the issue or agreed with the newly asserted or argued issue. Counsel for Plaintiff are doing their best to comb the two lengthy documents.

a.The following are the "facts" the City believes this Court *misapprehended:*

- *The City complied with the court's order on August 26th.... Only withholding a small number of responsive documents;* (Doc. 209, pg. 1)
- *Plaintiff had most of the responsive documents by May 5, 2016 and the remaining by August 26,2016;* (Doc. 209, pg. 4, 18)

The City and IPRA did not fully comply with this Court's order before or on August 26th, 2016. Again, the City's failure to fully comply was already briefed the first time around in the Amended Rule. The fact remains that on August 26, 2016 the City only produced a fraction of the documents that it claimed related to the Young matter (the City provided 54 of the 972 records it recovered). The City withheld 34 records on the basis of privilege and the City took the position that the remaining documents were *arguably not responsive* to the subpoena (which the City later argued was limited to documents up to the official closing of IPRAs file). Over the course of the next four months the City supplemented its August 26th disclosures at least five times- up to and including December 8, 2016- prior to making its court ordered disclosure on January 10, 2017. (See Amended Rule at pgs. 3-6, discussing the failure to comply; See, also City's Pre-hearing memo (Doc. 196, pgs. 7-13) and Motion to Reconsider (Doc. 209 pg. 16 at footnote 3) These so called "small supplementary productions" all contained documents that should have been turned over in the first instance (not to mention the hundreds of documents withheld under the City's scope of subpoena argument).

- *Plaintiff's counsel did not respond to IPRAs letter and additional documents sent on September 1, 2016 but instead filed a Rule to Show Cause;* (Doc. 209, pgs. 15-18)

This is not properly before this Court on a motion to reconsider. The City raised its September 1, 2016 letter in its response brief, acknowledging that Gorman never received

the letter until September 17, 2016. (See, Doc. 156, pg. 7 and ftnt. 7) In its motion to reconsider the City now alleges that Plaintiff's counsel did not respond to the September 1st email, but instead filed a motion for Rule to show cause. [8] (Doc. 209, pg. 17) Of course it is impossible to respond to something that was not received, but the City also ignores the fact that not only did Gorman not receive the email, but that IPRAs counsel inexplicably failed to serve Gorman's co-counsel Gill with the September 1, 2016 email. IPRA's attorneys never explained why they repeatedly took attorney Gill off the email chain and there has never been an explanation as to why Gorman did not receive the email of September 1, 2016. If the problem was in fact at Gorman's end this still would never have been an issue if her co-counsel had been served with the discovery, as the email mishap would have been discovered right away. (EX. B- email chain)

- *Plaintiff's Amended Rule argued that IPRA should be held in contempt for failing to produce irrelevant and nonresponsive documents;* (Doc. 209, pg. 2)

There is no such argument in Plaintiff's Amended Rule. Plaintiff also notes that the City's conclusion that the documents Plaintiff sought in the subpoena were "irrelevant and non-responsive" was not only raised in its Response brief, but is also without merit. This Court's order required compliance with the subpoena. The City is not the arbiter of "relevance" in discovery matters- that is the Court's job. When faced with a Court order

---

[8] In its motion for reconsideration the City states that "Gorman declined to proceed" on the original Rule- (Doc. 209, pg. 17) ignoring the fact that it was this Court that suggested at the October 12, 2016 status that Plaintiff's counsel file an Amended Rule so as avoid confusion and take into account the discovery received to date.

compelling production of all documents, as here, the City cannot decide, on its own, to withhold certain documents because it deems them "not relevant."

☐ *Plaintiff's counsel acquiesced to IPRA's assertion of a privilege;* (Doc. 209, pg. 11-14)

This non-argument was also waived by the City. This issue of privilege was fully briefed before this Court and this Court fully addressed the waiver issue in its Order. The City's attempt to again raise this argument is improper in a motion to reconsider. However, to not be deemed to have waived this issue herself, Plaintiff states the following: Apparently, because counsel for Plaintiff reported the position of IPRA to this Court, the City now argues that its privilege was somehow preserved. Even if that could possibly be true, under some unknown theory of the law, that Plaintiff's counsel had to object to the assertion of a privilege even before it was belatedly raised- that position ignores the fact that attorney Gorman specifically stated in her August 26, 2016 letter (Doc. 149-3) "… if you believe a document may be withheld on privilege (despite the fact that a privilege was not asserted by the Corporation Counsel) I ask that you provide a privilege log." [9] This was not acquiescence on the part of Plaintiff's counsel and this new argument is not properly in a motion to reconsider.

☐ *Plaintiff's counsel refused to agree to anything short of the production of each of the documents;* (Doc. 209, pg. 3, 15)
☐ *Plaintiff's counsel refused to negotiate in good faith with IPRA.* (Doc. 209. Pgs. 15-18)

---

[9] In addition, the City did not argue any privilege for the hundreds of documents it withheld after it decided to reinterpret the subpoena to only include documents that were generated prior to the official closing of the file. Instead the City made clear that it had not examined all of the documents it was holding for privilege, that it would be a great burden to IPRA to review those documents and it would require IPRA to bring "hundreds of disputed records to the Court for review and resolution." (Doc. 156, pg. 14) This Court relieved the City of that burden with its ruling.

Not only is the premise again false, but the attempts by Gorman to resolve these issues[10] prior to filing the Amended Rule were outlined in the Amended Rule and are not properly before this Court on a motion to reconsider. (Doc. 149, pgs. 4-8) Plaintiff only responds again to these issues so as not to be deemed as having waived them.

In negotiating with the City in September, 2016 Gorman was assured by IPRA's counsel that Plaintiff's counsel would be provided an opportunity to do their own check of the documents that IPRA claimed were none responsive and, as explained in the Amended Rule, if counsel were still not satisfied that the documents were not relevant after their spot check *all of the documents would be made available for counsel to review*. While negotiating this process, IPRA's attorney candidly admitted that he understood why Gorman would not want to just "take his word" that the withheld documents were not relevant. Plaintiff's counsel were interested in resolving the issues and, when IPRA's counsel agreed outside of court on September 21, 2016, to allow Plaintiff's counsel to do their own spot check of the documents that IPRA claimed were not relevant- coupled with the promise by IPRA's counsel in its earlier letter that if they were not satisfied with the limited production they would always have the right to review the complete production- attorney Gorman thought an agreement could be reached on those terms and so advised the Court. (See Amended Rule, Doc. 149, pgs. 4-8)

---

[10] For the record, Plaintiff's counsel also attempted to negotiate with the City regarding this Motion to Reconsider (which is clearly on questionable grounds) so as to keep attorney's fees from continuing to escalate. However, the City refused every overture made by attorney Gorman. Although the proposed settlement included fees Plaintiff's counsel made clear that they were willing to negotiate those fees. Plaintiff notes that counsels fees have increased substantially following this response.

However, following that September 21, 2016 court date, the City showed no inclination to actually resolve the issues on the terms discussed prior to court on September 21st. In response to emails from attorney Gorman in the weeks following the court status IPRA's attorney first claimed he was too busy to get back to her and then when he finally did get back to Gorman the City (contrary to the agreement discussed outside of court on September 21st) decided instead to reinterpret the subpoena giving it a much narrower reading than the clear language of the subpoena. The result was that the City declared more than half of the documents off limits and would not allow Plaintiff any effective means to verify the documents it was withholding. (See Amended Rule Doc. 149, pgs.7-8) In other words, resolving the issue was no longer possible because, as candidly noted by IPRAs counsel, Plaintiff's counsel was not willing to just take the word of the City that the vast majority of the documents were not relevant- counsel wanted to conduct their own investigation- even if it was only a spot check of their choosing. Given the new (and extreme) position by the City Plaintiff informed the Court, at the October 12, 2016 status, that resolution was not possible. See also Plaintiff's Amended rule (Doc. 149) pages 7-8.

- *Finally, the City argues that there has been no prejudice to plaintiff caused by the IPRA discovery fiasco because no depositions have taken place and there is no discovery cutoff* (Doc. 209, pg. 18)

The City's last contention that there has been no prejudice to Plaintiff caused by this eleven-month exercise, is ludicrous and would actually be funny if this were not such a serious issue. No depositions have taken place and there is no discovery cutoff precisely because of this dispute over the IPRA documents- a fact this Court noted when it set the

briefing schedule for the Amended Rule. In lieu of progressing towards a resolution of this cause of action, the Plaintiff and the Court have instead spent substantial resources related to the City's intransigence.

F.      **CONCLUSION**

The City has managed to drag this issue out over eleven months. Plaintiff would have preferred a quick and fair resolution to the issues, similar to the one reached outside of Court on September 21, 2016, but the City decided to reinterpret the subpoena and withhold hundreds of documents. The City hung its hat on that position forcing the Plaintiff to file the Amended Rule. Now, having lost its argument the City asks this Court to reconsider the Order by arguing its supposed "good faith" and reargueing points made the first time around.

If anything can be salvaged from the City's Motion to Reconsider it is this: the City has demonstrated it does not have a good faith basis for its conduct related to the IPRA supboena, the amended Rule, and this Motion for Reconsideration (which does not conform to the standards for reconsideration). Plaintiff asks this Court to deny the City's Motion to Reconsider and to Order the City to pay the Plaintiff's reasonable attorney fees and for such other and further relief as this Court deems just.

Respectfully Submitted,

 /s/H. Candace Gorman
Attorney for Plaintiff

/s/ Matthias D. Gill
Attorney for Plaintiff

H. Candace Gorman
Law office of H. Candace Gorman
220 S. Halsted
Suite 200
Chicago Illinois 60661
312-427-2313

Matthias D. Gill
Illinois ARDC# 6282953
The Gill Law Firm, PC
1820 Ridge Road, Suite 216
Homewood, Illinois 60430
(708) 816-8080
mgill@gillfirm.com