IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LaShawnda Young, Independent Administrator for the estate of Divonte Young, | ) ) ) ) Case No. 13-cv-5651 |
| Plaintiff, | ) ) Hon. Joan B. Gottschall |
| vs. | ) ) |
| The City of Chicago, et al., | ) ) |
| Defendants. | ) |

**CITY OF CHICAGO'S MOTION TO RECONSIDER THE JANUARY 3, 2017 ORDER GRANTING PLAINTIFF'S AMENDED RULE TO SHOW CAUSE WHY THE INDEPENDENT POLICE REVIEW AUTHORITY SHOULD NOT BE HELD IN CONTEMPT OF THIS COURT'S ORDERS OF JUNE 8, 2016 AND JULY 29, 2016**

The City of Chicago, by Stephen R. Patton, Corporation Counsel, brings this motion to reconsider the January 3, 2017 Order that granted plaintiff's Amended Rule to Show Cause Why the Independent Policy Review Authority Should Not be Held in Contempt of this Court's orders of June 8, 2016 and July 29, 2016, and states as follows:

**INTRODUCTION**

On October 26, 2016, plaintiff filed an Amended Rule to Show Cause, in which she requested that this Court hold the Independent Police Review Authority ("IPRA") in contempt for violating the Court's orders of June 8, 2016, which compelled compliance with plaintiff's May 6, 2016 subpoena, and July 29, 2016, which required production by August 26, 2016. ECF 149. On August 26, IPRA complied with those orders by producing to plaintiff all documents responsive to the subpoena, including documents that had previously been produced to plaintiff. IPRA withheld only a small number of responsive documents that were privileged and provided a privilege log as to those documents. On January 3, 2017, this Court ordered the City to

1

produce on or before January 10, 2017 all records it had withheld as privileged or nonresponsive to plaintiff's subpoena. ECF 179 at 23. On January 10, the City fully complied with the Court's order. Exhibit 1, 1/10/17 Rocks letter. In the same January 3 order, the Court granted the City an opportunity to show cause why it should not be held in contempt and required to pay plaintiff's attorney's fees and costs incurred as a result of enforcing the subpoena. ECF 179 at 24.

As the Court recognized in its January 3 order, "[t]he party seeking an order of civil contempt must establish four things: '(1) a court order sets forth an unambiguous command; (2) the alleged contemnor has violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply.'" ECF 179 at 9 (quoting *S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010)). Moreover, contempt should not be found absent "clear and convincing" evidence that such a finding is warranted. *See Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989); *Israel Travel Advisory Serv. v. Israel Identity Tours*, 1993 U.S.Dist. LEXIS 1337, *2(N.D. Ill. Feb. 5, 1993).

Plaintiff's Amended Rule to Show Cause argued that the City violated the June 8 and July 29 orders, and should be held in contempt, for failing to produce more than 140,000 pages of irrelevant and nonresponsive documents and five documents withheld on the ground of the deliberative-process privilege. Although this Court on January 3 ordered those documents produced, the Court did not find that the withholding of those documents evidenced a lack of diligence or bad faith by the City. Nor is there any basis for such a holding. As explained in Parts II and III, the City had a good-faith basis to withhold the documents. A review of the documents shows that they are, in fact, nonresponsive to plaintiff's subpoena because they are

completely irrelevant to IPRA's investigation of the Young shooting, as explained in Part II. As explained in Part III, a review of the five documents withheld on the ground of deliberative-process privilege likewise shows that IPRA had a good-faith basis to claim privilege. The prior withholding of the documents therefore should not be the basis for holding the City in contempt. In addition, as explained in Part IV, the efforts by IPRA's counsel to resolve the dispute over these documents by seeking to establish to the satisfaction of plaintiff's counsel that 140,000 pages of withheld documents were nonresponsive failed not for lack of diligence and good faith, but because plaintiff's counsel refused to agree to anything short of the production of each of the documents.

Because plaintiff's Amended Rule to Show Cause requested that IPRA be held in contempt for failing to comply with this Court's orders of June 8 and July 29, and *not* IPRA's efforts to comply with discovery *before* the subpoena issued on May 6, the City did not address those pre-May 6 efforts in briefing plaintiff's Amended Rule. However, in one paragraph of her Amended Rule , plaintiff made assertions concerning what purportedly did, and did not, occur during the approximately six-month period preceding the May 6 subpoena, and the court relied upon these unrebutted assertions in its January 3 Order in finding that the City, and counsel Matt Hurd in particular, had taken "a cavalier attitude toward the discovery process," which "warrant[s] findings of willfulness, fault, and bad faith." ECF 179 at 16. These findings appear to have been based on assumptions that Hurd made no effort to respond to plaintiff's request for documents during this six-month period, which is incorrect. The Court further incorrectly assumed that Hurd knowingly, and perhaps intentionally, misled plaintiff's counsel, Candace Gorman, into believing that he was working on obtaining documents when he was not. As we discuss in Part I below, this could not be further from the truth. In fact, throughout this period

the Corporation Counsel's Office and Hurd made repeated, good-faith efforts to provide plaintiff's counsel with the discovery and other information she sought. Those efforts demonstrate good faith and diligence by City attorneys, and by Hurd in particular.

Because the City did not fail to substantially comply with this Court's June 8 and July 29 orders, much less willfully violate those orders or lack reasonable diligence in attempting to comply with them, the City requests that the court reconsider and vacate the January 3, 2017 order, because neither a contempt finding nor sanctions are warranted here. Indeed, plaintiff had most of the responsive documents by May 5, 2016, and the remaining responsive documents, save a small number of documents of marginal relevance, by August 26, 2016, the date this Court set for compliance. Importantly, no cut off has been set for fact discovery, and plaintiff has not yet taken any depositions. Therefore, plaintiff has not suffered any prejudice as there is no discovery cut-off date, there are no depositions that arguably would have to be reopened due to the disclosure of any new documents, and there is no trial date. Accordingly, the City requests that this Court reconsider its January 3 order granting plaintiff's Amended Rule to Show Cause and that it decline to award sanctions.

## **STANDARD**

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The courts in this district have treated motions to reconsider interlocutory orders, which an order granting a motion for rule to show cause is, as arising under Rule 54(b) in addition to the Court's inherent authority and the common law. *See*

4

*Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, 2004 U.S.Dist. LEXIS 24036 (N.D. Ill. Nov. 24, 2004) (collecting cases).

In *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185 (7th Cir. 1990), the Seventh Circuit sets forth the standard applicable when addressing a motion to reconsider, and explained that such a motion may be granted where the trial court has obviously misunderstood a party, the court's decision rests on grounds outside the adversarial issues presented to the court, the court has made an error not of reasoning but of apprehension, there has been a controlling or significant change in the law, or there has been a controlling or significant changes in the facts. *Id*. at 1191. Reconsideration of an interlocutory order is within the trial court's sound discretion. *See Finnsugar Bioproducts Inc. v. Almagamated Sugar Co., LLC*, 244 F. Supp. 2d 890, 891 (N.D. Ill. 2002). As explained below, this court's decision granting plaintiff's Amended Rule to Show Cause was both based on a misapprehension of the facts and rested on grounds outside the adversarial issues presented by the parties to the court. That decision should be reconsidered, and plaintiff's request for a contempt finding and sanctions denied.

## STATEMENT OF FACTS

The City incorporates by reference the statement of facts from the City's Pre Hearing Memorandum. ECF 196 at 4-14.

## ARGUMENT

**I.  PRIOR TO THE ISSUANCE OF THE SUBPOENA, THE CITY, INCLUDING HURD, MADE GOOD-FAITH EFFORTS TO COMPLY WITH DISCOVERY.**

Plaintiff's Amended Rule to Show Cause requested that IPRA be held in contempt for failing to comply with this Court's orders of June 8 and July 29, which granted plaintiff's motion to enforce her May 6 subpoena and ordered compliance by August 26, respectively.

Accordingly, events occurring prior to the May 6 subpoena are not a basis for granting the relief plaintiff requested. Apparently recognizing this, plaintiff briefly referenced pre-May 6 events in her Amended Rule, but she did not predicate her request for a finding of contempt on those earlier events. *See* ECF 149 at 2 (plaintiff's one-paragraph discussion of pre-May 6 events). Thus, when responding to plaintiff's Amended Rule, the City did not address what occurred prior to May 6, as this Court noted in its January 3 order. *See* ECF 179 at 13 ("[t]he City focuses on its conduct in and after July 2016, but it makes no effort to justify the delay of over six months before that time"). Contrary to the Court's suggestion, however, the City's focus on events that were the basis for plaintiff's request for contempt was *not* intended to be an admission that it agreed with plaintiff's characterization of the earlier events. *Id*. at 7 (relying on "Gorman's undisputed representations" about those earlier events). It was simply an effort to address the claims that were the basis for plaintiff's request for relief.

Nevertheless, in its January 3 order, the Court expressed concern that the City "ha[d] not explained the six-month delay in advising Gorman of the wall between IPRA and the corporation counsel's office, forcing the court to conclude that it can best be explained by bad faith foot dragging on the City's part." *Id*. at 14. The Court found that the six-month delay, together with what the Court believed was "[t]he City's cavalier attitude toward the discovery process and non opposition to enforcing the subpoena, expressed by Hurd in open court, warrant findings of willfulness, fault, and bad faith[.]" *Id.* at 16. Respectfully, this determination rests not only on grounds outside the adversarial issues presented by the parties to the Court (plaintiff having not argued that the pre-May 6 events were a basis for holding the City in contempt) but also on a misapprehension about Hurd's representations to Gorman. In addition, the City respectfully suggests that this determination is belied by the many good-faith efforts that the Corporation

6

Counsel's Office, and Hurd in particular, made to provide Gorman with the discovery and other information she sought.

As explained on pages 4-14 of the City's Pre Hearing Memorandum, and incorporated herein, between [date], when this case was filed, and May 6, 2016 the City attorneys and attorneys representing the individual defendants, including Hurd, engaged in good-faith efforts to comply with plaintiff's discovery requests, and Hurd ultimately took the lead in those efforts. *See* ECR 196 at 4-14. However, on May 6, 2016 when the Court held a status, and when Hurd was given the Ninth Request to Produce, which largely sought documents from IPRA, Hurd concluded that, as the attorney for the individual defendants, he should not be the attorney to work with IPRA to obtain the requested documents, and he so informed plaintiff's counsel. Ex. 2, Hurd Aff. ¶ 16. However, Hurd immediately contacted Meera Werth, the attorney from the Corporation Counsel's Office who had been designated to work with IPRA on discovery matters, and requested that she obtain IPRA documents responsive to the Ninth Request to Produce for plaintiff. *Id.* at 17. Werth obtained those documents, and Hurd provided them to plaintiff on June 7, 2016. *Id.* at ¶¶ 21.

These facts show that Hurd did not drag his feet, nor was he cavalier about his discovery obligations. Instead, he was continuously working with Gorman in a good-faith attempt to comply with plaintiff's numerous discovery requests and inquiries. He never acted in bad faith, nor, as the attached affidavits from a number of judges and attorneys attest, has he acted in bad faith during his thirty-year career. *See* ECF 189, 190 at Exhibit 7. Affidavits from Justice Bill Taylor (ret.), Honorable Kathy M. Flanagan, Honorable Randy A. Kogan (ret.), Honorable John H. Ehrlich, Patrick L. Provenzale, Terry A. Ekl and Jeffrey Singer. We respectfully submit that the findings to the contrary are supported neither by the record nor by his actions here.

7

Indeed, at the status hearing on January 25, 2017, the Court implicitly acknowledged that Hurd did not act in bad faith; rather, the Court stated, he was "acting as an intermediary in most cases" and "an innocent bystander." ECF 202 at 4. The City acknowledges that attorneys who had filed appearances for the City were not present in court on May 6, June 8 or June 29, 2016, and that led to the confusion the Court referred to above. However, the City and individual defendants have a joint defense, and therefore he was able to cover the court dates on behalf of the City and the individual defendants, as well as produce City documents to plaintiff, even though he had filed an appearance for the individuals only. ECF No. 109.[1]

Accordingly, the City requests that the Court reconsider and vacate the January 3 order and its findings that the City, and Hurd in particular, acted in bad faith. Because Hurd's conduct did not evidence bad faith, neither that conduct, nor anything else that occurred before the subpoena issued on May 6, supports either a contempt finding sanctions in this case. In fact, plaintiff's Amended Rule to Show Cause, which is the basis of her request for sanctions, did not even seek relief based on that conduct. Once again, the Amended Rule complained about purported discovery failures *after* the subpoena issued, not before.

## II. THE CITY ACTED REASONABLY AND IN GOOD FAITH WHEN IT DECLINED TO PRODUCE ESI DOCUMENTS THAT WERE NEITHER RESPONSIVE TO THE SUBPOENA NOR RELEVANT TO IPRA'S INVESTIGATION OF THE YOUNG SHOOTING.

As explained at pages 9-10 of the City's Pre-Hearing Memorandum, the search for IPRA emails produced approximately 150,000 pages of documents, the vast majority of which have nothing to do with IPRA's investigation of the Young shooting and therefore were not responsive to plaintiff's subpoena. On January 10, the City complied with the Court's January 3

---

[1] The City acknowledges that the Court may have been confused about whom Hurd represented, and it commits to making that clearer for the record in this and other cases going forward.

order by producing all documents that it had previously withheld (either because they are nonresponsive and/or privileged). These documents confirm that the more than 140,000 pages of ESI documents that IPRA withheld as nonresponsive to the subpoena are, in fact, nonresponsive and that IPRA did not act in bad faith in withholding them. To support this point, the City provided with its Pre-Hearing Memorandum not only the documents themselves (which are contained on a flash drive) but also an index with a description of each of the 862 documents produced on January 10.For each document, that index sets forth (1) a description of the document, (2) the bates number(s) affixed to the document, (3) the bates number of any page on which a search term appears, and (4) an explanation of why the City's search of the CPD email server "hit" on the document. The index is attached to Exhibit 3, Tab C.

The index shows that the documents in question primarily concern requests for lists of IPRA cases, and the email search "hit" on the documents because the Young investigation was included either by name or log number on those lists.[2] Such requests fall into four categories:

*First*, there are emails between IPRA employees and individuals who filed requests pursuant to the Illinois Freedom of Information Act ("FOIA"), as well as internal emails among IPRA personnel about the FOIA requests. Similarly, there are emails between IPRA personnel and members of the media, and internal emails among IPRA personnel about media inquiries. These emails (and attachments), which total 380 records and comprise 91,902 pages, are bates-stamped IPRA JAN 2017_0000001 to 0091902. None of these documents is relevant to IPRA's investigation of the Young shooting. Rather, they involved requests for lists of IPRA cases

---

[2] The only exceptions are (1) documents that duplicate previously produced materials, (2) drafts of the Young summary report that were withheld as privileged, as discussed in Section III, and (3) a small number of emails that include search terms but, for reasons specified in the attached index, are not relevant to IPRA's investigation of the Young shooting.

(such as cases resulting in sustained and/or not sustained findings) and resulted in a "hit" in the email search because the Young case is included on the list by either case name or log number.

*Second*, and similarly, there are emails among IPRA personnel, and to a more limited extent between IPRA personnel and third parties, that include attachments consisting of spreadsheets and other lists of IPRA cases that include either the case name or the log number for the Young investigation (which were among the search terms). Once again, neither the emails nor the lists are relevant to IPRA's investigation of the Young shooting. Rather, the email search "hit" on these lists because they include the log number or case name for the Young investigation. These communications consist of 242 records and comprise 24,615 pages. They are bates-stamped IPRA JAN 2017_0091903 to 0116517.

*Third*, there are emails (and attachments) regarding IPRA's responses to discovery in this lawsuit and two unrelated lawsuits, *Holmes v. Hernandez*, No. 14 C 8536 (N.D. Ill.), and *Horton v. City of Chicago*, No. 13 C 6865. The email search "hit" on the *Holmes* and *Horton* `documents because, like the two prior categories, they include spreadsheets that list IPRA cases and include either the case name or the log number for the Young investigation. The "hits" on the discovery responses in this case are equally irrelevant to IPRA's investigation into the Young shooting – they primarily consist of emails pertaining to the search for documents responsive to plaintiff's discovery requests. Also included are the draft summary reports (over which IPRA properly asserted privilege, as explained in Part III) and emails that IPRA had already produced. These documents comprise 1002 pages, and are bates-numbered IPRA JAN 2017_0116518 to 0117519.

*Fourth*, there are emails (and attachments) between IPRA personnel and the Office of the Inspector General, as well as two law firms, Taft Stettinius & Hollister LLP and McGuire Woods

LLP, that serve as outside counsel to the City. Like the above-described categories, the email search "hit" on these nonresponsive documents because they include spreadsheets that list IPRA cases and include either the case name or the log number for the Young investigation. These documents consist of 142 records and comprise 31,951 pages, and are bates-numbered IPRA JAN 2017_0117520 to 0149470.

In short, a review of the documents themselves and/or the attached index confirms that the documents are irrelevant to IPRA's investigation of Young's shooting. The City did not fail to substantially comply with this Court's orders compelling compliance with plaintiff's subpoena, much less willfully violate those orders or lack reasonable diligence in attempting to comply with them, when it declined to produce those documents, which are clearly nonresponsive to the subpoena (and, in some cases, contain privileged communications relating to other matters).

### III. THE CITY ACTED REASONABLY AND IN GOOD FAITH WHEN IT ASSERTED IPRA'S DELIBERATIVE-PROCESS PRIVILEGE OVER FIVE DOCUMENTS THAT ARE RELEVANT TO IPRA'S INVESTIGATION OF YOUNG'S SHOOTING.

In addition to the nonresponsive ESI documents, the City declined to produce five documents that were responsive to the subpoena. These documents consist of two draft summary reports and related emails, as well as a third draft summary report that included hand-written edits by former IPRA administrator Scott Ando. These documents also have been produced in response to the Court's January 3 order, and they are attached to Exhibit 4, Tab B. A review of these documents demonstrates that IPRA's claim of privilege was made in good faith. The prior withholding of the documents therefore should not be the basis for holding the City in contempt.

In its January 3 order, this Court expressly declined to decide whether the deliberative-process privilege would apply here. Instead, it determined that any privilege had been waived. ECF 179 at 6 n.2 ("the City's waiver of claims of privilege means that there is no need to analyze the deliberative-process privilege in depth as Judge Chang did in *Holmes v. Hernandez*") (citation omitted). But the record belies any finding of waiver here. At the very least, the record demonstrates that IPRA had a good-faith basis to believe that it would be allowed to assert a claim of privilege.

On November 1, 2013, a City attorney raised general privilege objections, including the deliberative-process privilege, in response to plaintiff's request for IPRA documents. See Ex. 4 at 2. Thus, plaintiff was on notice early on – including before issuing her subpoena – that certain IPRA documents would be subject to a claim of deliberative-process privilege. Moreover, while Hurd did not oppose entry of an order granting plaintiff's motion to enforce the subpoena, he did not agree to waive privilege, nor could he, as he was not counsel for IPRA, upon whom the subpoena had been served. More importantly, in complying with the subpoena, on July 14, 2016, in-house counsel for IPRA, Claudia Silva made clear that IPRA would be claiming privilege as to any responsive documents that were privileged prior to producing them. ECF 156-1 (11/9/16 Silva Aff. ¶ 17). Plaintiff's counsel did not suggest that privilege had been waived. To the contrary, at the July 29 hearing, Gorman informed the Court that Silva had told her that IPRA intended to review the results of the email search for privilege – and did not voice any objection. ECF 183 at 2-3 ("Then they want to go through it – to review it, to see if there is anything that they could be withholding legitimately based on privilege."). As this court knows from its years of experience in supervising discovery and resolving discovery disputes, this was consistent with standard practice whereby producing parties collect and determine those

documents that are responsive *before* claiming privilege and providing a log as those responsive documents that have been withheld on grounds of privilege.

Thereafter, on August 26, following the production of IPRA documents by the Jackson Lewis attorneys, Gorman observed that the Corporation Counsel's Office had not asserted privilege, but she did not argue that this resulted in waiver. Rather, she requested a privilege log, indicating her anticipation that IPRA would be allowed to assert its privileges. ECF 149-3 at 1 (8/26/16 Gorman letter) ("I ask that each and every one of those emails be provided to me and if you believe a document may be withheld on privilege (despite the fact that a privilege was not asserted by the Corporation Counsel) I ask that you provide a privilege log[.]"). Plaintiff waited until her September 15 motion, ECF 143 at 12, and October 26 Amended Motion, ECF 149 at 2, 10, 11, before asserting – for the first time – that IPRA had waived any privilege by not asserting it when served with the subpoena or at the time of the motion to enforce. But even then she provided no argument or citation to authority. And, both before and after those filings, the parties acknowledged that IPRA had, and would continue to, claim privilege and provide a log as to any documents withheld on grounds of privilege. *See* ECF 156-1, Ex. F (9/1/16 Jackson Lewis letter); ECF 149-10 (10/4/16 Jackson Lewis letter); ECF 149-12 (10/5/16 Gorman letter); ECF 156-1, Ex. I (10/10/16 Rocks email); and ECF 168-1 (11/11/16 Jackson Lewis letter). Thus, IPRA's belief that it would be allowed to assert a claim of privilege over the draft summary reports and related emails, and that the privilege was not waived, was undertaken in good faith and is not evidence of a failure to reasonably and substantially comply with the Court's orders compelling compliance with plaintiff's subpoena.

IPRA also acted in good faith in asserting that the deliberative-process privilege applied to these five documents. In *Holmes v. Hernandez*, No. 14 C 8536, 2016 U.S. Dist. LEXIS

167209 (N.D. Ill. Nov. 21, 2016), Judge Chang recognized that the deliberative-process privilege may apply to protect IPRA's draft summary reports, which are a part of the internal deliberative process within IPRA that leads to the decision whether to recommend that an officer be disciplined. *Id.* at *5. Other decisions are to the same effect. *See, e.g.*, *Guzman v. City of Chicago,* No. 09 C 7570, 2011 U.S. Dist. LEXIS 1730, at *8-*15 (N.D. Ill. Jan. 7, 2011) (holding that privilege applied to protect IPRA draft summary reports from disclosure). Moreover, as *Holmes* and *Guzman* explain, submitting an affidavit of the governmental department head, or other competent individual associated with the agency, with a responsive filing is an appropriate way to claim the deliberative process privilege. *Holmes*, 2016 U.S. Dist. LEXIS 167209, at *5-*28; *Guzman*, 2011 U.S. Dist. LEXIS 1730, at *8-*15. That was done here. *See* ECF 156-1, Ex. K (affidavit of Sharon Fairley, IPRA's Chief Administrator, addressing the elements required for assertion of the privilege).

Finally, the City's good faith is confirmed by the documents themselves. A review of the draft summary reports produced on January 10 shows that they are not evidence that would support in any way plaintiff's claims. *See* Ex. 3, Tab B. While they show that the investigator who looked into Young's shooting (unsurprisingly) afforded her supervisors an opportunity to review her report prior to finalization, and that former IPRA Chief Administrator Ando made a few non-substantive edits, they do not show that IPRA supervisors sought to "change" the report to cover up information or otherwise provide evidence that would be adverse to defendants here. Plaintiff's speculation that the draft reports were withheld because they are adverse to the defense, ECF 161 at 10-13 (arguing that the draft summary reports would show that Ando altered the description of the location of the parties involved in the shooting and changed the investigator's conclusions), was therefore misplaced. Thus, review of the documents themselves

shows that IPRA's only reason to withhold them was to protect IPRA's ability to continue to assert the deliberative process privilege in order to serve its purpose of "protect[ing] the quality of the flow of ideas within" IPRA. *Holmes*, 2016 U.S. Dist. LEXIS 167209, at *6. And this review confirms that the withholding of the documents is not evidence of noncompliance with plaintiff's subpoena.

> IV. **THE CITY ENGAGED IN A REASONABLE AND GOOD-FAITH, ALBEIT ULTIMATELY UNSUCCESSFUL, EFFORT TO RESOLVE PLAINTIFF'S CONCERNS ABOUT THE DISPUTED ESI.**

The Court's January 3, 2017 order did not hold the prior withholding of the 140,000 nonresponsive documents or those withheld pursuant to privilege, or the efforts by Jackson Lewis to reach agreement with Gorman short of producing those documents, including by making the nonresponsive documents available for Gorman's review, evidenced noncompliance with the subpoena. Nor is there any basis for such a holding. As explained in Parts II and III, the City had a good-faith basis to withhold the documents. And the efforts by the Jackson Lewis attorneys to resolve these issues by establishing that the documents were nonresponsive failed not for lack of diligence and good faith, but because Gorman refused to agree to anything short of the production of each of the documents. Although ultimately unsuccessful, these efforts are further evidence that a contempt finding and sanctions are unwarranted here.

At the threshold, however, the Court's apparent view that IPRA took no or clearly insufficient steps to respond to the subpoena after it was served but before the Jackson Lewis firm was retained to help them respond to the subpoena, ECF 179 at 15, is misplaced. As set forth at pages 8-10 of the City's Pre-Hearing Memorandum, and incorporated herein, between June 8 and July 29, IPRA sought to comply with Gorman's stated request by submitting a broad email search request to CPD to ensure that any documents relevant to IPRA's investigation of

Young's shooting would be identified and, when that search produced a large volume of documents, engaging an outside vendor to expedite IPRA's review of the results of the search to identify which documents would be produced. Thus, IPRA sought to comply with the subpoena and likely would have complied by the July 29 status date had the email search not produced so many irrelevant documents and the ensuing dispute over those nonresponsive documents.

Moreover, as also explained, after this Court, on July 29, 2016, set a deadline – August 26, 2016 – for the City's compliance with the subpoena, the City met that deadline. The City completed its production of all non-ESI documents on that date.[3] In addition, as is now clear from the January 10 production, the City produced all documents (other than the five documents over which the City asserted the deliberative-process privilege) resulting from the email search that were responsive to the subpoena. Nevertheless, on August 26, Gorman demanded that "each and every one of those emails be provided to me and that if [IPRA] believe[s] a document may be withheld by privilege," that a privilege log be provided. ECF 149-3 (8/26/16 Gorman letter). But there is nothing in the Federal Rules of Civil Procedure that imposes a duty on a responding party in discovery to produce nonresponsive documents, much less a privilege log for such documents. Implicitly acknowledging this, Gorman predicated her request for "each and every one of those emails" on supposedly having been told by IPRA's in-house attorney that "there were approximately 600-700 emails related to this investigation." ECF 149-3 (8/26/26 Gorman letter). But this was a misunderstanding. The IPRA in-house attorney meant that the results of the email search were responsive to the search terms she submitted to CPD to create a set of emails for review, but not necessarily responsive to the subpoena. ECF 156-1 (11/9/16 Silva

---

[3] The only exceptions are small supplementary productions on September 1, October 4, October 11, and December 8 of documents marginally relevant to IPRA's investigation of the Young shooting, which were produced to ensure that Gorman received, as she had demanded, "everything" even potentially relating to that investigation. Ex. 3, Rocks Aff. ¶¶ 22, 24-25.

16

Aff. ¶¶ 17-18).  In fact, when the in-house attorney made this statement on July 14, 2016, she had not yet reviewed the results of the email search; therefore, she could not have known whether any or all emails produced by the search related to IPRA's investigation of Young's shooting.  *Id.* (11/9/16 Silva Aff. ¶¶ 20-21) (explaining, in July 18, 2016 email to Gorman, that IPRA would require time to review the results of the email search for documents responsive to the subpoena and not privileged).

Thus, in an August 29 letter, the Jackson Lewis attorneys explained to Gorman that the bulk of the documents resulting from the email search were nonresponsive to the subpoena, provided examples, and offered to produce to Gorman, upon request, other samples of the nonresponsive documents.  ECF 156-1 (11/9/16 Silva Aff. ¶ 32); ECF 143-5 (9/29/16 Jackson Lewis letter).  And, in conjunction with its September 1 supplemental production, Jackson Lewis reiterated its concern that producing more than 140,000 pages of documents that contain a search term used to capture emails for review, but are not relevant to IPRA's investigation of the Young shooting, would be unreasonable.  ECF 156-1 (9/1/16 Jackson Lewis letter).  Gorman did not respond to the offer to review additional nonresponsive documents.  Instead, on September 15, she filed a Motion for Rule to Show Cause.  ECF 143.

Following the September 21 hearing, Gorman declined to proceed on her motion, ECF 148, and the Jackson Lewis attorneys continued to seek to resolve the dispute over the ESI, by providing, on October 4, a spreadsheet with more information about the nonresponsive ESI documents and by offering her the opportunity to select additional materials from that spreadsheets for her review, subject to any privileges, or to propose other suggestions that would resolve the issue.  ECF 149-10 at 4.  In response, Gorman continued to insist that she be provided with or allowed to see *all* documents generated by the email search.

On November 11, the Jackson Lewis attorneys presented yet another proposal for Gorman's consideration: they provided her with a spreadsheet describing all 972 records yielded by the email search, and repeated their invitation that she select a reasonable number of records to review. ECF 168-1 (11/11/16 Rocks letter). Gorman did not respond. The repeated efforts by Jackson Lewis in these circumstances to negotiate a sampling methodology that would satisfy Gorman that the disputed ESI were, in fact, nonresponsive belie any claim that they failed to substantially comply with the subpoena, or at the very least were not diligent in their efforts to comply.

The City's efforts to resolve its disputes with Gorman regarding the documents over which it had asserted privilege likewise were undertaken in good faith and in a spirit of compromise. On August 26, at the same time Jackson Lewis timely produced the 114 pages of ESI documents that were responsive to the subpoena, they also provided a privilege log for records over which IPRA asserted a privilege. ECF 196 at 10-11.Following receipt of Gorman's letters of August 26 and 31 insisting that IPRA produce all ESI documents, IPRA reviewed and revisited its privilege claims and, on September 1, Jackson Lewis produced several documents over which, on further review, IPRA had decided to withdraw its claim of privilege. ECF196 at 11-12.] That left the five documents over which IPRA asserted the deliberative-process privilege. As explained in Part III, a review of those documents, which now have been produced, confirms that they were, in fact, privileged.

In short, both as to the responsive and nonresponsive documents, the City engaged in repeated, good-faith efforts to resolve its disputes with plaintiff's counsel without involving the Court. That those efforts ultimately failed and plaintiff pursued her Amended Rule to Show

Cause does not evidence a lack of diligence or bad faith.  Rather, those efforts failed because plaintiff's counsel persisted in her claim that she receive "everything."

Finally, and in the end, Gorman had most of the responsive documents by May 5, 2016, and the remaining responsive documents, save a small number of documents of, at best, marginal relevance, by August 26, 2016.  Importantly, there is no current cut off set for fact discovery, and, indeed, plaintiff has not yet taken any depositions.  Therefore, plaintiff has not suffered any prejudice to date as there is no discovery cut-off date, there are no depositions that arguably would have to be reopened due to the disclosure on any new documents, and there is no trial date.  Accordingly, there is no basis for holding the City in contempt or awarding sanctions.

## CONCLUSION

Wherefore, the City respectfully requests that the Court reconsider and vacate its January 3, 2017 order, specifically withdraw its finding of bad faith by Hurd or any other counsel representing the defendants, and further hold that plaintiff not be awarded sanctions.

Respectfully submitted,

**THE CITY OF CHICAGO**


By:/s/ *Naomi Avendano*
    One of Its Attorneys

## CERTIFICATE OF SERVICE

I, Naomi Avendano, an attorney, certify that on February 8, 2017, I caused a true and correct copy of the attached **THE CITY'S MOTION TO RECONSIDER THE JANUARY 3, 2017 ORDER** to be filed with the Court by electronic filing protocols, and that the same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.

                                                        /s/ *Naomi Avendano*