# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LaShawnda Young, Independent Administrator for the estate of Divonte Young, | )<br>)<br>) |
| Plaintiff, | ) Case No. 13-cv-5651<br>)<br>) Hon. Joan B. Gottschall |
| vs. | )<br>) |
| The City of Chicago, et al., | )<br>) |
| Defendants. | ) |

## CITY OF CHICAGO'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO RECONSIDER THE JANUARY 3, 2017 ORDER GRANTING PLAINTIFF'S AMENDED RULE TO SHOW CAUSE

The City of Chicago, by Edward N. Siskel, Corporation Counsel, submits this reply in further support of its motion to reconsider the January 3, 2017 Order granting plaintiff's Amended Rule to Show Cause and states as follows:

## INTRODUCTION

Plaintiff's opposition to the City's motion to reconsider is based upon a faulty premise and a misreading of the January 3, 2017 Order ("Order"). Plaintiff is wrong in asserting that the issue is moot as to whether the City reasonably took the position that the 140,000 plus pages of ESI documents were nonresponsive. It is not moot precisely because the City has moved to reconsider and vacate the Order on the basis that the Court both misapprehended the facts and rested the decision on grounds outside the issues presented by the parties. Specifically, the City moves for reconsideration of all findings that it did not substantially comply with court orders, much less willfully violated those orders or lacked reasonable diligence in attempting to comply with them. Without those findings, neither an order of contempt nor sanctions are warranted.

1

Indeed, after the City filed its Pre Hearing Memorandum on January 23, 2017, raising those points (ECF196), the Court sua sponte issued an order staying the show-cause proceedings "pending the resolution of the City's request for vacatur of the findings of bad faith, willfulness, and fault made in the order entered January 3, 2017." (ECF 198 at 3).[1]

Tellingly, plaintiff has not pointed to a single one of the 140,000 pages of ESI documents now in her possession as relevant (or even potentially relevant) to IPRA's investigation into the Divonte Young shooting and therefore to the claims in her fourth amended complaint. This demonstrates that the documents were not responsive to the May 6, 2016 subpoena as the City has consistently argued.[2] Accordingly, the court should not order the payment of attorney's fees in this matter because the City's "non-disclosure, response or objection was substantially justified." FCRP 37(a)(5); *see also Rickels v. City of South Bend,* 33 F.3d 785, 787 (7th Cir. 1994).[3]

Further, the Court's findings as to any purported bad faith on attorney Matt Hurd's part was based on a misapprehension of the facts, and thus cannot form the basis for a finding of

---

[1] At the subsequent status hearing on January 25, 2017, the Court specifically asked whether a formal motion for reconsideration would be filed, to which the City responded in the affirmative. (ECF202 at 12). Contrary to plaintiff's claim (ECF214 at 4 & n.2 and at 9 n.7), neither plaintiff nor the Court is required to "compar[e] two separate and lengthy filings [that is, the City's pre-hearing memorandum and its motion for reconsideration] to piece together the defendant's argument." The City's motion for reconsideration simply engaged in the common practice of incorporating by reference the statement of facts from an earlier filing (here, the pre-hearing memorandum). No "piec[ing] together" of arguments is required.

[2] As explained in the City's motion for reconsideration, plaintiff's subpoena sought documents pertaining to IPRA's investigation into the shooting death of Divonte Young. (ECF196 at 7). The 140,000 pages of ESI documents had nothing to do with that investigation. (ECF196 at17-20). Rather, they were identified as a result of a search of a City email server using overbroad search terms. (ECF196 at 9, 12).

[3] Plaintiff served a Rule 45 subpoena on IPRA rather than issuing discovery requests pursuant to FRCP 34 which governs requests for production of documents directed to a party. As IPRA is a City entity subject to Rule 34 requests, the proper vehicle for deciding whether reasonable attorney's fees are warranted is through Rule 37.

contempt or attorney's fees. Indeed, plaintiff concedes that Hurd did not act in bad faith. (ECF 214 at 8). That concession eliminates any grounds for an award of attorney's fees or a finding of contempt based on bad faith. In addition, a finding on reconsideration that the City acted reasonably and in compliance with the Court's orders of June 8 and July 29, 2016 would require that the Order be vacated.

## ARGUMENT

### I. The Court Should Reconsider And Vacate The January 3, 2017 Order Because The City Complied With The Subpoena Issued To IPRA And Did Not Act In Bad Faith.

The January 3 Order was premised in large part on what the Court perceived as a six month delay – prior to the issuance of the May 6, 2016 subpoena – in informing plaintiff's counsel that a wall between Mr. Hurd and IPRA prevented him from directly seeking documents from IPRA. (ECF 179 at 13-16). The Court found that the six-month delay, together with what it believed was "[t]he City's cavalier attitude toward the discovery process and nonopposition to enforcing the subpoena, expressed by Hurd in open court, warrant findings of willfulness, fault, and bad faith[.]" *Id*. at 16.

The City moved to reconsider that determination because it rested on grounds outside the adversarial issues presented by the parties to the Court (plaintiff had not argued that the pre-May 6 events were a basis for holding the City in contempt), and also on a misapprehension about Hurd's representations to plaintiff's counsel. (ECF 209 at 6). Now, plaintiff has conceded – and agrees with the Court's statement made on January 25, 2017 – that Hurd was not acting in bad faith. (ECF 214 at 8-9; ECF 202 at 4-5). Accordingly, as Hurd's conduct prior to the May 6 subpoena was not willful or in bad faith, the only remaining basis for awarding fees would be the City's response to the Court's June 8 and July 29 orders.

3

To that extent, plaintiff admits, as she must, that reconsideration is appropriate where the Court's decision rests on a misapprehension of fact and/or grounds outside the adversarial issues presented to the Court by the parties. (ECF 214 at 3). The City's motion to reconsider should be granted based on that standard because (1) the Court misapprehended the facts the City presented in support of its argument that the discovery rules do not mandate the production of nonresponsive documents; (2) the City did not act in bad faith by refusing to produce nonresponsive documents or by raising the deliberative process privilege; (3) the City had already complied with the June 8 and July 29, 2016 orders when the Court granted plaintiff's amended rule to show cause, and (4) plaintiff's refusal to review even a single one of the 140,000 plus ESI documents being withheld as nonresponsive prevented a resolution of the discovery dispute.

### A. The City complied with the Court's Orders of June 8 and July 29, 2016.

Plaintiff's amended rule to show cause specifically sought a ruling that the City had waived its "privilege objections and that documents created after IPRA officially closed its investigation [were] responsive to the May 6, 2016 subpoena." (ECF 179 at 6). She also requested reasonable attorney's fees. Id. The Court overruled the City's objections that the documents were not responsive and that producing them would be unduly burdensome, and ordered their production by January 10, 2017. However, the Court did not specifically "find" that the non-responsive material ordered produced was in fact responsive to the subpoena.

The City's insistence that the documents were not relevant, or even potentially relevant, to the resolution of plaintiff's claims is borne out by looking at plaintiff's submissions since the January 10, 2017, production of the 140,000 pages of ESI documents. Not once in these filings does plaintiff point to a document among those 140,000 pages that should have been turned over

4

to her pursuant to her discovery requests, including the subpoena. Despite her claim that "important documents were withheld" (ECF 214 at 7), she fails to identify a single such document, much less explain how that document would have aided in proving any of her claims. Had plaintiff found such a document, surely she would have brought it to the Court's attention.

Plaintiff's silence as to the substantive content of those documents confirms the following positions the City presented and that the Court's January 3, 2017 order did not specifically decide: (1) the ESI documents plaintiff insisted that the City should produce in response to the subpoena were, in fact, nonresponsive because they had nothing to do with IPRA's investigation into the Divonte Young shooting, and (2) the City had turned over nearly all of the responsive documents well before the date (August 26, 2016) this Court set for compliance with the subpoena. (ECF 209 at 1-2; ECF 196 at 4-14).

On this second point, plaintiff is correct that there were additional documents turned over on September 1, October 4, October 11 and December 8, 2016 (ECF 214 at 6). But these supplemental productions of which plaintiff now complains (ECF 214 at 5) demonstrate IPRA and Jackson Lewis attorneys' good faith, continued search for responsive material in an effort to satisfy plaintiff that IPRA had fully complied with the subpoena and the Court's orders.

Consistent with that goal, IPRA located additional paper records that it produced on September 1, 2016. Those records consisted of copies of folder covers and post-it notes, handwritten notes on a copy of a previously produced medical examiner's report, an email from an IPRA computer operator that includes a request for documents related to the Young shooting, and another copy of part of a previously produced email chain related to a request from the City's Law Department for a copy of the investigative file. None of these documents are material, but were produced in a good faith effort to resolve Plaintiff's demand for all

5

documents. (ECF 209, Ex. 3, Rocks Declaration at 24). At the same time, IPRA reconsidered its assertion of privilege over certain documents arguably relevant to IPRA's investigation into the Divonte Young shooting and produced those documents on September 1.[4] IPRA also discovered a draft summary report with former IPRA chief administrator Scott Ando's hand-written notes. IPRA included that document on a revised privilege log submitted to Plaintiff on September 1. *Id.* at ¶25.

IPRA also produced additional documents on October 4, October 10, and December 8, 2016. Some of these documents had already been produced to plaintiff (the crime lab reports and autopsy memo were in the investigative file produced on July 8, and the State's Attorney's declination letter was produced on August 26) and were produced again out of an abundance of caution. (ECF 209, Rocks Declaration at ¶ 26). The remaining documents (emails regarding case updates that referred to the Young log number, emails regarding requests from the City's Law Department for a recording of a CPD witness interview, an email regarding a case management meeting that included the Young case on the list, emails about going to the MCR meeting, emails related to a FOIA request for the Young file, an email with a copy of the redacted summary report IPRA posted on its website, a meeting notice an IPRA investigator apparently wrote to himself about tasks that were reported in the previously produced investigative file, an email listing cases declined by State's Attorney that included the Young case) did not provide any substantive, relevant information that had not already been produced. Rather, they were produced as part of an ongoing good faith effort to comply with Plaintiff's

---

[4] Plaintiff argues that IPRA did not timely assert and therefore waived its claim of privilege (ECF214 at 12), but that does not mean that IPRA incorrectly identified the documents as privileged. In any event, before plaintiff filed her amended rule to show cause, IPRA stepped off its claim of privilege even though the documents were not material to IPRA's investigation into the Divonte Young shooting in a good faith effort to work out its discovery disputes with plaintiff. ECF 209, Ex. 3 Rocks Declaration ¶¶9, 25

demand for all documents. Indeed, plaintiff has not disputed the fact that the documents produced after August 26 did not provide any relevant or even potentially relevant information that had not already been produced and/or were, in fact, privileged. [5]

In short, plaintiff has failed to present any evidence to dispute the City's compliance with the June 8 and July 29 orders, other than to reiterate her demand that she should have received the more than 140,000 pages of ESI documents that the City has shown are not relevant or even potentially relevant to plaintiff's claims. (ECF 209 at 8-11). But the good faith withholding of documents that were not relevant to IPRA's investigation into the Divonte Young shooting and therefore responsive to the subpoena cannot form the basis for a finding of noncompliance, much less one for a willful violation of the Court orders, because there is no obligation to produce documents that are not responsive to a request. *See e.g.* FRCP 26(b)(1)("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense").

Additionally, IPRA presented evidence that it would be unduly burdensome to produce the more than 140,000 nonresponsive ESI documents. IPRA's attorneys were in the position of either having to allow plaintiff's counsel access to all of those documents, which would have required it to waive privilege over matters unrelated to this lawsuit,[6] or to expend time and

---

[5] Jackson Lewis informed plaintiff's counsel through written communications that the City would continue to search and provide responsive documents as they were located. *See e.g.* ECF 156-1 at 37, 60. It is commonplace for there to be supplemental productions of documents during the discovery process.

[6] As one example, Jackson Lewis had estimated that nearly 12,000 pages of those documents related to legal services provided by Taft Stettinius & Hollister LLP regarding a Department of Justice investigation. In total, it was estimated that nearly 40,000 pages were subject to withholding based on one or more of the privileges – attorney-client communication privilege, the attorney work-product doctrine, and the deliberative process privilege – that IPRA reserved the right to assert.

money reviewing the universe of the 140,000 ESI documents that were not responsive to the subpoena and then identifying and creating a privilege log. (ECF 196 at 13).

Because the January 3, 2017 order found that the City did not carry its burden of showing that the documents were nonresponsive or that producing them would be unduly burdensome, the City now requests that the Court reconsider that finding as it was based on a misapprehension of the content of those documents, as well as a misapprehension of the effort and expense associated with culling the documents for privileged communications prior to production. (ECF 179 at 17). As such, an order vacating the January 3, 2017 order should be entered.

> **B. Plaintiff's refusal to engage in a reasonable and good-faith effort to resolve her concerns about the 140,000 disputed ESI documents negates any basis for a finding of contempt or attorney's fees.**

The City set forth the numerous efforts it made, through IPRA's counsel Jackson Lewis, to offer plaintiff the opportunity to review a sample of the nonresponsive documents. These efforts began in August 2016 and continued through November 2016. (ECF 209 at 15-19). Notably, while plaintiff takes issue with some of those efforts[7], her counsel does not deny that she refused to negotiate a sampling methodology[8], and instead insisted that she be provided

---

[7] Plaintiff claims that the City acknowledged that plaintiff's counsel never received a letter dated September 1, 2016, in which it proposed a solution to the discovery quagmire. (ECF 214 at 11-12). That is not true. The City stated it "resent" the letter to Gorman after she complained she did not receive it. (ECF 156, p. 7 n.7). In fact, IPRA's attorney Jackson Lewis provided Gorman with proof of delivery of that September 1, 2016, letter via email. *See* Exhibit 1 attached hereto. Plaintiff's reliance on the supposed "fail[ure]" by Jackson Lewis to serve Gorman's co-counsel Matthias Gill with the September 1 letter to excuse Gorman's failure to review that letter (ECF 214 at 11] is a diversionary tactic. Gill was not listed as an attorney on the May 2016 subpoena. And, Jackson Lewis included Gill on most of its correspondence; if it did not include Gill on a few emails, that was inadvertent and immediately corrected.

[8] Because there were privileged documents related to myriad matters other than IPRA's investigation of the Divonte Young shooting included in that massive collection, the City could not allow plaintiff's counsel unfettered access to those documents, and instead tried unsuccessfully to persuade her to agree upon a sampling method.

"everything." Id. at 19. The fact that plaintiff now has "everything" in the disputed ESI files, yet has failed to identify a single one of the more than 140,000 pages of ESI documents as being relevant or even potentially relevant to her claims that IPRA failed to adequately investigate the shooting death of Divonte Young is proof that had she acted reasonably, and agreed to review a sample of the documents, this entire dispute would have been avoided. The City should not be penalized when it offered a common sense way to address plaintiff's concerns regarding the documents which plaintiff refused to accept.

## II. Because The City's Non-Disclosure, Response, And Objections Were Substantially Justified, Attorney's Fees Cannot Be Awarded.

While the Court has not awarded attorney's fees, the Court's January 3, 2017 Order contemplates setting a hearing to resolve plaintiff's request for fees. (ECF 179 at 23-24). Attorney's fees should not be awarded because (1) the January 3 Order should be vacated, thus mooting any claim for fees, and (2) even if that Order is not vacated, the City's position in not producing the 140,000 pages of nonresponsive ESI was substantially justified, the City did not act in bad faith, and plaintiff failed to engage in a good faith attempt to resolve the discovery dispute. *See Pierce v. Underwood,* 487 U.S. 552, 565 (1988) "[T]he test for avoiding the imposition of attorney's fees for resisting discovery in district court is whether the resistance was 'substantially justified[,]' . . . meaning there is a 'genuine dispute,' … or [that] 'reasonable people could differ as to the appropriateness of the contested action.'"); *see also* FRCP 37(a)(5)(A) (attorney's fees "must not" be ordered if … (ii) the opposing party's non-disclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust").

As explained in both the City's Pre-Hearing Memorandum and its Motion to Reconsider, the City had a good faith basis to withhold the 140,000 pages of ESI documents at issue because

9

they were simply not related to IPRA's investigation into the Divonte Young shooting and therefore not responsive to the subpoena. Further, as explained, the documents contained privileged documents, and the City therefore had a good faith basis to argue that to cull through 140,000 pages of nonresponsive documents to pull out the privileged ones and create a privilege log for those documents would have been unduly burdensome.

In addition, plaintiff is not entitled to fees because she did not engage in a good faith effort to resolve the discovery dispute. Such an effort "requires that counsel converse, confer, compare views, consult, and deliberate." *Hartford v. Schindler Elevator Corp.,* 2010 WL 5463293, at *1 (N.D. Ind. Dec. 29, 2010). The parties must engage in a back and forth negotiation process rather than merely state that they want "everything." *See*, *e.g.*, *In re FedEx Ground Package Sys., Inc.,* 2007 WL 79312, at *7 (N.D. Ind. Jan. 5, 2007). That type of good faith bartering did not happen here because plaintiff refused to even consider accepting any compromise. Plaintiff's recalcitrance caused a considerable burden on the Court as well as on the City, and resulted with the City having to spend countless hours culling through the documents to identify the privileged documents to show the Court that its objections to the production of those documents were correct, including the fact that the production of those documents does not in any way advance this case towards a resolution on the merits. Plaintiff's behavior should not be rewarded with attorney's fees.

## **CONCLUSION**

Wherefore, the City respectfully requests that the Court reconsider and vacate its January 3, 2017 order, specifically withdraw its finding of bad faith by Hurd or any other counsel representing the defendants, and further hold that plaintiff not be awarded sanctions.

Respectfully submitted,

**THE CITY OF CHICAGO**

By:<u>/s/ *Naomi Avendano*</u>
One of Its Attorneys

Naomi Avendano
Managing Deputy
City of Chicago Law Department
121 N. LaSalle, Room 600
Chicago, IL 60604
(312) 744-5128
Jonathan Green
Senior Attorney Supervisor
Raoul Mowatt
Assistant Corporation Counsel
City of Chicago Law Department
30 N. LaSalle, Suite 900
Chicago, IL 60604

## CERTIFICATE OF SERVICE

I, Naomi Avendano, an attorney, certify that on April 3, 2017, I caused a true and correct copy of the attached **THE CITY'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO RECONSIDER THE JANUARY 3, 2017 ORDER** to be filed with the Court by electronic filing protocols, and that the same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.

/s/ *Naomi Avendano*