# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF
# ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| LaSHAWNDA YOUNG, ) | | |
| Administrator of the Estate of Divonte Young ) | | |
| ) | No. | 13 C 5651 |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Judge Gottschall | |
| ) | | |
| CITY OF CHICAGO, et al., ) | | |
| ) | | |
| Defendants. ) | | |

**PLAINTIFF'S MOTION TO COMPEL INTERROGATORY ANSWERS AND TO DISQUALIFY THE CORPORATION COUNSEL'S OFFICE FROM REPRESENTING THE FORMER EMPLOYEES IT SOLICITED IN RESPONSE TO PLAINTIFF'S INTERROGATORIES**

Now comes the Plaintiff LaShawnda Young and asks this Court to order the defendant to fully respond to Interrogatories 8 and 9 and for such other relief as further described herein, for the following reasons:

1. **COMPLIANCE WITH L.R. 37.2**

As further described below after consultation by telephone and good faith attempts to resolve this issue, regarding the City's response to two interrogatories, Plaintiff and the City of Chicago were unable to come to an accord.

On January 5, 2017 plaintiff sent out her third set of interrogatories to the City by email, seeking: contact information for current and former employees of IPRA who worked on the investigative file related to the shooting death of Plaintiff's son, including whether they were represented by counsel and if so, the names of their attorneys (Interrogatory no. 8);

and, contact information concerning the "liaison" between the mayor and IPRA during the time period related to IPRA's investigation in this case up to and including the present. (Interrogatory no. 9) The City, responded to the interrogatories on April 7, 2017. (Ex. A) In its response the City filed several objections to both interrogatories and took the position that all of the current and former employees of IPRA listed in Plaintiffs interrogatory 8 are represented by the corporation counsel. After receiving the response to the Interrogatories counsel for Plaintiff set up a call with the City attorneys to discuss the City's position and objections to the two interrogatories which plaintiff believes were both untimely and frivolous. On April 11, 2017 at 4pm Plaintiff's attorneys Gorman and Gill held a conference call with City attorneys' Green and Mowatt. After discussing the issues the City attorneys sought time to respond to Plaintiff's counsel's concerns.

On April 21, 2017, the City of Chicago sent a letter responding to the concerns raised. (Ex. B) On April 25, 2017 City Attorney Jonathan Green sent an email regarding an additional representation agreement with yet another former employee.

Attorneys for the parties complied with local rule 37.2 in a good faith attempt to resolve this issue however, given the position by the City, the attorneys were unable to reach an accord.

### 2. THE INTERROGATORIES AT ISSUE

Interrogatory number 8 sought the following:
> *For each of the current or former employees of the city of Chicago listed below:*
> *a. Please provide complete contact information (including full name, address, phone number, email address and date of birth);*
> *b. If the individual is no longer employed at IPRA please state the last day of employment at IPRA and the reason for their leaving the employ of IPRA;*
> *c. If any of the following are represented by counsel please state the name of the attorney that represents that individual;*

2

> *d. If any of the individuals have provided documents or information pursuant to the litigation hold agreements please so state and provide those documents/information.*
>
> *[A list of 18 employees whose names were found in the IPRA documents related to this case followed.]*

The City responded by making several objections and then claimed that each of the current and former employees were represented by the City of the Chicago and could only be contacted through the corporation counsel's office. (Of the 18 employees listed in the interrogatory 13 had left the City.) The City refused to state the reason the employees left the City and refused to state whether any of the individuals provided documents or information pursuant to the litigation hold agreements tendered pursuant to this litigation.

During the 37.2 discussion attorney Gorman explained to ACA Green that she was lawfully entitled to the information and to contact witnesses. Gorman further explained that the City could not impose a blanket rule that it represents all of the current and former employees that were involved in the IPRA investigation in this case and that Plaintiff sought the information so that she could do informal interviews. ACA Green responded by stating that he would contact the current and former employees and get authority from each of them for the City's representation. Attorney Green agreed to get back to counsel regarding the City's position by April 21, 2017. On April 21, 2017, attorney Green amended the City's answer to state that Plaintiff's counsel could contact two former employees because the City had not yet received back "consent to be represented by this office." (See Exhibit B). On April 25, 2017, attorney Green amended the City's

position as to one of those former employees claiming that this individual had now consented to be represented by the City attorneys. (See Exhibit C).

**Interrogatory number 9 sought the following:**

Please identify the administrator(s), individual(s), committee, assistant(s), or other individuals whose duties and responsibilities included acting as liaison between the mayor of the City of Chicago and the Independent Police Review Authority (IPRA) from August 9, 2012 to present. Please provide the full name, address, date of birth, current employer, and title for all individuals. Please provide the name of any committee or task force and the names of each individual involved in the same for the relevant period.

The City responded to this interrogatory stating:

*Defendant City objects to this interrogatory as vague in regard to the phrases "administrator(s), individual(s), committee, assistant(s), or other individuals," "duties and responsibilities including acting as liaison," "any committee or task force and the names of each individual in the same," and "relevant period." Defendant City further objects to this interrogatory as overly broad as to time frame and not relevant to the allegations in the complaint because it requests information for a time period subsequent to the underlying incident in this case, and because it requests personal information for individuals, including those not involved in the underlying IPRA investigation, and is not relevant to the allegations of the complaint. Subject to and without waiving any objections, the City answers as follows:*

*From August 9, 2012 to the present, there has not been a designated, person, committee or task force acting as "liaison" between the Mayor and IPRA.*

*(See Exhibit A, pages 3-4).*

During the aforementioned Rule 37.2 conference, Plaintiff's counsel requested that the City withdraw their frivolous objections as the City clearly understood the interrogatory and appears to have answered the interrogatory. Plaintiff's attorney Gill was clear that he was

4

merely requesting that they withdraw their objections so that Plaintiff could rely on the key admission contained inside that interrogatory answer. Attorney Green stated that they would review the answer again and possibly amend that answer.

In the April 21, 2017 letter from attorney Green, counsel for the City reaffirmed that they were standing on their objections and answer to interrogatory numbered 9.

3**. ARGUMENT**

### A. PLAINTIFF SEEKS TO CONDUCT HER OWN INVESTIGATION

In responding to Interrogatory number 8 the City takes the astonishing position that it represents each of the eighteen employees connected with IPRAs investigation in this case, regardless as to whether the employee sought the representation, had (has) their own counsel, are current or former employees, or, the position they held at the time of the investigation at issue. The City's use of privilege and representation is aimed at frustrating counsel's ability to lawfully contact witnesses. In addition, the corporation counsels' solicitation of the current and former employees flies in the face of the attorney code of ethics.

The contention by the City of Chicago that it represents all of the current and former employees of IPRA who were in any way related to the investigation of the underlying police murder blithely ignores the solidly established principle that counsel's representation of [a corporation][1] does not automatically equate to representation of its employees, nevertheless its former employees. See, *United States v. Keplinger* 776 F2d 678,

---

[1] As further argued below Plaintiff contends that this principle is even more pronounced when it is a government entity that is seeking to represent all of its current and former employees.

701 (1985), where the Seventh Circuit found no implied attorney-client relationship between corporate counsel and defendant employees where there was little or no evidence that the employees either sought legal advice on an individual basis or manifested in any way their belief that they were being represented individually. (citing *In re Grand Jury Proceedings (Jackier)*, 434 F. Supp. 648, 650 (E.D. Mich. 1977) (noting that corporate officer may invoke attorney-client privilege individually only if he "makes it clear when he is consulting the company lawyer that he personally is consulting the lawyer, and the lawyer sees fit to accept and give communication knowing the possible conflicts that could arise")). (See also, *Bougé v. Smith's Mgmt. Corp.*, 132 F.R.D. 560, 566-67 (D. Utah 1990) to hold otherwise "restrict[s] legitimate inquiry and reinforce[s] structured economic power and authority and prevent[s] less costly means of access to the courts"). This general rule has been codified in the ABA Rules of Professional Conduct, which are the ethical rules applied by this and other federal courts.[2] Defense counsel should be sufficiently cognizant of the ABA rules to avoid such an argument. Indeed, advancing that argument regrettably casts a cloud on the ethical conduct of defense counsel.

Specifically, the ABA provided an advisory opinion on this very subject[3] warning counsel, in the corporate setting, that a blanket rule under rule 4.2 is not ethical "… Expansive though the rule's coverage is with respect to officers and employees of a

---

[2] Rule 4.2 is also followed by the Illinois Supreme Court ethical rules.
[3] http://www.americanbar.org/publications/youraba/2014/june-2014/corporate-employees-and-rule-4-2--who-is-covered-under-the-blank.html

represented organization, the rule does not contemplate that a lawyer representing the entity can invoke the rule's prohibition to cover all employees of the entity, by asserting a **blanket** representation of all of them." (Emphasis in original) In addition, and as further pointed out in the ABA advisory opinion, "Other ethics rules may be implicated by a claim to blanket representation of potential fact witnesses that obstructs opposing counsel's access to witnesses and evidence."

Plaintiff's counsel is seeking the right to contact certain current[4] and former employees outside the context of a deposition where they have been prepared by City attorneys prior to testifying. Plaintiff's counsel would like to learn if these witnesses know anything relevant and if not, depositions of perhaps a dozen witnesses can be avoided. The fact that the courts (and the professional rules of conduct) have found it unpalatable for attorneys to claim a blanket representation of all fact witnesses in a corporate setting only emphasizes the absurdity of the City attorneys trying to claim a blanket representation of all of the fact witnesses in litigation against the government. This is especially true where, as here, the litigation involves matters of public concern and many of the current and/or former government employees' communications with litigants will constitute protected speech.[5] Thus, if citizens may engage in such protected

---

[4] Plaintiff's counsel is cognizant of the fact that certain current employees may not wish to speak to them because of their employment status but the position of the City that it represents all of them, regardless of position, is not tenable.

[5] Not only because citizens (both government employees and those engaged in litigation against the government) have the right to freely "associate" for the purpose of engaging in activities protected by the First Amendment- without intrusion by the government, but also because civil rights litigation is an expression of these rights to free speech and association, and participation in it is a fundamental right within the protection of the First Amendment.

7

activities as demonstrating, filing petitions, and writing editorials, they should also be able to communicate through their lawyer directly with a government decision maker about the same issue. Finally, prohibiting contact between Plaintiff (through her counsel) and her government opponents would unfairly strip plaintiff of rights that nonlitigant citizens have, simply by virtue of the plaintiffs' bringing a claim against the government. Unlike those of their fellow citizens, a litigant's rights of access and speech would be restricted because he or she has chosen to bring suit.

Plaintiff submits that the City has an obligation to serve the public interest, which includes helping citizens redress wrongs created by government actions. This public interest outweighs the narrower interest that the government has in winning lawsuits and is in direct conflict with the goal of broad access to witnesses- to allow uncovering and presenting all relevant evidence to fact finders. Therefore, even if this Court uses a "balancing" approach, plaintiff's constitutional interests surely outweighs the City defendant's interest in preventing the disclosure of adverse information.

### B. SOLICITATION BY THE CITY ATTORNEYS

There is no indication that any of the current or former employees have requested legal advice by the corporation counsel, secured the corporation counsel's services or has had in a manner an attorney-client relationship prior to the solicitation by the corporation counsel following Plaintiff's interrogatories. In fact, the opposite is true, it is clear from the correspondence that the corporation counsel reached out to these employees (current and former) and sought to represent them solely for the purpose of frustrating Plaintiff's ability to do an independent investigation.

Fifteen of the employees listed by Plaintiff in her interrogatory are former employees. Some of those former employees, upon information and belief, had their own attorneys at the time they left the City. However, even the employees who were not represented at the time they left the City are not fair game for the City attorney's solicitation for representation. Further, it appears from the City's response that its claim of representation of each of those current and former employees was not accurate at the time the response was filed. Clearly the City was in the process of soliciting the employees when it responded to the interrogatory, up to and including the actual 37.2 conference (April 11, 2017), and when the City responded to the conference (April 21, 2017). (See Exhibits A and B). In addition, the City continued to solicit former employees even after responding to the 37.2 conference. (Ex. C)

In short, it appears that simple interrogatories about current and former employees tipped the City off that Plaintiff was going to conduct investigations or interviews with these witnesses. As a result, the City began a campaign to use the attorney-client privilege to prevent fair investigations by Plaintiff's attorneys: first, by way of claiming a blanket privilege even prior to soliciting each individual; and second, by soliciting the representation of the employees and former employees. This practice of soliciting these individuals is coercive both to current employees and (potentially) coercive to former employees. Plaintiff also submits that such solicitation appears unethical and in violation of Rule 7.3 of the Rules of Professional Conduct.

Plaintiff moves to disqualify the corporation counsel's office from representing these current and former employees. Plaintiff's counsel has not seen the actual solicitation

9

letter (if it was written) and asks this Court to Order the corporation counsel to immediately produce the eighteen letters and any attachments (or any other communications and notes related to the solicitation). However, even if the corporation counsel told those employees that the decision to be represented by the corporation counsel was entirely voluntary or that the current and former employees would suffer no retaliation if they declined the representation, that solicitation appears to be a serious breach of the rules of professional conduct and affects the public view of the judicial system.

The fact that most of these current and former employees have now signed off on the representation by the City puts Plaintiff's independent investigation in jeopardy and prejudiced these individuals against the Plaintiff. If the status quo is maintained, Plaintiff is in a position where she must take eighteen depositions of individuals with whom she has never spoken, who have been prepared for testimony by City attorneys, and whose conversations with City attorneys would be considered privileged and confidential. For this reason, Plaintiff also seeks an Order that these individuals are not properly represented by the City's attorneys and should not be contacted again by any attorney on behalf of the City.

### c. THE CITY'S FRIVOLOUS OBJECTIONS TO BOTH INTERROGATORIES 8 AND 9 SHOULD BE STRICKEN.

As previously discussed, the City of Chicago began each interrogatory answer with extensive objections. In regards to interrogatory numbered 8, those objections were: requests for personal information of employees; safety concerns exist not proportional to

the needs of the case; vagueness; speculation; and an objection that pursuing information pertaining to litigation hold agreements is not related to discovery procedure or substantive claims.

As to interrogatory number 8, this case already has a protective order entered and counsel for Plaintiff has no difficulty protecting the personal information of employees and former employees of IPRA from public dissemination. The interrogatory was not in any way vague or based upon speculation as the City clearly understood the interrogatory and answered it to the extent it was willing. The objection related to the litigation hold agreements is perplexing and Plaintiff's counsel cannot decipher its meaning or intent. It was the City that actually sent out the litigation hold agreements following the litigation surrounding the IPRA subpoena. Surely if documents were tendered pursuant to the agreements Plaintiff has the right to know which documents came from which individual.

The City's objections to interrogatory numbered 9 are similarly perplexing. After a paragraph of objections that claimed confusion over terms, the City of Chicago answered that interrogatory. In addition, a fair reading of the interrogatory, the objections, and the answer shows that the objections are frivolous. Accordingly, these objections should be stricken so that the answer can stand for admissibility purposes pursuant to FRCP Rule 33(C).

4. **CONCLUSION AND REQUESTED RELIEF**

Severe damage has already been done by the corporation counsel's office in its attempt to interfere with Plaintiff's legitimate attempts to conduct an investigation into the City's activities in regards to IPRA's investigation into the shooting of Divonte Young. For the reasons set forth above, Plaintiff asks this Court to:

1. Strike the objections contained in its responses to the interrogatories;

2. Order the City to completely respond to Interrogatory number 8;

3. Disqualify the corporation counsel's office (or anyone in its stead) from representing the eighteen current[6] and former employees of IPRA;

4. Order the City to immediately turn over to this Court and to Plaintiff's counsel copies of all communications and notes between the corporation counsels office and the eighteen current and former employees;

5. Enter an Order allowing counsel to have ex-parte conversations with the current and former employees;

6. Sanction the City for its contumacious conduct.

And for such other and further relief as this Court deems just.

                                      Respectfully Submitted,

                                      /s/H. Candace Gorman
                                      Attorney for Plaintiff

---

[6] In the event this Court does not want to restrict the corporation counsel's office from further contact with the five current employees Plaintiff asks for an Order allowing ex-parte conversations with those current employees and a restriction on the corporation counsel to advise or consult with any of the individuals (current or fromer) regarding this Court's order.

H. Candace Gorman
Law office of H. Candace Gorman
220 S. Halsted
Suite 200
Chicago Illinois 60661
312-427-2313

Matthias D. Gill
Illinois ARDC# 6282953
The Gill Law Firm, PC
1820 Ridge Road, Suite 216
Homewood, Illinois 60430
(708) 816-8080
mgill@gillfirm.com