IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LASHAWNDA YOUNG, ) <br> Independent Administrator for the estate of ) <br> Divonte Young, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF CHICAGO, et al., ) <br> ) <br> Defendants. ) | No. 13 C 5651 <br><br> HON. JOAN B. GOTTSCHALL <br><br> Magistrate Judge Soat-Brown |

**DEFENDANT CITY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL INTERROGATORY RESPONSES
AND TO DISQUALIFY THE CORPORATION COUNSEL FROM
REPRESENTATION OF FORMER IPRA EMPLOYEES**

Defendant City of Chicago, by its attorney, Edward N. Siskel, Corporation Counsel of the City of Chicago ("City"), respectfully submits the following response in opposition to Plaintiff's Motion to Compel Interrogatory Responses and to Disqualify the Corporation Counsel from Representing the Former Employees it Solicited in Response to Plaintiff's Interrogatories.

**I. The Corporation Counsel's Contact with the IPRA Former Employees
And Its Representation of the Designated Current and Former IPRA
Employees Is Proper**

In support of their argument that the City's initial contact with its former IPRA investigators was somehow improper, Plaintiff counsel cites to the Seventh Circuit case of *United States v. Keplinger*, 776 F2d 678, 701 (1985), a criminal law-related case, which, in following Rule 4.2 of the ABA Rules of Professional Conduct ("ABA Rules"), states that there is no implied attorney-client relationship between corporate counsel and defendant employees where there is little or no evidence that the employees "manifested in any way their belief that they were being represented individually." (citing *In re Grand Jury Proceedings (Jackier)*, 434

1

F.Supp.648, 650 (E.D. Mich. 1977). In fact, however, in the *Keplinger* case, the court specifically found that in that case "that no express agreement for individual representation was made, nor did any of the defendants ever ask the attorneys directly or indirectly to represent him individually…nor did the attorneys ever indicate to defendants their belief that such a relationship existed." *Kiplinger*, 776 F2d 678, 700 (7th Cir. 1985). Hence, the *Kiplinger* case, under these circumstances, is highly distinguishable, for specific representation agreements between former non-supervisory IPRA employees and the Corporation Counsel, pursuant to the parties' 37.2 conference agreement in regard to non-supervisory personnel, as set forth to Plaintiff's counsel in the City's 37.2 response letter (*Dkt*. 226-2), have been confirmed.

In addition, Plaintiff's counsel cites an advisory opinion on Rule 4.2 of the ABA Rules that states that a "blanket rule" under Rule 4.2 is not ethical, and that corporate counsel cannot assert a blanket representation of all employees automatically.

However, the City and its counsel at no time asserted such a blanket rule in this case, and made it clear that if the City was not able to contact the individual, or if the employee was a non-supervisor and affirmatively did not want the City to represent them, their personal contact information would be shared with Plaintiff's counsel, who would be free to contact them without the Corporation Counsel's involvement. Attorney Green asked each individual non-supervisory former employee witness if they wished to have their personal contact information forwarded to Plaintiff's counsel to contact them directly, at which time they were free to talk with them, or if they wished to have the Corporation Counsel represent them in this particular matter for their work involving the underlying Young investigation, and for the purpose of their prospective deposition. In this particular context, involving IPRA investigators, as reflected in the City's

objection to Plaintiff's Interrogatory 8 citing safety and security concerns for the employees and their families, initial contact by the Corporation Counsel for this type of inquiry was appropriate.

Although not sworn officers, IPRA investigators serve a law enforcement-related function investigating police-involved shootings. They are not clerks or general administrative staff. Many of these investigations, such as the underlying incident in this matter, involve violent criminal conduct. Here, the involved officer observed Plaintiff decedent shooting at a crowd on the street, just prior to the officer discharging his weapon in fear of his life or the life of others. Many such cases may also involve gang-related issues that can go well beyond the police-involved shooting investigation. These issues inherently bring up safety and security concerns for the investigators and their families. Some have continued to work in law enforcement-related positions after leaving IPRA. In fact, one of the listed investigators contacted is now with the Federal Bureau of Investigation.

Hence, the City treats representation of these individuals similar to how it treats representation of former sworn officers when the issues involve their previous work with the City in the scope of their law-enforcement-related employment. *See, e.g.,* the Northern District of Illinois's recognition of the importance of a facilitation of service program to protect the safety and security of law enforcement personnel and their families, attached hereto as Exhibit A. We strictly protect their and their families' privacy, safety and security, contacting them first to offer our representation in such cases if they wish, so they and their families will not be directly contacted at home or work by plaintiff's counsel, or by their clients, or others, and their private information will not be shared. They, to a person, greatly appreciate our efforts with these concerns in mind, and almost always request that we represent them and keep their private information confidential. They are fully informed at the time of contact that they are free to not

3

accept our representation, in which case we will forward their last known contact information to opposing counsel, who, pursuant to ABA Model Rule 4.2, is free to communicate with the unrepresented former employee of the corporate party. *See* ABA Formal Opinion 91-359, at 3.

As for current employees, which Plaintiff did not distinguish at the 37.2 conference, the official Comments to ABA Model Rule 4.2 recognize the corporate party to include the following for purposes of representation:

> …(1) persons having a managerial responsibility on behalf of the organization; (2) persons whose acts or omissions in connection with the matter may be imputed to the organization for purposes of civil or criminal liability; or (3) any person whose statement may constitute an admission on the part of the organization. The third category is a reference to Fed.R.Evid. 801(d)(2)(D) which provides that a statement is not hearsay if it is offered against a party and is 'the statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship…'

*Brown v. St. Joseph County*, 148 F.R.D. 246, 254 (1993). Surely, all the currently employed IPRA investigators and supervisors listed in Plaintiff's Interrogatory 8, each involved in some manner in the underlying Young investigation as admitted by Plaintiffs, fall within these categories. Hence, the assertion by the Corporation Counsel that the City is representing each of the specifically named individual current employees listed by Plaintiff in Interrogatory 8 does not constitute a "blanket," unspecified representation of employees of the corporation as prohibited by ABA Model Rule 4.2.

Official Comment 7 to Rule 4.2 of the Illinois Rules of Professional Conduct of 2010 ("Illinois Rules") states, consistent with the *Brown* case standard cited above, "In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs, or regularly consults with the organizations' lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for

4

purposes of civil or criminal liability." Comment 7 to Rule 4.2 of the Illinois Rules. Thus the representation by the City of the listed IPRA current or former employees is not a "blanket" representation, but one specifically provided to those individuals which the Plaintiff herself has identified as involved, within the scope of their employment at the City, in the underlying Young IPRA investigation which has been made part of the subject matter of the claim against the City. In fact, Comment 8 of the same rule goes on to recognize that actual knowledge of a lawyer that such individuals would be so represented by an organization may be inferred from the circumstances, and a lawyer "cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious." Comment 8 to Rule 4.2 of the Illinois Rules. Surely, such is the case here.

Even the ABA Advisory Opinion cited by Plaintiff in her brief in regard to the "blanket rule," Opinion 95-396, explains that the ban on contact of Rule 4.2 is limited to the particular "subject matter involved in the case" and that it cannot be used if a lawyer says he represents the client for "all" purposes. ABA Advisory Opinion 95-396. It goes on to state the following:

> By prohibiting communication about the subject matter of the representation, the rule contemplates that the matter is defined and specific, such that the communicating lawyer can be placed on notice of the subject of representation. Thus, if the representation is focused on a given matter, such as one involving past conduct, and the communicating lawyer is aware of this representation, she may not communicate with the represented person absent consent of the representing lawyer. However, where the representation is general — such as where the client indicates that the lawyer will represent her in all matters — the subject matter lacks sufficient specificity to trigger the operation of Rule 4.2.

*Id.* Hence, Rule 4.2 does apply here where Plaintiff has stated that she wishes to contact the individuals in regard to their involvement in this underlying case, and the City has rightfully stated that it represents those individuals, not in a general fashion with absolutely no parameters, but in regard to the specific involvement of that individual in the underlying Young IPRA

5

investigation, done within the scope of their employment, which is included in the subject matter of this particular case. Thus, no "blanket" violation by the City has occurred.

### II. The Corporation Counsel Should Not Be Disqualified from Representing the Former IPRA Employees Who Request the City's Representation Related to Work Done in the Scope of Their Former Employment with the City.

Motions for disqualification involve a two-step analysis. First, the Court must consider whether an ethical violation has occurred, and, second, if there has been a violation, whether disqualification is the appropriate remedy. *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D.Ill. 1997); *see also, Freeman Equipment v. Caterpillar*, 16 C 9172 (*Dkt*. 40, N.D.Ill., March 13, 2017, J. St. Eve). However, as the Court explained in the recent *Freeman* opinion:

> The Seventh Circuit has cautioned that disqualification "is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Freemen v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). The Court emphasized that because disqualification deprives a party of representation of its choosing, motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Id*. at 722. Accordingly, the movant "bears a heavy burden of proving facts required for disqualification." *Guillen*, 956 F. Supp. at 1421.

*Freeman Equipment, Id*.

Plaintiff claims the initial conduct of the Corporation Counsel with these former and current IPRA employees "appears" to violate Rule 7.3 of the Rules of Professional Conduct, and that the Corporation Counsel should therefore be disqualified from the representation of such individuals. Not only does Plaintiff cite no case law in support of this assertion, Rule 7.3 of the Illinois Rules of Professional Conduct of 2010 ("Rule 7.3"), part of the Illinois Rules covering advertising and solicitation of clients, clearly states the following:

> (a) a lawyer shall not by in-person, live telephone or real-time electronic contact solicit **professional employment** when a significant motive

6

>for the lawyer's doing so is the **lawyer's pecuniary gains**, unless the person contacted:…(2) has a family, close personal, or **prior professional relationship with the lawyer**.

Article VIII, Illinois Rules of Professional Conduct of 2010, Rule 7.3 (emphasis added). Not only was the City's attorney in this case not soliciting for professional employment purposes, nor was he doing so for his pecuniary gain, the City's Corporation Counsel also had a prior relationship with the former employees as the prior attorney representing IPRA employees working in the scope of their employment on this particular matter.

In addition, the Official Comment 5 to Rule 7.3 states that "[t]here is a far less likelihood that a lawyer would engage in abusive practices against a former client… or in situations in which the lawyer is motivated by considerations other than the lawyer's pecuniary gain…. [c]onsequently, the general prohibition in Rule 7.3(a) … [is] not applicable in those situations." Official Comment 5 to Rule 7.3 of the Illinois Rules. Such is the case here, where safety and security concerns are paramount.

### III. Plaintiff's Approach to This Issue Reflects Their Simple Avoidance of Paying for Any Depositions in this Matter.

Plaintiff filed this case back on August 8, 2013, has now obtained over 140,000 pages of discovery, including the underlying investigation file in this matter, yet has noticed **not one** deposition in this police shooting case.[1] Arguing that costs are somehow too great, Plaintiff goes to great lengths to argue that they should automatically be allowed to interview free of charge and outside of a deposition context all present and former government employees, based on generic First Amendment grounds, despite the fact that (1) the government entity for which the

---

[1] In fact, it has been the individual defendants who have insisted that oral fact discovery should proceed this last month to get his case moving, noticing up the medical examiner and Illinois State Police personnel, in light of the numerous procedural delays initiated by Plaintiff's counsel in this case, including refusing to accept any protective order in this matter for months, and now refusing to take any depositions of IPRA personnel, not even of the most involved investigators (as clearly indicated on the vast document production received) for initial inquiry purposes.

7

individuals were employed is a corporate defendant in this case, (2) Plaintiff wishes to interview the employees on the specific underlying investigation in which they were an agent of the corporate defendant working within the scope of their employment, which is one of the very subject matters of corporate liability in this case, (3) these employees wish to exercise their own right to counsel, (4) the clear safety and security concerns present in this context for those individuals and their wishes to maintain strict personal privacy and safety for themselves and their families, and (5) Plaintiff now has over 140,000 pages of discovery, including the underlying investigation file from a number of years ago, when many of these employees would now need, as a practical matter, to refresh their recollections as to those materials, even before they would be willing to do an interview on it.

Unlike Plaintiff claims, Defendant City is not preventing them from having contact with these individuals, just that these individuals wish to have counsel to prepare and wish to be contacted through that counsel, not directly. From day one, the City attorneys of record wished to facilitate and schedule such depositions, yet Plaintiff continues to refuse with further procedural delay. Plaintiff could easily, as is normally the case in such police shooting investigation-related cases, take one or two targeted depositions and then go from there. Yet, apparently Plaintiff's counsel insists that they really do not wish to expend even those basic funds on their case.

### IV. The City complied with Local Rule 37.2, and the City's Interrogatory Responses and Objections were Timely and Proper

**a. The City Properly Complied with Rule 37.2**

As Plaintiff's counsel point out in their motion, an appropriate 37.2 conference was held, at Plaintiff's request, between Plaintiff's counsel and the City's attorneys of record on April 11, 2017, at 4:00 p.m. At the conference, Plaintiff's counsel contended that all of the Defendant

8

City's objections to Interrogatory 8 were "frivolous," without further specificity,[2] and that they wanted the personal contact information for all of the former IPRA investigators, whom they claimed were all involved in some manner in the underlying Young investigation, according to the numerous documents obtained by plaintiff's counsel in this matter, and that is why they were listed. They also wanted to know why they left IPRA. Attorney Green stated that all the employees, including former employees to the extent they could be located and agreed to be represented by the City, would be made available to Plaintiff by the City for depositions, as is normally the case, and Plaintiffs could ask those former employees themselves why, exactly, they left IPRA, which is not something the City would necessarily be privy to. In addition, to facilitate the depositions, Mr. Green stated he was already in the process of contacting the former employees to inform them that Plaintiff wanted to contact them and likely take their depositions, to gather their latest contact information, to ask them whether they wished to have Plaintiff's attorney contact them directly in advance, or if they wanted the City attorneys to represent them in the matter and at their depositions, since the matter involved work they performed in the scope of their employment while at IPRA (basically their work on the Young investigation). It was purely their decision. Attorney Green also stated that supervisory personnel would automatically be represented by the City's counsel, and that, if anyone did not wish to be represented by the City, or could not otherwise be located, their last known contact information would be forwarded to Plaintiff's counsel.

---

[2] Although not specifically discussed at the 37.2 conference, in her motion, Plaintiff now demands responses to her Interrogatory 8 sub-section request regarding what documents, if any, were provided by the listed IPRA current or former employees to IPRA "in response to the litigation hold agreements" for purposes of discovery responses. Subject to and without waiving the City's objections that this request is vague, not relevant nor proportional to the needs of the case, for it regards discovery procedure and not substantive claims, the City states that all such documents were produced to Plaintiff by IPRA's counsel Patrick Rocks, including, as received from Investigator Hitt, the general December 5, 2012 email distributed to all investigators concerning the State's Attorney's Office declinations (duplicate copy of that general email produced as IPRA_000142), and, from Investigator Kobel, a WORD copy of his memorandum regarding the medical examiner's office (produced as IPRA_0001424), the signed copy of which was previously produced as Attachment #11 to the underlying Log File#1056189 (IPRA_0000230).

Plaintiff's counsel then contended that, although they understood that supervisory personnel would be represented by the City's counsel, and they did not have a problem with that, other former employees could not be so automatically represented. Attorney Green agreed, stating that they would have to each consent, and offered to provide affidavits to Plaintiff's counsel for each former employee requesting representation by the City if Plaintiff's counsel so wished. Plaintiff's counsel then said that that would "not be necessary."[3] Attorney Green then agreed to supplement the City's answer to Interrogatory 8 to list the supervisory status of each of the current and former employees listed, and provide an update as to which former employee consented to the City's representation, who did not, and any former employee who could not be located. Plaintiff's counsel once again emphasized that representation for all was not automatic, but did not otherwise object to the procedure proposed.

Plaintiff's counsel then went on to challenge the City's objections to Interrogatory 9, stating that the City "obviously understood the question, so it should waive its objections and convert it to a request to admit." Attorney Green explained that it was very difficult to determine what exactly plaintiff meant by "acting as liaison" the way it was phrased, due to the City's structure, that Plaintiff's counsel could still use the answer for impeachment purposes if he so wished, and that an automatic conversion to a request to admit was inappropriate. Nonetheless, Attorney Green stated that he would review the objections and response to see if it could be modified in any way, and that he could offer a 30(b)(6) witness to perhaps provide any further information on the City's structure to assist plaintiff in that regard.

---

[3] Plaintiff has obviously changed her position on this matter from the 37.2 conference, now demanding that such affidavits be obtained from all eighteen witnesses listed, whether supervisors or not, and whether former employees or not. Defendants City can easily obtain such affidavits or declaration pursuant to 28 U.S.C. § 1746 if the Court deems it necessary, as previously offered to Plaintiff (but declined during the 37.2 conference).

10

At the end of the conversation, the parties agreed that the response would be forwarded to Plaintiff's counsel by April 21, 2017, which was done, as indicated in Plaintiff's motion which attached the City's response letter. *See Dkt*. 226-2. In that letter, the City's counsel offered to arrange for any depositions of the identified individuals represented by the City that Plaintiff's counsel would like. No depositions have been requested by Plaintiff in this case so far. The 37.2 conference, for the most part, was a fairly brief and cordial conversation.

**b. The City's Interrogatory Responses and Objections were Timely and Proper**

The City attorneys of record, Jonathan Clark Green and Raoul Mowatt, were first served a copy of Plaintiff's Third Set of Interrogatories on March 29, 2017, in the form of an attachment to an email from Plaintiff's counsel Candace Gorman. *See* Exhibit B (Email and Attachment containing Interrogatories 8 and 9 received by the City attorneys of record from Plaintiff's counsel dated March 29, 2017). In their motion, Plaintiff falsely states that they served those interrogatories upon the City on January 5, 2017. (*Dkt*. 226, p.1) As indicated on the Certificate of Service on the interrogatories themselves, originally dated January 5, 2017, as well as admitted by Attorney Gorman herself in her own email of March 29, 2017, this document was originally sent via email only to the attorneys representing the individual defendants in the case and not served in any way on the City attorneys of record. Neither an email attachment nor a hard copy of this document was ever served on, or received by, the City attorneys of record until the March 29, 2017 email was sent by plaintiff. As described by the attorneys for the City in our response email to Plaintiff's counsel at the time, we had never seen this document before, but would nonetheless respond as soon as possible to expedite discovery matters. *See* Exhibit C (Email response of City attorneys dated March 30, 2017). In fact, the City attorneys answered

11

those two new interrogatories served upon them by plaintiff within four (4) days of that date, on April 4, 2017.

Plaintiff makes a vague reference in her email that it was her belief that the discovery was somehow brought to Mr. Mowatt's attention at the time, but fails to show any service of the actual text of these interrogatories on any of the City attorneys of record at any time, whether by follow-up email attachment to their respective email accounts or by hard copy. In fact, plaintiff's counsel had informed the City's attorneys of record at various times after their initial mistaken service that they would be "re-drafting" and "serving" any discovery directed to the City to the City attorneys of record, but nothing, in fact, was ever served on the City attorneys of record until the March 29, 2017 email attachment, nor has any further discovery been served on the City attorneys of record.

WHEREFORE, Defendant City respectfully requests that this Court deny Plaintiff's Motion to Compel Interrogatory Responses and to Disqualify the Corporation Counsel from Representing the Former Employees it Solicited in Response to Plaintiff's Interrogatories, and for such further relief the Court deems just and proper.

Date:  May 26, 2017                                     Respectfully Submitted,

                                                        EDWARD N. SISKEL
                                                        Corporation Counsel
                                                         for the City of Chicago

30 N. LaSalle Street, Suite 900                         By: /s/ *Jonathan Clark Green*
Chicago, Illinois 60602                                     Jonathan Clark Green
(312) 744-0226                                              Senior Asst. Corporation Counsel
Atty. No. 06193934                                          City of Chicago, Dept. of Law

12