FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LASHAWNDA YOUNG, Independent Administrator for the Estate of Divonte Young, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 13-cv-5651 |
| CITY OF CHICAGO, *et. al.*, | ) ) | |
| | ) | The Hon. Joan B. Gottschall |
| Defendants. | ) ) | Magistrate Judge M. David Weisman |

**PLAINTIFF'S RESPONSE TO DEFENDANT
CITY OF CHICAGO'S MOTION FOR PROTECTIVE ORDER
REGARDING PLAINTIFF'S *MONELL* DISCOVERY REQUESTS**

Plaintiff seeks discovery to prove the elements of her *Monell* claim, including among other elements: (1) that the City of Chicago had a policy or practice of exonerating and failing to discipline officers involved in police shootings and (2) that the City was deliberately indifferent to officers' reckless conduct. Plaintiff must prove both to prevail on this claim. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

At the heart of the parties' dispute is whether Plaintiff is entitled to discovery regarding analogous "post-event conduct" by Chicago police officers. As Judge Gottschall recently recognized in a different case, such evidence is discoverable and admissible, not to prove causation but "on the limited theory that 'there may be a continuity in municipal policy so that what happens after the event may [cast] some light on what the policy was prior to the event.'" *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1069 n.23 (N.D. Ill. May 11, 2018) (Gottschall, J.) (quoting *Estate of Keys v. City of Harvey*, No. 92 C 2177, 1996 WL 34422, at *4 (N.D. Ill. Jan. 26, 1996)). And, the Seventh Circuit recently held that subsequent evidence of investigation and

discipline of county employees accused of sexual harassment was admissible to shed light on municipal policy, pattern, or deliberate indifference. *Doe v. Vigo County*, 905 F.3d 1038, 1046 (7th Cir 2018) (analyzing Defendants' response to employee misconduct over a twenty-year period when evaluating a *Monell* claim).

Plaintiff seeks discovery of both pre- and post-event conduct to prove that (1) for years the Chicago Police Department ("CPD") operated with policies and practices that institutionalized a Code of Silence throughout the department and that CPD failed to adequately discipline and train officers and (2) the City was deliberately indifferent to the risks posed by these policies and practices. Plaintiff is entitled to this discovery in a *Monell* case. Her discovery requests are relevant and proportional to the needs of the case. And, the City does not specifically establish good cause for a protective order. The City's arguments—which primarily address points of evidentiary prejudice—are inapposite at discovery, where relevance is determined under the broader standard of Rule 26.

## BACKGROUND

On August 9, 2012, Divonte Young, an unarmed, twenty-year-old Black man, was shot in the back and killed as he fled a barrage of gunfire directed toward him by CPD officer Otis Watts. Plaintiff alleges that the shooting of Divonte Young was unreasonable, unjustified, and in violation of the Fourth Amendment. Plaintiff's complaint also includes a *Monell* claim against the City predicated upon three theories. *First*, Plaintiff alleges that the City had a policy or practice of almost always exonerating and declining to impose discipline on Chicago police officers who shoot members of the public—manifesting deliberate indifference to whether such shootings were justified. *See* Fourth Am. Compl. ¶¶ 41, 53 (Doc. No. 78). *Second*, Plaintiff alleges that the CPD failed to provide adequate training to police officers concerning the

2

circumstances in which the use of lethal force is appropriate. *See id.* ¶¶ 45–46. *Finally*, Plaintiff alleges that the CPD maintains a Code of Silence policy or practice with respect to police shootings, fostering a culture of impunity in which police officers had no fear of disciplinary or legal consequences for their actions. *Id.* ¶ 56.

## ARGUMENT

**I. PLAINTIFF IS ENTITLED TO DISCOVER SUBSEQUENT INSTANCES OF SIMILAR POLICE MISCONDUCT IN ORDER TO PROVE HER *MONELL* CLAIM OF A POLICY OR PRACTICE OF POLICE IMPUNITY.**

Plaintiff seeks evidence of subsequent incidents similar to the shooting of Divonte Young in order to establish (1) that there exists a City policy of exonerating and failing to discipline Chicago police officers who are involved in a shooting and (2) the City's deliberate indifference to this policy.

### A. Plaintiff's Requests are Relevant and Proportional to the Needs of the Case.

The scope of permissible discovery is broad. *See* Fed. R. Civ. P. 26(b)(1). It requires only that the information sought is (1) relevant to a claim or defense and (2) proportional to the needs of the case. *Id.*; *see also Reed v. Columbia St. Mary's Hosp*, 915 F.3d 473, 479 (7th Cir. 2019); *Does 1-5 v. City of Chicago*, Case No. 18-cv-03054, 2019 WL 2173784, at *1 (N.D. Ill. May 20, 2019).

#### 1. Evidence of Post-Event Conduct Is Relevant to Plaintiff's *Monell* Claim.

The universe of relevant discoverable information "encompass[es] matter which might only lead to other matter that would ultimately be relevant." *Giger v. Ahmann*, No. 09 CV 4060, 2010 WL 3385527, at *1 (N.D. Ill. Aug. 17, 2010) (Gottschall, J.). Whether the information would be admissible at trial is not the deciding factor. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). As a

3

result, some judges in this circuit permit discovery even when it appears that "much of the information . . . will turn out to be irrelevant;" all that matters is that the information "is potentially relevant." *Ashford v. City of Milwaukee*, 304 F.R.D. 547, 553 (E.D. Wis. 2015).

Plaintiff's *Monell* claim alleges that the City (1) has de facto policies or practices of justifying almost every police shooting and exonerating almost every officer involved, regardless of the evidence and officers' conduct and (2) was deliberately indifferent to officer misconduct. Fourth Am. Compl. ¶¶ 39–40, 53. Plaintiff must prove that the City behaved consistently in similar circumstances to establish a policy, a practice, or deliberate indifference. *See Thomas v. Cook Cty. Sheriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010); *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). Discovery into subsequent, similar police shootings will "lead to other matter that would ultimately be relevant." *See Giger*, 2010 WL 3385527, at *1 (Gottschall, J.). Namely, it will lead to evidence of the City's *response* to such shootings. Plaintiff needs evidence of the City's response to subsequent similar events in order to establish whether the City's behavior following Divonte Young's death was "merely a random event" or instead was the City's policy, practice, or deliberate indifference, establishing a *Monell* violation. *See Grayson v. City of Aurora*, No. 1:13-cv-01705, 2013 WL 6697769, at *3 (N.D. Ill. Dec. 19, 2013).

Thus, courts in this district routinely grant discovery of post-event conduct in *Monell* claims. *See, e.g.*, *id.* at *3–4 (granting discovery into other wrongful convictions occurring up to ten years after plaintiff was wrongfully convicted); *Padilla v. City of Chicago*, No. 06-C-5462, 2009 WL 4891943, at *1, *7 (N.D. Ill. Dec. 14, 2009) (granting discovery into an officer-monitoring program that began two years after plaintiff's wrongful arrest); *see also Starks v. City of Waukegan*, No. 09 C 348, 2013 WL 5874563, at *2 (N.D. Ill. Oct. 31, 2013) (noting that

4

evidence dating up to sixteen years after plaintiff's wrongful conviction was "fair game" in *Monell* actions).

### 2. Evidence of Post-Event Conduct is Proportional to the Needs of the Case.

In addition, Plaintiff's requests are proportional to the needs of the case. Proportionality in the discovery context is determined by balancing six factors:

> [1] [T]he importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

A very recent case in this district balanced all six factors to permit discovery of subsequent similar incidents in a *Monell* claim. *Does 1-5*, 2019 WL 2173784, at *3 (holding that the City of Chicago's handling of a male student's sexual harassment complaint was discoverable in plaintiff female paramedics' prior *Monell* claim). Just like in *Does 1-5*, each of the Rule 26(b)(1) proportionality factors are easily met: (1) Plaintiff alleges an important policy, namely that the City fosters a culture of impunity and zero accountability with respect to police shootings; (2) the amount in controversy due to Divonte's death is significant; (3) the City's has much greater access to information proving its policy of impunity, namely the details of its actions following each shooting; (4) the City has far greater resources than Plaintiff; (5) discovery into incidents subsequent to this case where the City exercised its policy of impunity establishes that the City has a policy or practice of exonerating and failing to discipline policies officers, which is necessary to prove Plaintiff's *Monell* claims; and (6) the City has not provided any specific evidence demonstrating the expense of discovery, much less that such expense outweighs Plaintiff's need for this information to prove the critical elements of policy, practice,

or deliberate indifference in her *Monell* claim. Like *Does 1-5*, this Court should find that Plaintiff's requested *Monell* discovery is proportional.

### 3. Courts Routinely Allow Evidence of Post-Event Conduct In Support of *Monell* Claims.

Courts in this circuit routinely allow evidence regarding post-event conduct in order to establish the existence of municipal policy, practice, or deliberate indifference in *Monell* claims. And, of course, the standard for admissibility is a higher one than the Rule 26 standard governing whether discovery of such material should be allowed. *See, e.g., Does 1-5*, 2019 WL 2173784, at *3.

A Seventh Circuit panel held that "subsequent conduct by a municipal policymaker may be used to prove preexisting disposition and policy." *Sherrod v. Berry*, 827 F.2d 195, 205 (7th Cir. 1987), *vacated en banc on other grounds*, 835 F.2d 1222 (7th Cir. 1988). In its Motion, the City points out that the *Sherrod* opinion was subsequently vacated. Though the vacation of the opinion means that its holding is not formally binding, *Sherrod* nonetheless remains strong authority in this circuit. In *Sherrod*, the plaintiff—father of Ronald Sherrod, who was shot and killed by a Joliet police officer—brought *Monell* claims against the City of Joliet and its chief of police, alleging that defendants promoted a policy of excessive use of force by police. *Id.* At trial, the court admitted evidence of two subsequent lawsuits against the officer. *Id.* at 204–05. The en banc court's decision, which vacated the panel ruling upholding the admissibility of the post-event conduct, rested on the unrelated ground that the district court incorrectly admitted evidence that Ronald Sherrod was unarmed when the officer shot him. *Sherrod v. Berry*, 856 F.2d 802, 805–06 (7th Cir. 1988) (en banc). But, though it vacated the panel decision, the en banc court was careful to instruct the district court to decide remaining evidentiary questions "in light of this court's prior discussions of those matters, specifically *those found in our earlier*

*vacated opinion.*" *Id.* at 807–08 (emphasis added). The en banc court therefore intended that the district court be bound by panel's *Monell* reasoning—in particular the panel's endorsement of the admissibility of post-event conduct. Thus, Judge Gottschall cited the *Sherrod* rule in her decision in *Rivera*, 319 F. Supp. 3d at 1069 n.23.

The First, Third, and Fifth Circuits are in accord with *Sherrod*. *Foley v. City of Lowell*, 948 F.2d 10, 14–15 (1st Cir. 1991) (holding that it was no abuse of discretion to admit evidence of a similar police beating six months later to prove claim that police ignore excessive-force complaints); *Beck v. City of Pittsburgh*, 89 F.3d 966, 973–76 (3d Cir. 1996) (reversing district court and holding that evidence of subsequent complaints was sufficient to make it to a jury on police-impunity *Monell* claim); *Grandstaff v. City of Borger*, 767 F.2d 161, 171–72 (5th Cir. 1985) (holding evidence of no reprimands, discharges, or admissions of error following reckless shooting admissible against municipality).

If evidence of post-event conduct is admissible at trial, as these cases hold, then such evidence must surely be discoverable under the Rule 26 standard. Indeed, in police misconduct cases, "[p]laintiffs are given a broad temporal scope for discovery, 'and the [court] will determine before or at the trial whether "other acts" are similar enough and close enough in time [under FRE 404(b)] to be relevant to the latter in issue and thus, admissible.'" *Clark v. Ruck*, No. 13-cv-03747, 2014 WL 1477925, at *2 (N.D. Ill. Apr. 15, 2014) (quoting *Lepianka v. Village of Franklin Park*, No. 03 C 2991, 2004 WL 626830, at *2 (N.D. Ill. Mar. 26, 2004)). In other words, Judge Gottschall's ruling on the admissibility of the post-event conduct in issue is a matter for another day. Plaintiff seeks *discovery* at this time—discovery that the cases overwhelming justify. There is no basis for a protective order here; the City's Motion should be denied.

### 4. The Notorious Murder of Laquan McDonald Should Not Shield Defendants from *Monell* Discovery During that Time Period

In its brief and again during the status on its Motion, the City protests that evidence related to the notorious murder of Laquan McDonald by CPD officer Jason Van Dyke (and the resulting cover-up) should be deemed non-discoverable because this evidence would unfairly prejudice the Defendants in this matter. These arguments miss the mark. The issue before the Court is the scope of discovery—not what rulings might be justified on the inevitable motions in limine that will be advanced regarding the admissibility of Laquan McDonald evidence.

In fact, the Laquan McDonald case is just one of dozens of post-event cases with facts analogous to the Divonte Young shooting. Undersigned counsel have reviewed publicly available summaries of IPRA investigation reports that were completed between August 9, 2012—the date Divonte Young was killed—and August 4, 2017.[1] In that five-year period, counsel have identified *seventy-five* incidents of misconduct by Chicago police officers similar to that which resulted in Divonte Young's death. They include Incident 1041134 when, on September 23, 2012, an officer panicked during a routine traffic stop and fired upon a fourteen-year-old boy holding a toy paintball gun—luckily the officer missed, but, unluckily, he hit his partner in the thigh. No disciplinary actions were taken and the officer was exonerated. The reports also detail instances where officers, following the City's shoot-first-ask-questions-later policy of impunity, shot allegedly gun-carrying members of the public who were later found to be holding only a cell phone, socket wrench, or tire iron. More generally, these reports are replete with instances where no gun was recovered from the victim of a police-involved shooting

---

[1] These summaries are available on IPRA's website. Indep. Police Review Auth., *Legacy Summary Reports*, Civilian Off. Police Accountability, https://www.chicagocopa.org/news-publications/legacy-publications/legacy-summary-reports/ (last visited June 6, 2019).

8

after an alleged "shooter" was gravely wounded or killed by an exonerated officer. These post-event cases, and others like them, undeniably have potential relevance to show the City's pervasive policy of impunity and deliberate indifference to the victims of police shootings.

The City's insinuation that Plaintiff seeks *Monell* discovery only to prejudice a jury by re-litigating the Laquan McDonald tragedy is simply false. The City's policy of impunity and its deliberate indifference has resulted in dozens of other post-event tragedies, all of which bear on the City's policies and practices at the time of Divonte Young's death.

> **B.     The City's Motion Does Not Specifically Establish Good Cause.**

A party "generally face[s] a high burden" when seeking to prevent discovery with a protective order. *Giger*, 2010 WL 3385527, at *2 (Gottschall, J.). As Judge Gottschall stated in an earlier order in this case, this burden requires that the moving party show that "the discovery is overly broad, unduly burdensome, or not relevant." *Young v. City of Chicago*, Case No. 13 C 5651, 2017 WL 25170, at *9 (N.D. Ill. Jan. 3, 2017) (Gottschall, J) (quoting *Pac. Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012)).[2] And, objections to discovery requests must be stated "with specificity." *Id.* (quoting *Miller v. City of Plymouth*, No. 2:09–CV–205–JVB–PRC, 2010 WL 1754028, at *15 (N.D. Ind. Apr. 29, 2010)); *see also* Fed. R. Civ. P. 26(c)(1). Thus, a protective order will only issue if the moving party "provide[s] specific facts establishing good cause." *Hitz Entm't Corp. v. Mosley*, No. 16 C 1199, 2017 WL 444073, at *3 (N.D. Ill. Feb. 1, 2017).

---

[2] While this order enforced a subpoena, Judge Gottschall noted that "the scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Young*, 2017 WL 25170, at *8 (quoting *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253 (S.D. Ind. 2002)).

9

The City here raises only two objections, neither of which are stated "with specificity:" (1) that the *Monell* discovery is not relevant because it cannot be used to prove causation, and (2) that responding to discovery entails "well known" costs. Def. Mot. at 3–4. But first, to be clear, Plaintiff is not seeking this discovery to prove causation. She seeks it only to prove that (1) there exists a City policy of exonerating and failing to discipline police officers who are involved in shootings and (2) that the City was deliberately indifferent to this policy. Second, the fact that there is cost associated with discovery, as a general matter, is not the kind of "specific fact[] establishing good cause" that Judge Gottschall identified as required earlier in this case. *Young*, 2017 WL 25170, at *9.

## II. PLAINTIFF IS ENTITLED TO DISCOVERY OF FIREARM DISCHARGES AIMED AT ANIMALS AND DISCOVERY OF TRAINING RECORDS

Plaintiff seeks evidence relating to how the City has responded to and investigated firearm discharges involving animals. The record in this case demonstrates that Defendant Watts discharged his firearm at an animal in a manner that was reckless, dangerous, and without regard to the safety of bystanders. This incident should have raised red flags for his supervisors and should have resulted in some combination of counseling, discipline, retraining, and increased supervision. The record is clear that the City took no action against Defendant Watts. Plaintiffs seeks evidence of other firearm discharges to support her *Monell* theory that the City failed to adequately train, supervise and discipline officers—even when those officers have a demonstrated propensity to use firearms in a reckless manner. As discussed previously, scope of discovery under Rule 26(b)(1) is extremely broad, encompassing material that might lead to the discovery of admissible evidence. *See Giger*, 2010 WL 3385527, at *1 (Gottschall, J.).

Here, this evidence is reasonably calculated to prove that the City had knowledge of multiple officers' reckless use of firearms and failed to take any remedial action. As *Giger*

teaches, this material falls within the scope of discovery. *See id.* (Gottschall, J.). This evidence will support Plaintiff's *Monell* claims relating to the City's failure to adequately train, supervise, and discipline officers, specifically in relation to the use of firearms. In this context, the Defendant's proportionality argument fails.

Plaintiff also seeks information about training materials relating to the Code of Silence that may have been provided to recruits at the Academy (including any training on the Code of Silence that may have occurred in the fall of 2003 when Defendant Watts went through the Academy). Plaintiff further seeks information about the training that was provided during that time frame through a Rule 30(b)(6) deposition. The Defendants argue that the production of training materials should be restricted to a narrow time frame. This argument ignores the purposes for which Plaintiff seeks this information and the Supreme Court precedent that supports this claim.

First, with regard to training materials on the Code of Silence—if such materials exist—they could help support inferences that the Code of Silence within the CPD does indeed exist. This is akin to a party admission and should therefore be fair game for Plaintiff—regardless of when the materials were developed or implemented. *See Spalding v. City of Chicago,* 186 F. Supp. 3d 884, 902, 919–20 (N.D. Ill. 2016)(denying the City's summary judgment motion on the *Monell* claim after an officer testified that they were taught the following by instructors at the CPD Academy: "[W]e do not break the code of silence. Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."); *Harduvel v. Gen.*

11

*Dynamics Corp.*, 878 F.2d 1311, 1381 n.2 (9th Cir. 1989) (affirming admission of a training film as a party admission).

Second, in order to prevail on her failure to train *Monell* claim, Plaintiff must prove that an "identified deficiency in [the] city's training program [is] closely related to the ultimate injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). Here, Plaintiff must prove that the training the City provided to Defendant Watts was so deficient that it constituted deliberate indifference to the constitutional rights of those he policed. *See id.* This inquiry requires discovery on the specific training the City provided to Defendant Watts throughout his career—including his formative weeks spent training at the Academy. Limiting responsive records to a six-year timeframe is insufficient. Plaintiff's claim requires proof of all training Defendant Watts received throughout his tenure at CPD. Therefore the request properly dates back to his days at the Academy.

Courts regularly consider the exact type of training evidence sought by Plaintiff here when evaluating failure-to-train *Monell* claims. *See, e.g.*, *LaPorta v. City of Chicago*, 277 F. Supp. 3d 969, 989–90 (N.D. Ill. 2017) (finding that testimony by IPRA personnel that they had received no training on how to identify problematic officer weighed against summary judgment for the City on a *Monell* claim); *Fairly v. Andrews*, 430 F. Supp. 2d 786, 789–90, 801–03 (N.D. Ill. 2006) (considering, in detail, correctional officer's testimony about harassment witnessed by trainees).

Third and finally, Plaintiff seeks information about Defendant Watts's training records after Divonte's death in order to prove that the City took no action to counsel, discipline, or re-train Defendant Watts after this fatal shooting. As explained fully above, information about the City's subsequent actions is discoverable to prove the existence of the City's ongoing and

pervasive deliberate indifference to the risk of harm posed by officers on the streets with inadequate training and supervision, who are allowed to discharge their weapons with impunity.

### III. PLAINTIFF IS ENTITLED TO DISCOVERY OF MAYORAL RECORDS.

As explained previously, Plaintiff has a *Monell* claim alleging that the Code of Silence—the constellation of policies and practices that have institutionalized a culture of impunity within the CPD and that support police officers' efforts to lie and cover up the harm they impose on Chicago's communities—was a moving force behind the 2012 death of her son. On December 9, 2015, then-Mayor Rahm Emanuel admitted that the Code of Silence exists throughout the CPD. In his own words:

> As we move forward, I am looking for a new leader of the Chicago Police Department to address the problems at the very heart of the policing profession. This problem is sometimes referred to as the Thin Blue Line. Other times it is referred to as the code of silence. It is the tendency to ignore, deny or in some cases cover-up the bad actions of a colleague or colleagues. No officer should be allowed to behave as if they are above the law just because they are responsible for upholding the law. . . . We cannot ask citizens in crime-ravaged neighborhoods to break the code of silence if we continue to allow a code of silence to exist within our own police department.[3]

Plaintiff seeks discovery related to this party admission.

Specifically, Plaintiff seeks reports and communications between the Mayor's office and the entities responsible for investigating police shootings from 2005 to 20015. Def. Mot. Ex. A ¶ 24, Ex. B ¶¶ 15–17. The Mayor's admission makes clear that the final policymaker's knowledge of the code of silence (and indeed, the code of silence itself) did not begin in 2015. Plaintiff is entitled to conduct discovery regarding the underlying basis for this admission—including communications between the Mayor's officer and the police oversight entities. This information

---

[3] *Prepared Remarks of Mayor Rahm Emanuel: December 9, 2015*, Chi. Trib. (Dec. 9, 2015) https://www.chicagotribune.com/politics/ct-prepared-remarks-mayor-rahm-emanuel-20151209-story.html.

13

will allow Plaintiff to evaluate the extent to which the Mayor's office was informed about uses of force, officer involved shootings, and the extent to which the Mayor's office exerted any influence over CPD's accountability and oversight apparatus. This discovery will illuminate the City's policies and practices up to the date of Mr. Young's death. Information about policies and practices in the three years subsequent to Mr. Young's death will demonstrate both the City's ongoing deliberate indifference to these practices and policies *and* the pervasive continuity of the policies and practices that were a moving force behind Mr. Young's death.

Further, Plaintiff seeks documents related to any analysis final policymakers commissioned or completed regarding the use of force and officer discipline from 2005 to 2015. Def. Mot. Ex A ¶ 8. At least one such report was completed in 2014. This report, referred to as the "Safer Report," documented numerous deficiencies in CPD's system of accountability and discipline.[4] The report relied on data collected from CPD and IPRA from 2008 to 2014. Any other reports containing cumulative data analyses are clearly relevant to the Defendants' notice of CPD's policy and practice deficiencies, as well as their deliberate indifference to those deficiencies. Plaintiff is therefore entitled to each report conducted by the City, its divisions, or its assigns from 2005 to 20015. If other reports analogous to the Safer Report exist, they will pose little to no burden to produce. At this time, Plaintiff seeks only the final reports—not the underlying data.

This is evidence that courts have routinely allowed plaintiffs to discover in *Monell* cases against the CPD—and, indeed, several courts have found this evidence to be admissible. *See*

---

[4] Ron Safer et al., *Preventing and Disciplining Police Misconduct: An Independent Review and Recommendations Concerning Chicago's Police Disciplinary System* (2014), https://www.chicago.gov/content/dam/city/progs/safety/Preventing_Disciplining_Police_Misconduct_Dec_2014.pdf.

*Mann v. City of Chicago*, No. 15 CV 9197, No. 13 CV 4531, 2017 WL 3970592, at *2–5 (N.D. Ill. Sept. 8, 2017) (finding that electronic communications within, from, and to the Mayor's Office were relevant for purposes of *Monell* discovery and ordering the City to include in its email search Mayor Rahm Emanuel and members of his senior staff); *Laporta v. City of Chicago*, 277 F. Supp. 3d 969, 989 (N.D. Ill. 2017) ("[T]he Mayor's statements and the contents of the City–commissioned Police Accountability Task Force constitute admissions of a party opponent under FED. R. EVID. 801(d)(2)(D) . . . ); *Wilbon v. Polvanich*, No. 12 C 1132, 2016 WL 890671, at *8 (N.D. Ill. Mar. 9, 2016) (Mayor's statement was admissible for impeachment purposes).

## CONCLUSION

For the foregoing reasons, this Court should deny the City's Motion for a Protective Order.

Respectfully submitted,

**LaSHAWNDA YOUNG**

By: /s/ Sheila A. Bedi
One of her attorneys

Locke E. Bowman
Sheila A. Bedi
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-1271


H. Candace Gorman
Law Offices of H. Candace Gorman
220 S. Halsted, Suite 200
Chicago, IL 60661

Matthias D. Gill
The Gill Law Firm, PC
1820 Ridge Road, Ste. 216
Homewood, IL 60430
(708) 816-8080

## **CERTIFICATE OF SERVICE**

      The undersigned, an attorney, certifies that the foregoing document was electronically served on all counsel who have filed appearances in this case via the Court's CM/ECF system on June 6, 2019.

/s/ Sheila A. Bedi