**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LaSHAWNDA YOUNG, Administrator of the Estate of Divonte Young,** Plaintiff, | ) | |
| **v.** | ) | **No. 13 C 5651** |
| | ) | **Magistrate Judge M. David Weisman** |
| **OTIS WATTS and CITY OF CHICAGO,** Defendants. | ) | |

**ORDER**

"The district court has the inherent authority to manage the course of a trial," *Norris v. Bartunek*, No. 15 C 7306, 2017 WL 4556714, at *1 (N.D. Ill. Oct. 12, 2017) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). "Prudent motions in limine serve a gatekeeping function by allowing the judge 'to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury.'" *Smith v. City of Chi.*, 21-CV-1159, 2025 WL 1744919, at *2 (N.D. Ill. June 24, 2025) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). "'A motion in limine should only be granted where the evidence is clearly inadmissible for any purpose.'" *Id.* (citation omitted). The Court issues the following rulings on Defendants' motions in limine with the understanding that these may change in the context of trial.

Thus, as stated during the pretrial conference, these rulings are based on the record before the Court at this time. To the extent a party wishes the Court to review any ruling during trial, counsel should make that request at the appropriate time during trial. See generally Fed. R. Evid. 103. Further, any objections to admission of evidence during trial should be renewed during the trial at the appropriate time to preserve said objections. The Court will not entertain full-blown arguments during the trial itself but will hear focused arguments related to any change in circumstances since this ruling, and to allow the parties to preserve their objections on the trial record.

**Motion in Limine No. 1: Bar evidence as to the IPRA investigation of underlying incident beyond Watts' statement to investigators**

Defendants move to bar (in whole or in part) the Independent Police Review Authority ("IPRA") investigation into the shooting of Divonte Young. Defendants first argue that the entire IPRA investigation should be barred as irrelevant under FRE 401 and unduly prejudicial under FRE 403.[1]

[1] In its summary judgment ruling, the Court stated,

Regarding relevance, Defendants assert that IPRA report is irrelevant because there is no pending *Monell* claim. However, to the extent the IPRA contains admissible statements regarding the incident at issue, it may be relevant. The relevance objection is denied.

Defendants further argue that the probative value of the IPRA report is substantially outweighed by the danger of unfair prejudice and confusion of the issues under FRE 403 because any such investigation or internal investigation would unduly prejudice Defendant Watts by creating an improper negative inference that Defendant Watts engaged in some form of wrongdoing bearing disciplinary scrutiny by an internal agency. Defendant cites several cases in support, including *Christmas v. City of Chica*go, 691 F. Supp. 2d 811, 818 (N.D. Ill. 2010) (barring evidence that the Office of Professional Standards "OPS" investigated the incident involving Plaintiff); *Delgado v. Mak*, No. 06 C 3757, 2008 WL 4367458, at *2 (N.D. Ill. Mar. 31, 2008) (finding that potential prejudice from testimony regarding internal affairs investigation substantially outweighed its probative value and barred this evidence); and *Sallenger v. City of Springfield*, No. 03-3093, 2007 WL 2683791, at *1 (C.D. Ill. 2007) (finding that evidence related to internal investigations, or lack thereof, and any outcome, was inadmissible due to the substantial risk of jury confusion or possibility that the jury would base its decision on improper basis). Defendants further note that the Seventh Circuit has not recognized an allegation of "inadequate police investigatory work" as a civil rights claim in the absence of another recognized constitutional right. *Jacobson v. National Railroad Passenger Corp*., No. 97 C 6012, 1999 WL 1101299, at *10 (N.D. Ill. Nov. 29, 1999); *see also David v. Vill. of Oak Lawn*, 954 F. Supp. 1241, 1245-46 (N.D. Ill. 1996) (holding that plaintiff did not have constitutional right to have his complaints investigated). If any portion of the IPRA investigation is offered into evidence during trial, or any part of it is admitted, and is connected to the investigation itself, Watts will be permitted to elicit testimony (or the parties can stipulate) that an internal investigation follows every officer-involved shooting and the fact that an investigation occurred does not in and of itself point to any wrongdoing, and remind the jury that it is their obligation to determine all issues related to the shooting.

Defendants also argue that Defendant Watts would be prejudiced if the notion of an internal investigation were raised and he were not able to discuss that investigation's findings, namely, that he was found to have been justified in the shooting. Defendants further assert that it would interfere

---

> Plaintiff states that Watts's account is contradicted by statements attributed to Christopher Fletcher in a preliminary report drafted by IPRA investigator Margarita Galindo. While this discrepancy would provide Plaintiff with a good faith basis to cross-examine Watts, Galindo's report of Fletcher's statements of Watts's statements is hearsay and therefore does not raise a material issue of fact. *See Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013) ("Police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer") (citing Fed. R. Evid. 803(8), advisory committee notes). Here, Fletcher's statements are not an officer's firsthand observations as memorialized in a report.

(Dkt. # 694, at 6 .)

with the province of the jury to allow the IPRA finding to come into evidence, even if it would work to Defendant Watts's benefit.

Because the IPRA report in its totality will not be admitted into evidence, there is no reason for the conclusion reached to be referenced during the trial. That said, if the use of any individual evidentiary components of the IPRA report become sufficiently pronounced, the Court will entertain a motion during trial that the ultimate conclusion of the investigation be presented with a caution that it is the jury's duty to make all determinations related to the shooting, and the IPRA investigation's conclusion should not be considered by the jury in reaching its own conclusion.

In general, any testimony or evidence relating to the IPRA investigation itself is excluded. Factual information related to the shooting derived from the IPRA investigation is admissible if it is otherwise admissible – *e.g.*, if an IPRA investigator is called to testify as to where certain physical evidence was observed by the investigator that fact would be admissible if a proper evidentiary foundation is established. Further, statements attributed in the IPRA report to various non-party witnesses may be a good faith basis to cross-examine a witness – *e.g.*, "Isn't it true that in a prior proceeding you told [BLANK] that you saw Officer Watts running down the alley?" Finally, and related to the point just made here, statements from the IPRA report of non-party witnesses who testify at trial are still generally considered hearsay, and therefore, any impeachment based on the IPRA statement cannot be perfected by offering the IPRA statement as evidence. *See generally* Fed. R. Evid. 801(d)(1), and discussion that follows in this paragraph. As to Officer Watts, his statements from the IPRA report may be offered as substantive evidence if a proper foundation is established during trial. *See generally* Fed. R. Evid. 801(d)(2). In summary, if Plaintiff wishes to impeach an officer (other than Watts) based on a statement that appears in an investigation report, he can do so, but Plaintiff is precluded from mentioning the origins of the prior inconsistent statement (*i.e.*, Plaintiff cannot mention that the prior inconsistent statements were made in connection with any investigation). *See Norton v. Schmitz*, 2011 WL 4984488, at *1 (N.D. Ill. May 27, 2011) ("[W]hen impeaching a witness using an IPRA statement, the attorney shall refer to the statement as one made 'in another proceeding'; the attorney shall not mention 'IPRA' or 'investigation.'").

**Preliminary Report**. Prior to addressing each section of the IPRA report, the Court notes that generally, each document/statement in the report needs to be viewed separately from an evidentiary standpoint. If a party can establish admissibility for the document (and its separate contents – hearsay within hearsay), then it is likely it will come in, barring some other valid objection.

Investigator Margarita Galindo wrote a preliminary report based on an interview with a police supervisor, Christopher Fletcher, but not direct information from Defendant Watts. *See* Plaintiff's Exhibit 58. The report states, "The following information is preliminary and involves multiple levels of hearsay." *Id.* at FCRL 2314. Defendants acknowledge the preliminary account contains some differences from the account that Defendant Watts later gave investigators and gave in his deposition for this matter (*i.e.*, that Watts supposedly used the door of his vehicle as a shield, that he supposedly immediately chased Divonte Young in the alley, and that he shot across the street rather than directly south). Defendants correctly argue the report contains multiple levels of

hearsay[2] and should be considered inadmissible on that ground alone, pursuant to Rule 802. Plaintiff asserts that she "intends to use the IPRA preliminary report to cross-examine defendant Watts on what he told commander Fletcher during the walk-through because the preliminary report shows Watts's prior inconsistent statements regarding the events leading up to and following the shooting." (Pl.'s Resp. Defs.' Mots. Limine, Dkt. # 709, at 2.)

Accordingly, as the Court has already noted, Plaintiff may use the report to cross-examine Watts on the differences in his account of the incident. Indeed, Defendants themselves acknowledge that they "have no issue with the parties using the statement Defendant Watts gave to IPRA as evidence broadly for impeachment, refreshing recollection, or similar legitimate purposes."

However, as noted *supra*, as the Court understands the record at this time, Galindo's summary of events is not admissible because there does not appear to be a proper foundation that the summary comes solely from Watts's own statements, thus raising hearsay issues. *See generally* Fed. R. Evid. 801.

Plaintiff argues that Fed. R. Evid. 803(8) provides a basis for its admission. Rule 803(8) states as follows:

> **(8) *Public Records.*** A record or statement of a public office if:
> **(A)** it sets out:
> **(i)** the office's activities;
> **(ii)** a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
> **(iii)** in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
> **(B)** the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

There are several issues with this approach. First, the preliminary report does not set out IPRA's "activities," but rather is a document setting forth information gathered during its investigation. Nor does this particular report reflect "a matter observed" by the IPRA investigator, and finally the preliminary report standing alone is not a "factual finding." *Compare Daniel v. Cook County*, 833 F.3d 728, 740 (7th Cir. 2016) (DOJ evaluative report of conditions at Cook County Jail deemed admissible). Moreover, Plaintiff calls into question much of the IPRA report's integrity and certainly its conclusion. Plaintiff cannot seek admission of part of the IPRA report, but not other parts of the same "public record" while calling into question the overall integrity of the investigation itself. This piecemeal approach is inconsistent with the purpose of Rule 803(8). *See* Notes of Advisory Committee on Proposed Rules ("Justification for the exception is the assumption that a public official will perform his duty properly");

---

[2] Defendant Watts told the police supervisor this account, the police supervisor told the IPRA investigator, and the IPRA investigator documented it in her report. Defendants contend there could be yet another level of hearsay (or more) involved in which Defendant Watts gave an account to another officer, who then gave an account to the supervisor, who spoke to IPRA.

Regardless, to the extent that Plaintiff seeks to admit parts of the report by the investigator or the commander on scene, these may be admissible as recorded recollections under

> **(5)** ***Recorded Recollection.*** A record that:
> **(A)** is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;
> **(B)** was made or adopted by the witness when the matter was fresh in the witness's memory; and
> **(C)** accurately reflects the witness's knowledge.
> If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party.

Fed. R. Evid. 803(5).

While the Court agrees that certain portion of the preliminary report may be hearsay and therefore not admissible, which the Court will address in the context of trial, Defendants' arguments as to relevance and unfair prejudice are without merit. Defendants assert that whether Defendant Watts used his car door as a shield or immediately pursued Divonte Young into the alley does not tend to prove or disprove any material fact in the litigation, and thus, the preliminary report should be excluded as irrelevant. This is incorrect. The specific facts surrounding the shooting are key to ascertaining whether excessive force was used. *See Logan v. City of S. Bend*, 564 F. Supp. 3d 719, 728 (N.D. Ind. 2021) (when assessing whether deadly force was reasonable, the court considers the totality of the circumstances confronting the officer and the facts and circumstances of each particular case). Defendants' relevancy objection is denied.

Similarly, Defendants argue that the preliminary report's probative value is substantially outweighed by the danger of unfair prejudice, cumulativeness, and jury confusion in violation of Rule 403 because Plaintiff is likely to argue that Defendant Watts told a false story initially as captured in the preliminary report or is testifying falsely now. According to Defendants, however, there is no evidence that Defendant Watts was the reason the original report was incorrect, and Plaintiff does not offer any reason Watts would seek to falsify the initial account of the incident. But attacking Watts's credibility will presumably be one of Plaintiff's goals at trial and is a perfectly acceptable strategy. This basis for exclusion is denied.

**Watts's Interview**. Defendants assert that if the entire IPRA investigation is not excluded, Defendant Watts's IPRA statement should come in with appropriate limits. Defendants have no issue with the parties using the statement Defendant Watts gave to IPRA as evidence broadly for impeachment, refreshing recollection, or similar legitimate purposes. Accordingly, this will be allowed absent further objection.

**FOP Disclaimer**. Defendants argue, though, that testimony or argument concerning the FOP disclaimer should be barred. During the interview, Defendant Watts stated, "This statement is not being given voluntarily but under duress. I am only giving this statement at this time because I know that I will lose my job if I refuse." Defendants assert Plaintiff should not be permitted to refer to or elicit testimony about this disclaimer to create an inference that Watts's account was in

any way or shape false. According to Defendants, upon information and belief, Lodge No. 7 of the Fraternal Order of Police, the bargaining unit for CPD officers, instructs members to make a standard disclaimer when giving statements related to internal investigations to preserve rights under the administrative process as a matter of general principle, to identify the statements as involuntary in case criminal charges might be a concern. Defendants assert the disclaimer is not relevant to the officers' truthfulness, and should be barred under Rule 401, and even if information contained in the disclaimer were relevant, the danger of unfair prejudice and jury confusion substantially outweighs any probative value as it will take unnecessary time to discuss issues that are not relevant to this proceeding, such as the difference between a statement compelled under administrative proceedings, the bargaining rights of Chicago police officers, the origin and reasons for the disclaimer, and the fact of the IPRA investigation itself. Defendants cite *Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at * 18 (N.D. Ill. June 12, 2015); *Gomez v. City of Chi.*, No. 13 C 05303, 2015 WL 13651138, at *9 (N.D. Ill. June 29, 2015), and *Robinson v. City of Chi.*, No. 11 C 4528, 2013 WL 3716651, at *1-3 (N.D. Ill. July 15, 2013), in support. The Court agrees. Plaintiff does not meaningfully engage with either the fundamental relevance issue, or more importantly, the concerns related to jury confusion, and why Watts would need to assert the "duress disclaimer" during the interview. Because the Court finds that there are indeed justifiable reasons for the "duress disclaimer" to be made, and the disclaimer would cause jury confusion without a very detailed and unnecessary explanation from the Court, the "duress disclaimer" is not admissible and must not be referenced during witness examination and must be removed from any evidence of Watts's statements presented to the jury. *See generally* Fed. R. Evid. 401 and 403.

**Whispering**. Defendants also assert that any testimony or argument concerning whispering during the IPRA interview should be barred. During the interview, Attorney Dahms whispered to Defendant Watts approximately nine times before Watts added to or amended his responses. *Id.* at 2663, 2669, 2671, 2674, 2675, 2678, 2681, 2682 and 2683. Defendants assert that what Attorney Dahms said is irrelevant under FRE 401 and should be excluded under Rule 403 if Plaintiff attempts to imply or outright claim (1) some sort of impropriety about an attorney consulting with his client in the context of an administrative interview, or (2) that Defendant Watts having legal counsel at the time might unfairly suggest that he was suspected of impropriety and that he therefore had acted improperly. The Court defers ruling on this issue given the context specific nature of any relevance to such evidence.

Related to the whispering issue itself, Plaintiff seeks to offer the enhancement of the whispering by Plaintiff's expert Zac Giammarrusco. Plaintiff states Mr. Giammarruso will testify about the methodology used to enhance the whispered conversations between Watts and his FOP lawyer and will have equipment available to walk the jury through those conversations. Plaintiff states "it is important to note that Watts previously agreed not to object to his attorney (Dahms) testifying about the whispering on the grounds of attorney client privilege." (Pl.'s Resp., Dkt. # 709, at 10.) Plaintiff contends that Attorney Dahms was improperly telling Watts what to say and seeks to introduce the recording of the interview itself. Watts initially took the position that these conversations were privileged communications. Though Watts later waived the privilege to allow Attorney Dahms to be deposed, Defendants state Attorney Dahms' deposition may be sought to be admitted to show that Attorney Dahms' statements were simply to ensure completeness of the record.

Defendants object to the enhanced recording because it is still difficult to hear, as with the actual recording of the interview, and according to Defendants, Plaintiff may cross-examine Watts with the IPRA report itself. Defendants assert the whispering and Attorney Dahms' statements are irrelevant, unduly prejudicial and should be excluded. As noted above, the Court defers on this issue until the trial itself; or, if the parties so request, the Court is willing to conduct a review of the enhanced recording in advance of trial and make a more definitive ruling on this issue to expedite the trial itself and reduce unnecessary costs as to witness preparation and availability.

**Underlying Quality of the IPRA Investigation**. Defendants seek to bar any reference or implication about a purported lack of quality of the IPRA investigation. Because the sole issue before the jury is whether Officer Watts's use of force was appropriate, the quality of the IPRA investigation is generally not relevant and any evidence or argument on this point fails to meet Fed. R. Evid. 401. If Plaintiff believes a particular aspect of some investigatory step is at issue, counsel should raise that particular issue with the Court for separate and individualized consideration under Fed. R. Evid. 401 and 403.

**Motion in Limine No. 2: To bar witnesses related to IPRA investigation of underlying incident**

Defendants seek to bar the testimony of certain witnesses to the extent the IPRA investigation is barred under MIL #1. Even assuming that some aspects of the IPRA investigation beyond what is discussed in Defendant's Motion in Limine No. 1 are permitted, Defendants assert the testimony of certain witnesses (former IPRA Investigator Margarita Galindo Hacias, former IPRA Investigator Heather Looby, former Chicago Police Department Deputy Chief Christopher Fletcher, Ronald Dahms, and Plaintiff's expert Zac Giammarrusco, an audio expert Plaintiff retained to enhance the recording of Defendant Watts' interview) should be barred or limited under Rules 401 and 403 because most of the witnesses in question have testified at their depositions that they have little to no memory of the investigation, even after having been shown documents pertaining to their roles in it.

Plaintiff notes, however, that Galindo destroyed her own notes and Commander Fletcher does not recall one way or the other if he took notes, but testified if he did take notes, he destroyed them. In addition, there are no notes or recordings from the executive meeting with the superintendent of police the following morning, where Commander Fletcher reported firsthand on the shooting of Divonte Young. And, Plaintiff argues, if the preliminary report is allowed into evidence, IPRA investigator Galindo will be needed to establish the foundation of that report (unless Watts agrees to stipulate to that foundation). Plaintiff further states that if the report is only used for impeachment, having Galindo and Fletcher explain to the jury their procedures in undertaking an investigation of a police shooting is important.

On the record before the Court at this time, the Court cannot discern whether Galindo or Fletcher's testimony would be admissible and for what purpose. If these witnesses truly have no memory of any statements made by Watts or other potential testimony related to other possible evidence (*e.g.*, their own personal observations of the physical evidence or shooting scene), Plaintiff has failed to explain what Rule of Evidence would be applicable to justify admission of their reports/statements as contained in portions of the IPRA report.

Therefore, the Court makes no ruling at this time. If either party wishes to offer testimony from the IPRA witnesses identified in Defendants' MIL #3, the party should raise the issue with the Court during trial, outside the presence of the jury, and in advance of calling the witness so the Court can more meaningfully engage as to these evidentiary issues.

**Motion in Limine No. 3: To bar Plaintiff from introducing evidence, testimony, and argument, including Fed. R. Evid. 404(b) evidence regarding other civil lawsuits, citizen complaints, and/or the disciplinary histories of Otis Watts.**

Defendants assert that Plaintiff should be barred from introducing any evidence or arguments related to any lawsuits or complaints against Defendant Watts because such evidence and argument is irrelevant, would confuse the issues and create a trial within a trial, is unduly prejudicial, and is inadmissible propensity evidence. *See* FRE 402, 403, and 404. Defendants note that during Watts's deposition, Plaintiff questioned him extensively regarding an incident when he was working with juvenile offenders at an IDOC facility, and one made a complaint of use of force against him. Further, as a Chicago police officer, Plaintiff conducted an additional deposition of Otis Watts to learn more about an incident when he shot a dog. Defendants assert that the only purpose for introducing such evidence would be to attempt to taint the jury into believing that Watts has been accused of misconduct in the past and that he likely acted in a similar manner under the circumstances here, which is impermissible. *See Anderson v. City of Chi.*, No. 09 C 2311, 2010 WL 4514828 (N.D. Ill. Nov. 2, 2010) (barring evidence of prior civilian complaints against defendant officer as impermissible propensity evidence); *Caldwell v. City of Chi.*, No. 08 C 3067, 2010 WL 380696 at *3 (N.D. Ill. Jan. 28, 2010) (barring evidence of unrelated police misconduct).

Plaintiff asserts that evidence of Watts's prior citizen complaints and disciplinary history is admissible under Rule 404(b) for non-propensity purposes, is highly probative of intent and credibility, and is essential to a fair presentation of the case. Plaintiff contends that evidence Watts has previously been accused of similar misconduct—including excessive force—bears directly on whether his conduct in this case was intentional rather than accidental or mistaken and may also be relevant to credibility and impeachment. (Pl.'s Resp., Dkt. # 709, at 11) (citing *Okai v. Verfuth*, 275 F.3d 606, 610-11 (7th Cir. 2001) (allowing prior acts evidence to show intent); *Wofford v. Celani*, No. 11 C 3543, 2012 WL 2626568, at *5 (N.D. Ill. July 11, 2012) (admitting prior excessive force incidents under Rule 404(b)); *Carson v. Polley*, 689 F.2d 562 (5th Cir. 1982 (same)).

No one disputes that Watts's actions were intentional, so prior acts evidence is unnecessary in that regard. Nor has Plaintiff provided any basis for concluding that the other acts evidence is relevant to credibility. Defendants' objection is sustained; Plaintiff will not be permitted to introduce evidence of Watts's other civil lawsuits or citizen complaints, and/or Watts's disciplinary history.

**Motion in Limine No. 4: For the Court to take judicial notice of the Court of Claims Order of October 13, 2013 under FRE 201(b)**

Defendants seek to have the Court take judicial notice of the 10/12/13 Court of Claims order denying LaShawnda Young compensation from the Crime Victims Compensation Act. Plaintiff asserts that the letter "order" from the Court of Claims is not admissible in this case, as it has no relevance, is vague, prejudicial, and misleading, and should be barred under FRE 401 and 403. Plaintiff argues that FRE 201 requires that an adjudicative fact may only be subject to judicial notice when such fact is "not subject to reasonable dispute." Fed. R. Evid. 201(b). The order contains alleged "facts," including that Divonte pointed a handgun and fired at a police officer and that the incident was classified as a justifiable homicide. (Dkt. # 706-4, at 1.) Plaintiff notes these "facts" are contested and will be the central disputes in the trial.

Defendants' motion to take judicial notice of the Court of Claims order/letter is denied because the "facts" it includes are disputed and introduction of the order/letter could be prejudicial and confuse the jury by leading it to believe that the "facts" contained therein have been resolved by a court. *See King v. Kramer*, 763 F. 3d 635, 650 (7th Cir. 2014) (for a fact to be judicially noticed, "indisputability is a prerequisite").

**Motion in Limine No. 5: To bar Plaintiff's forensic expert David Balash pursuant to *Daubert***

Federal Rule of Evidence 702 and *Daubert* govern the admissibility of expert testimony. Under this framework, a trial judge, as a gatekeeping matter, is responsible for ensuring that proposed expert testimony "is not only relevant, but reliable." In assessing reliability, "the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions." *Smith v. Ford Motor Co*., 215 F.3d 713, 718 (7th Cir. 2000). "Although reliability must be assessed case by case, *Daubert* identified a non-exhaustive list of factors to aid the analysis. Relevant considerations include not only whether the expert's theory "can be (and has been) tested," but also whether it has been "subjected to peer review and publication." *Daubert*, 509 U.S. at 593. Other potential considerations include "the known or potential rate of error" and whether the theory or technique has achieved "general acceptance" in the relevant expert community. No one factor is dispositive, however, and "the Supreme Court has repeatedly emphasized [that] the Rule 702 test is a flexible one." *Smith*, 215 F.3d at 719. The Court has likewise underscored that the correct inquiry focuses not on "the ultimate correctness of the expert's conclusions," but rather on "the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 595). "The objective of [Daubert's gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Clark v. Takata Corp.*, 192 F.3d 750, 756 (7th Cir. 1999), citing *Kumho Tire Co. v. Carmichael,* 119 S.Ct. 1167, 1176 (1999).

Primer Gunshot Residue. Defendants note this Court has already ruled that Mr. Balash's opinions related to other potential sources of primer gunshot residue ("PGSR") were pure speculation and did not create a dispute of fact at summary judgment. (Dkt. # 694, at 9.) Defendants reassert this argument here for the context of trial. Balash claims that the PGSR found on Young's hands does not support Watts's account that Young fired a gun and that the most likely explanation for the PGSR found on Young was contamination from the scene and the improper

handling of Young's body. In his report, Balash stated that the "near identical" distribution of the PGSR on Young's hands and sleeves calls into question how the PGSR was transferred to Young. These claims are not reliable and Balash does not provide any record support or point to any studies, scientific or otherwise for this conclusion. Indeed, this Court noted that they are "mere speculation" in ruling on summary judgment and did not consider them. The Court sees no basis on which to revisit its earlier decision; Balash's opinion in this regard is excluded.

As to the tri-particle nature of the .22 casings, *i.e.*, substantive opinion evidence, Balash asserts those three casings could not be the source for what was found on Mr. Young's body. The parties do not oppose admission of this evidence, subject to Defendants' cross-examination. This aspect of Mr. Balash's opinion will be allowed.

Use of force. Defendants also reassert their argument related to his use of force opinions since the Court did not rule on that aspect of the opinions during summary judgment briefing. (Dkt. # 694.) Defendants argue that Balash is not an expert in police practices. *White v. Gerardot*, No. 1:05-CV-382, 2008 WL 4238959, at *6 (N.D. Ind. Sept. 10, 2008) (Mr. Balash admitted during his deposition that he was not an expert in police procedure); *Miller v. City of Columbus*, No. 2:05CV425, 2007 WL 1114238, at *3 (S.D. Ohio Apr. 12, 2007) (barring Mr. Balash from testifying about whether a use of force was unreasonable as it was beyond his expertise). Nor is he a use-of-force expert. (Docket. No. 609-17, 63:3-11.) Thus, Defendants contend, Balash's opinion about the propriety of Watts's use of force is nothing more than an unsubstantiated opinion that is entitled to no weight, and the opinion should be barred. The Court grants Defendants' motion for the reasons it proffers—namely, Balash is not qualified as a police practices or use-of-force expert and any opinion on these topics is barred.

Wounds and wound path. According to Defendants, to the extent that Mr. Balash seeks to testify about Mr. Young's wounds or the trajectory of the bullet inside of his body (Balash Report, attached at Dkt. 633-6, at 22), these opinions should be barred as beyond Balash's expertise. Defendants note that Balash is not a doctor, has no medical training, and did not conduct an autopsy. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." Gayton v. McCoy, 593 F.3d 610, 616 (7th Cir. 2010) (quoting *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990)).

According to his CV, Mr. Balash has an undergraduate degree in "social science" with a minor in criminal justice. ECF #633-6, p. 4 / page/ID #9813. The vast majority of his work experience deals with firearms and crime scene assessments, and evidence collection at autopsies. *Id.* Similarly, his professional training and experience is highly focused on firearms forensics and hazardous materials. *Id.*, p. 5 / page/ID #9814. In short, there is nothing in his educational or professional background that would qualify Mr. Balash to testify as an expert regarding the wound path related to Mr. Young's cause of death, or the position that Mr. Young must have been relative to Officer Watts at the time of the shooting. *United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019) ("[W]e ask not whether an expert 'is qualified in general' but whether he is qualified 'to answer a specific question'") (quoting *Gayton*, 593 F.3d at 617). Therefore, the Court grants the Defendants' motion as to testimony regarding the wound path of the bullet that killed Mr. Young. However, Mr. Balash also offered an opinion as to the ammunition's trajectory prior to

entering Mr. Young's body, opining that "Divonte Young was struck by a bullet that ricocheted off a hard metal or concrete object" (ECF #633-6, p. 28 / PageID #9837) before entering his body. Because Mr. Balash's educational and professional background does provide a basis for this opinion, he may testify as to this opinion.

Post-shooting investigation. Defendants assert that Balash's opinions regarding the police department's investigation are irrelevant to the claims and any probative value is substantially outweighed by the danger of unfair prejudice. *See Sonnier v. Field*, No. 2:05-CV-14, 2007 WL 576655, at *4 (W.D. Pa. Feb. 21, 2007) (case in which Balash was expert witness, noting that "[m]any of Mr. Balash's comments [in his expert report] are directed at the alleged inadequacy of the post-incident investigation performed by the Pennsylvania State Police," and sustaining Defendants' objection to the admissibility of such statements because "[a]ny errors or omissions by the State Police in their post-incident investigation could not be attributed to the Defendants"); *see also White*, 2008 WL 4238959 at *6 (in deadly force case, sustaining Defendants' objection to Balash opining on the post-incident investigation because "Balash touts himself as an expert in firearms identification, crime scene reconstruction, and forensic consulting, *not* an expert in police procedure," and a "post-shooting investigation is simply not relevant to the 'circumstances known and information available to the officer at the time of his action (firing the fatal shot).'" *Id*. (quoting *Sherrod v. Berry,* 856 F.2d 802, 804-05 (7th Cir. 1988)) (emphasis added).

These opinions might be relevant if a *Monell* claim were at issue, but because it is not, Balash's opinions on the post-shooting investigation will not be permitted. The Court agrees with the courts' conclusions in *Sonnier* and *White*, and in any event, because the Court finds that any probative value is outweighed by the risk of unfair prejudice, Balash's opinion on the post-incident investigation is inadmissible.

**Motion in Limine No. 6: To bar Todd Davis pursuant to *Daubert***

According to Mr. Davis's report, he was retained to generate a 3D reconstruction of the scene located near the intersection of West 63rd Street and South Honore Street in Chicago, IL, where a shooting incident occurred on August 9, 2012. (Davis Report, Dkt. # 609-20, at 1.) Plaintiff contends that "it was Davis's work in analyzing the photos and scans, taken by the CPD on the day of the shooting, that led to the discovery that the three spent shells were moved during the course of the day." (Pl.'s Resp., Dkt. # 709, at 27.)

Defendants argue that the report should be excluded. Defendants first assert that Mr. Davis generated this reconstruction by using scans that were generated years after the incident – in July 2018 – as well as scans and photographs taken on the date of the incident. (*Id.*) 21st Century had to use a "photogrammetric camera match process" wherein the software uses an algorithm to approximate the position of various items that cannot be determined from the available data. (*Id.*) In addition, Defendants assert that Mr. Davis makes guesses on when evidence markers were allegedly moved, stating: "[u]sing the date and time from the metadata, which was recorded when the original photos were taken, an analysis of when the evidence markers were moved could be approximated." (*Id*. at 8.) Defendants argue that: (1) an expert is not necessary to explain the layout of a scene; (2) the 3D reconstruction, such as the one generated by Mr. Davis, is unnecessary and could result in misleading information being presented to the jury, and (3) Mr. Davis is a

professional who makes computer animations, not a crime scene reconstructionist or accident reconstructionist, who did not go to the scene and take measurements and does not have the requisite expertise or experience to give opinions in accident or scene reconstruction.

Plaintiff opposes Defendants' motion, asserting that Davis is a qualified expert who applied reliable, industry-accepted methods to analyze and present complex spatial evidence; his testimony will assist the jury in understanding critical facts in dispute; and Watts's criticisms go to weight, not admissibility.

Regarding the evidence of changing location of the evidence markers, Dkt. # 609-20 at Page 8 of 9, and Davis's opinion on how they moved, the Court fails to understand the relevance of this opinion as it relates to Officer Watts's use of force. Moreover, the Court finds this opinion will lead to jury confusion, as the Court cannot see a link between the presumed movement of the evidence markers and Watts's conduct during the incident of question (*i.e.*, his use of deadly force). There is no suggestion that Watts moved the markers (or had someone else do the same). If Plaintiff believes this evidence fits into the issues at hand during the trial, the Court invites Plaintiff to re-raise the issue during trial.

**<u>Motion in limine No. 7: To bar Plaintiff's police-practices expert Fred Fletcher pursuant to *Daubert*</u>**

According to Mr. Fletcher's report, Plaintiff's counsel engaged him "to consult with them regarding the accountability system operated by the City of Chicago to address allegations of brutality and other wrongdoing by Chicago Police Officers and, in particular, to review how that system evaluated the Chicago Police Officers' use of lethal force in the period between August 2009 and August 2015 (hereinafter sometimes referred to as the "*Monell* period"). (Fletcher Report, Dkt. # 609-13, at 1.) Defendants seek to bar Fletcher's testimony as irrelevant to the case, asserting that his testimony would pertain to Plaintiff's now-dismissed *Monell* claim; make improper credibility determinations; require specialized knowledge he does not possess; improperly reach legal conclusions and invade the province of the jury; or would not otherwise assist the jury and add nothing of value beyond the understanding of a layperson.

Plaintiff agrees that any expert opinion pertaining to the Plaintiff's *Monell* claim will not be entered into evidence in this case but contends that Fletcher specifically distinguished in his report the opinions he held as to the individual shooting of Divonte Young by Watts and those latter opinions should not be excluded. Mr. Fletcher's opinions as to the shooting of Divonte Young, which Fletcher opines was unjustified, start at page 31 of his report, Dkt. # 609-13, at Page 31 of 76.

Regarding accepted police practices on the use of force, as to 609-13 at page 48, Defendants assert that Fletcher's opinions are all infected by his view that Mr. Young was not armed. Plaintiff notes that Fletcher says even if Watts is correct that Young posed a threat, it was improper for him to continue shooting under the circumstances (residential area, distance, etc.) and Defendants respond that this opinion is not a "police-practices" opinion and in any event is not in line with national standards of police practices. The Court disagrees. Mr. Fletcher's opinion

on this limited point fits comfortably in his area of expertise and is relevant to the issues that the jury will need to decide. Therefore, Mr. Fletcher will be permitted to testify on this point.

To the extent that Defendants assert he was not seized, see the ruling as to Motion in Limine # 10.

**Motion in Limine No. 8: To bar testimony, argument, or evidence as to any failure to provide medical treatment, alleged disrespect toward Plaintiff's decedent's body by people other than Defendant Watts, including but not limited to: other officers pulling down the pants of decedent, any delay in removing decedent's body, testimony about fly eggs being laid on his body, or the amount of time the body remained on scene.**

Defendants argue that all evidence and testimony related to this type of post-shooting conduct should be barred pursuant to FRE 401, 402, and 403. They assert that the only claim these factual allegations can relate to is a claim of intentional infliction of emotional distress that Judge Gotschall dismissed on June 4, 2015 (Dkt. #108).

Plaintiff argues that the motion should be denied because the challenged evidence is highly relevant in that the evidence is offered to evaluate the reliability of the physical evidence and to test Watts's account of the shooting. For example, Plaintiff notes that on the day of the shooting, Watts told both his direct supervisor, John Lewis, and the on-scene commander, Christopher Fletcher, that the shooter was on the street near the alley. However, the next day at Watts's IPRA investigation, Watts testified that the shooter was alone and crouched behind a church. Plaintiff notes that three spent shells were located near the church, but were not spotted by Sergeant Behling, the first CPD officer to search for evidence. Further, Plaintiff asserts, evidence that officers moved and manipulated Young's body, removed or adjusted his clothing, failed to promptly secure or transport the body, and delayed protective measures such as bagging or gloving the hands, goes directly to whether the physical evidence is reliable. That, in turn, bears on the central factual dispute: whether Watts's account is accurate. Plaintiff intends to use this evidence to rebut Watts's account and to show that the physical evidence does not corroborate his version of events.

While Plaintiff may attempt to present evidence on the issues noted directly above, Defendants' motion is generally granted. Whether other officers handled Mr. Young's body in a disrespectful manner in the aftermath of the shooting is not relevant to Officer Watts's conduct at the time of the shooting. Further, evidence of the alleged mistreatment of Mr. Young's body by other officers would be unfairly prejudicial given its non-existent relevance to the matters before the jury. See Fed. R. Evid. 403.

**Motion in Limine No. 9: To bar Monell evidence and argument, including but not limited to: DOJ Report, PATF Report, evidence as to unrelated shootings, and related witnesses and arguments relating to a purported "code of silence"**

Defendants contend that Plaintiff may attempt to mention, discuss, or refer to other events regarding police misconduct, such as, but not limited to, highly publicized incidents including the

report released by the U.S. Department of Justice (DOJ) on January 13, 2017, the Police Accountability Task Force (PATF) Report released April 2016, the consent decree entered in *Illinois v. City of Chicago*, No. 17 CV 6260 (N.D. Ill.), and statements made by former Mayor Emanuel. Defendants assert that comments and implied references regarding police misconduct in other cases have absolutely no probative value and are totally irrelevant to the issues presented. Defendants also seek to bar Plaintiff from offering any testimony, evidence, or argument that police officers in general lie, conspire, cover up or otherwise maintain a "code of silence" to protect their fellow officers. Defendants assert this Court too should decline to open the floodgates to such evidence, especially since no *Monell* claim will be at issue at trial.

Plaintiff acknowledges the parties have agreed that *Monell* evidence is excluded for the purposes of trial but argues that evidence of the "code of silence," including testimony on Watts's own experience with training by the Chicago Police Department on the "blue curtain of secrecy" and what his training entailed, should be allowed. Plaintiff asserts that she should be permitted to elicit testimony that the lack of recollection by the CPD and other city witnesses is used to obscure "their inability to corroborate Watts' version of events." (Pl.'s Resp., Dkt. # 709, at 41.) According to Plaintiff, evidence or argument suggesting the existence of a "code of silence" is not offered to establish municipal liability under *Monell*, but rather to explain patterns of evasive testimony, selective memory, or coordinated lack of recollection among officers involved in the same incident. Plaintiff argues that she should "not be barred from asking witnesses questions about why they do not recall the events in question and offering alternative theories as to why the witnesses do not recall, and reminding them of the training they received."

The parties agree that references to other events regarding police misconduct, such as, but not limited to, those mentioned above will be excluded. As to the "code of silence," "[t]he Court agrees that 'in *non-Monell* cases like this one, there is no relevancy to an overarching assertion of a generalized code of silence.'" *Smith v. City of Chi.*, No. 21-CV-1159, 2025 WL 1744919, at *11 (N.D. Ill. June 24, 2025) (citation omitted and collecting cases). Further, testimony regarding whether any defendant or any other Chicago Police witness ever reported misconduct witnessed by another officer to a supervisor or other individual is barred on the basis that it is irrelevant to Plaintiff's claims and its probative value is outweighed by the danger of unfair prejudice and misleading the jury.

Plaintiff may explore general bias but may not use the term "code of silence" or "blue curtain of secrecy" or similar terms. These topics are irrelevant to the excessive force claim and the probative value of these as to the excessive force claim is substantially outweighed by the risk of unfair prejudice.

**<u>Motion in Limine No. 10: To bar questions about the type of ammunition Defendant Watts used; bar testimony/argument about the "maximum effective range" of Watts's firearm; concern for killing someone else; recklessness</u>**

Defendants note that Plaintiff's complaint refers to Defendant Watts firing 15 shots, that the "area that Officer Watts sprayed with approximately 15 bullets, hitting and killing Divonte Young, was an urban area of the City of Chicago where other individuals were so gathered." (4th

Am. Compl., Dkt. 78, ¶¶ 20, 21.) Further Plaintiff alleges that Officer Watts "wildly" shot his gun. (*Id.* ¶ 23.) Defendants contend that all this evidence or suggestion that Watts was reckless or fired too many shots should be barred. Plaintiff opposes this motion, asserting that "[t]he number of shots, the manner in which Watts fired, the direction of his gunfire, the distance involved, and the danger posed to others in the area are all part of the surrounding circumstances the jury is entitled to consider in deciding whether his conduct was objectively reasonable." (Pl.'s Resp., Dkt. # 709, at 44.)

Defendants also assert that the fact that Watts fired multiple shots is of no moment to these proceedings either because even Plaintiff conceded that Divonte Young was shot in the back as he fled from Watts, demonstrating that none of these shots, except for one that struck him, seized him, citing *Higuera v. City of Chicago et al.*, 1:22 -CV-00963, at *10 (N.D. Ill Mar 9, 2026) (Seeger, J.) (holding that a foot chase itself cannot give rise to a claim because the foot chase itself is not a seizure when decedent was running from Defendant officers before being shot). Plaintiff notes the proper deadly force analysis requires looking at the totality of circumstances, citing *Barnes v. Felix*, 605 U.S. 73, 76, 80 (2025) (the totality inquiry "has no time limit"). The Court agrees with Plaintiff. In any event, it does not appear clear to the record which shot may have been the fatal one. Accordingly, this argument by Defendants is denied.

To the extent Defendants seek to exclude evidence regarding other individuals in the area, the motion is denied. An excessive/deadly force inquiry requires the jury to consider all the facts and circumstances at the time of the shooting.

Objections to comments characterizing Watts's shooting being "reckless" or that he "wildly" fired his weapon will be considered at the time of trial.

Finally, Plaintiff may seek to introduce that fact that the ammunition used by Watts was "jacket hollow-point bullets" or that the bullets that he used were designed to cause more damage to the target they strike. Watts testified in his deposition that the ammunition that he used was supplied by the department and he was not given a choice as to the type on ammunition. Plaintiff asserts it is relevant to the reasonableness inquiry. The Court agrees with Defendants that, unless Plaintiff can establish during trial that the type of bullet or gun is relevant to the deadly force analysis, this evidence will be excluded.

**<u>Motion in Limine No. 11: To bar argument that implies that Defendant Watts was at fault for lacking body worn camera</u>**

Plaintiff asserts that she does not intend to argue that Watts violated any policy or acted improperly by not wearing a camera; rather, the question is relevant to the jury's understanding of the evidentiary record, including why no video evidence exists of the incident. The Court agrees that simply providing the jury with this fact and allowing Watts to testify that that body worn cameras were not in use or not required at the time of the incident is appropriate; no other questions, reference, or argument as to why Watts was not wearing a body-worn camera are allowed. Defendants' motion is denied in part and granted in part, as stated herein.

**Motion in Limine No. 12: To bar evidence of other civil complaints, lawsuits, citizen complaints, disciplinary histories, or other claims against Defendant Watts or any police personnel who may testify.**

Plaintiff opposes the motion, asserting that Watts never identifies what specific prior incident they are talking about, other than Austell (see Defendants' MIL # 29), never explains whether the unidentified incidents are similar or dissimilar to the issues here, never addresses timing, and never explains what non-propensity use Plaintiff might seek to admit such evidence. According to Plaintiff, "Rule 404(b) does not permit a party to win a blanket exclusion simply by declaring that every possible use of every prior complaint or lawsuit must be propensity evidence." (Pl.'s Resp., Dkt. # 709, at 49.)

The Court agrees and absent argument about specific incidents, Defendants' motion is denied.

**Motion in Limine No. 13: To bar evidence of unrelated misconduct by any CPD witness or that other officers committed misconduct in this incident**

Watts asks the Court to bar "any testimony, evidence, argument, or innuendo" that any non-Defendant officer, CPD personnel, or any other City employee "engaged in any misconduct or caused any injury" to Plaintiff or decedent "in any manner." (Defs.' Mot., Dkt. # 706, at 34.) According to Defendants, to allow any testimony or argument with regard to an alleged injury caused by another City of Chicago Police Officer or other City of Chicago employee invites the jury to find against Defendants if they wanted to compensate Plaintiff for any such alleged injury and/or to punish Defendants for the alleged actions of another individual that do not relate to the claims in this lawsuit. Plaintiff asserts the motion should be denied, or at a minimum, narrowed, because it is vague, overbroad, and aimed at excluding relevant evidence under the label of "misconduct," the language is so broad it could cover almost anything, and does not identify what specific evidence Watts actually seeks to exclude. Plaintiff asserts that she considers this motion to include many areas of "misconduct." "Flipping the body, pulling clothing down, handling the scene without gloves, failing to preserve evidence, and witness lying and deception are not all the same thing. Some of that evidence goes to Plaintiff's allegations about the treatment of Divonte's body after the shooting. Some goes to negligent handling and contamination of evidence. Some goes to credibility and impeachment; Watts does not sort any of that out." (*Id*. at 53.)

According to Plaintiff, the misconduct on which they seek to elicit testimony regarding the handling of Mr. Young's body after the shooting, the Court finds this wholly irrelevant to the claim at issue and is barred by Rule 403 for the reasons already noted. Further, to the extent that Plaintiff seeks to offer evidence as to the possible source of PGSR through mishandling of the crime scene or Mr. Young's body, this type of evidence is also barred. As previously noted, Mr. Balash's theory on the transfer of PGSR from an officer to Mr. Young is purely speculative as opinion. Therefore, any questioning on this point is not relevant and may lead to jury confusion. The same conclusion applies to the purported movement of the shell casings, which creates jury confusion, particularly in light of the contradiction between Mr. Balash's opinion on the ejection pattern of the bullets and Mr. Davis's testimony on the changing location of the shell casings. Plaintiff contends that they are entitled to challenge on cross-examination the credibility of witnesses or evidence that

Defendants put forth, and the Court agrees. The Court will rule on any specific objections in the context of trial.

**Motion in Limine No. 14: To bar evidence or argument regarding other publicized incidents of alleged police misconduct**

Plaintiff states she does not anticipate bringing into evidence unrelated publicized incidents of police misconduct. However, if Defendant Watts touches upon the lack of police misconduct generally or attempts to dissuade the jury from finding for the Plaintiff based on any publicized incidents, Plaintiff may be permitted to counter such arguments. The motion is granted as set forth herein.

**Motion in Limine No. 15: To bar evidence, testimony or argument that Defendant Watts or any other police personnel violated any CPD general orders, special orders, rules and Regulations**

Defendant Watts seeks to prohibit mention of any violation or deviation from any police general order, special order, directive, rule or regulation of the Chicago Police Department, noting that "[i]ntroduction of evidence relating to any alleged violation of General Orders would also be improper because 'the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established.'" *Thompson v. City of Chi.*, 472 F.3d 444, 454 (7th Cir. 2006). Plaintiff states the request is overbroad and unnecessary, noting that "[s]ince *Thompson* . . . [the Seventh Circuit has] clarified that there is no per se rule against the admission of police policies or training." *United States v. Proano*, 912 F. 3d 431, 439 (7th Cir. 2019); *see also Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) ("[A]lthough violation of the prison's rule against public searches was not, by itself, a violation of the Constitution (citing *Whitman v. Nesic*, 368 F. 3d 931, 935 n.1 (7th Cir. 2004)), it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass."). Plaintiff also points to the Seventh Circuit Pattern Jury Instruction on this issue:

> You have heard evidence about whether Defendant's conduct [complied with/violated][a state statute/administrative rule/locally imposed procedure or regulation].
>
> You may consider this evidence in your deliberations [as to [identify claim]]. But remember that the issue is whether Defendant [describe constitutional violation claimed, e.g., "falsely arrested Plaintiff," "used excessive force on Plaintiff]", not whether a [statute/rule/procedure/regulation] might have been [complied with/violated].

7th Cir. Pattern Instruction 7.04 Limiting Instruction Concerning Evidence of Statutes, Administrative Rules, Regulations, and Policies

Without specific identification of a rule, regulation, or policy, including how it will be used, this issue must be reserved for trial. The motion is denied without prejudice to renewing in the context of trial.

**Motion in Limine No. 16: To bar any comment on Defendant's failure to call witnesses or produce evidence**

Noting that Federal Civil Jury Instructions of the Seventh Circuit 1.18 states that, "[t[he law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial," Defendants ask the Court to bar Plaintiff, her counsel, and her witnesses from conveying to the jury that by choosing not to call a particular witness or present certain evidence, Defendants are trying to hide unfavorable evidence or that it reflects poorly on Defendants' case. Defendants further argue that the burden of proof rests with Plaintiff and not Defendants, and they are under no obligation to present any evidence at all.

Plaintiff contends that a blanket exclusion regarding a failure to call a witness is uncalled for. *See Ledford v. Lamartz*, 462 F. Supp. 3d 905, 912 (N.D. Ind. 2020) ("Before a party can argue to the trier of fact that an adverse inference should be drawn from another party's failure to call a witness, the complaining party must establish that the missing witness was peculiarly in the power of the other party to produce. This can be shown in two ways: (1) that the witness is physically available only to the opponent; or (2) that the witness has a relationship with the opposing party that practically renders his testimony unavailable to the moving party.") (citation omitted).

"[W]hen the witness is equally available to both sides, the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non-evidence." *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992). Without reference to a specific witness, the Court is unable to properly address the motion. The Court will enforce applicable Seventh Circuit case law, as needed; the motion is denied pending renewal in the context of trial.

**Motion in Limine No. 17: To take the City of Chicago off the verdict form**

This motion is granted as agreed.

**Motion in Limine No. 18: To bar Pastor Curtis Malone as a Witness**

Defendants seek to exclude Pastor Malone, stating that if Plaintiff only wants to call Pastor Malone to discuss that Divonte Young was a good person who attended church and played in the church band, then that testimony itself should be barred as improper bolstering. *See Martinez v. City of Chi.*, No. 14-cv-369, 2016 WL 3538823 *16 (N.D. Ill June 29, 2016) ("'Bolstering' is the practice of offering evidence solely for the purpose of enhancing a witness's credibility before that credibility is attacked. Such evidence is inadmissible because it 'has the potential for extending the length of trials enormously, . . . asks the jury to take the witness's testimony on faith, . . . and may . . . reduce the care with which jurors listen for inconsistencies and other signs of falsehood

or inaccuracy.") (citation omitted). Defendants state they do not intend to admit any evidence that decedent was of bad character.

Plaintiff opposes the motion, asserting that Pastor Malone will not testify generally to Plaintiff's good character, but as a damages witness who will testify as to Divonte's life, plans, relationships, and the loss caused by his death. The Court notes that Defendants' reference to Plaintiff's failure to identify Malone as an incident witness in her Rule 26(a)(1) disclosures is unavailing; as Plaintiff notes, Defendants cannot claim surprise because they contacted Pastor Malone, apparently prompting him to write a letter to the City on May 12, 2015.

The motion is denied as premature. The Court takes note of both parties' positions. Defendants may renew the objection in the context of trial.

**Motion in Limine No. 19: To bar attorneys from conferring with witnesses while the witness is on the stand**

Defendants request that once a witness is called to testify, no attorney shall confer with that witness, who is under oath, about his or her trial testimony, until the termination of the testimony. Plaintiff opposes the motion on several grounds: (1) prohibiting attorney-witness communication during recesses conflicts with common practice and raises concerns about effective representation, as attorneys must be able to clarify testimony, identify relevant documents, prepare for anticipated cross-examination, address witness concerns, and manage logistics; (2) Watts ignores the distinction between improper coaching and permissible communications, such as discussing procedure, clarifying questions, reviewing documents, preparing for upcoming topics, and handling logistics; (3) Watts cites no authority supporting the sweeping prohibition he seeks; (4) Federal Rule of Evidence 615 and applicable case law provide remedies for improper coaching, rendering Watts's proposed blanket prohibition unnecessary and potentially harmful; and (5) prohibiting overnight consultations is particularly unjustified because there is no legitimate basis to prevent counsel from preparing witnesses for continued testimony.

The Court grants Defendants' motion in part. Generally, coaching or discussions during breaks or recesses with witnesses who are on the stand is inappropriate and will not be allowed. *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) ("Coaching and private conferences (on issues other than privilege) that would be inappropriate during trial testimony are not excused during a deposition merely because the judge is not in the room."). If testimony spans more than one day and counsel seeks to speak with a witness during a break, the parties may raise the issue outside the presence of the jury.

**Motion in Limine No. 20: To bar evidence that Defendant Watts may be indemnified**

Defendants state they anticipate Defendant Officer Watts putting forth an inability to pay defense to punitive damages, but if no inability to pay defense is presented, then Defendants move to bar Plaintiff from presenting evidence or arguing that the City of Chicago is insured, is providing a defense to Watts, and will indemnify him against any judgment.

Plaintiff asserts that the law is clear that Watts cannot have it both ways: if he asserts financial inability to pay punitive damages then Plaintiff must be allowed to tell the jury that he is indemnified by the City on any judgment against him for compensatory damages. *See* Seventh Circuit Pattern Jury Instruction 7.28 (Defendant's financial condition omitted from factors unless evidence is admitted on that topic). In general, courts bar evidence of indemnification because it may encourage juries to inflate compensatory damages awards. *See Patterson v. City of Chi.,* No. 15-CV-4139, 2017 WL 770991, at *5 (N.D. Ill. Feb. 28, 2017) ("In general, courts bar evidence of indemnification because it may encourage juries to inflate compensatory damages awards," but allowing Plaintiff to "introduce evidence of the City's indemnification if Defendants 'open[ ] the door by presenting evidence of their financial condition' with respect to punitive damages."); *see also Smith*, 2025 WL 1744919, at *11 ("[T]he Officers' request to bar any reference to indemnification is granted with the understanding that the Court will revisit this request if any of the Officers testify as to their financial condition and inability to pay.").

The Court grants Defendants' motion to bar any reference to indemnification with the understanding that the Court will revisit this request if Watts testifies as to his financial condition and inability to pay. If punitive damages are at issue and Watts's ability to pay is at issue, the Court will require a jury instruction that makes the distinction clear to the jury.

**Motion in Limine No. 21: To bar reference that Defendant Watts and other Chicago Police Officers are being paid to prepare for trial and to testify, and that they have received training in how to testify**

Plaintiff identified multiple Chicago police officers as witnesses that she will call and may call in this case and have requested that defense counsel produce those witnesses at trial. Defendants argue that it would be disingenuous for Plaintiff to then elicit testimony from these officers that they are being paid for their time spent in court. Defendants request that Plaintiff be barred from arguing that their testimony is somehow being provided in exchange for money because it is irrelevant and unduly prejudicial. *See, e.g.*, *Dyson v. Szarzynski,* No. 13 CV 3248, 2014 WL 7205591, at *8 (N.D. Ill. Dec. 18, 2014) (Defendants' "motion is granted insofar as it seeks to bar Dyson from arguing or insinuating at trial that the officers are providing testimony in change for payment from the City."). Plaintiff opposes the motion, objecting on the grounds that it is overbroad because Defendants also seek to preclude questions regarding any "training" the officers received as part of their employment about testifying.

Defendants' motion is granted insofar as it seeks to bar Plaintiff from arguing or insinuating at trial that the officers are providing testimony in change for payment from the City, but denied to the extent Plaintiff poses questions regarding general training the officers received. The Court is concerned with relevance, and the Court will give a short leash on this topic, if it comes up. The Court will address the matter more fully at trial.

**Motion in Limine No. 22: To bar argument that jurors are the "guardians of the community" or otherwise tasked with protecting the public**

Defendants seek to bar any argument that a jury should decide the case based on their self-interest or the interest of the community at large as it would violate the "golden rule" about putting themselves in the position of the party. *See, e.g.*, *Spray-Rite Serv. Corp. v. Monsanto Co*., 684 F.2d 1226, 1246 (7th Cir. 1982) (explaining that the "Golden Rule" appeal "is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence") (internal quotations omitted). Plaintiff opposes the motion, asserting that "jury arguments that Constitutional remedies serve important societal purposes, that holding Watts accountable serves to ensure future Constitutional compliance, and arguments about the importance of Constitutional protections are generally proper." Plaintiff cites to no caselaw in support.

Defendants' motion is granted to the extent it requests to exclude argument that "encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." That being said, the Court will address the nuances this topic presents at the time of trial. By example, if Plaintiff's counsel argued that this is an important case for the jury to resolve to solve the issue of police misconduct, the Court would likely not allow such an argument, but an argument that Mr. Young's family comes to the Court to seek redress and the jury's role is to decide whether they are entitled to it is fairly within the bounds of proper argument

**Motion in Limine No. 23: To bar arguments of alleged discovery failures by Defendants from being raised before the jury**

Defendants move to exclude arguments that defendants have not complied with or been diligent regarding discovery requests. Defendants argue that discovery disputes are matters for the Court to resolve through appropriate sanctions if warranted and are not proper subjects for jury consideration and do not relate to the underlying claims. Plaintiff opposes the motion on the grounds that it is vague, overbroad, and premature, and Watts does not identify the specific evidence, testimony, or argument they seek to exclude.

The Court agrees that it is vague but also agrees that references to discovery failures are irrelevant and will only seek to place attention on matters outside of the jury's purview. This motion is granted. The Court notes that any issues regarding discovery and how that might be raised before the jury must be cleared with the Court first outside the presence of the jury.

**Agreed Motion in Limine No. 24: To bar witnesses other than parties, from the courtroom prior to their testimony**

This motion is granted as agreed.

**Motion in Limine No. 25: To bar argument that Defendants allegedly delayed this trial or that Plaintiff has waited a long time for her day in court**

Plaintiff opposes the motion on the grounds that it is overbroad, and the passage of time will be obvious and cannot be ignored. But this does not respond to Defendants' motion, which is

to bar Plaintiff from arguing that the length of time this case took to get to trial is Defendant Watts's fault.

Defendants' motion is granted. While Plaintiff may acknowledge the passage of time, she may not argue or imply that the lengthy passage of time was due in any way to Defendant Watts.

**Motion in Limine No. 26. To bar evidence or argument that Defendant Watts or any other City employee was racially motivated**

Defendants move to exclude all evidence, testimony, and argument suggesting that the incident was racially motivated or that Defendant Officer Watts's actions were based on the race of the Plaintiff's decedent because such "'appeals to racial passion can distort the search for truth and drastically affect a juror's impartiality.'" *Dyson*, 2014 WL 7205591, at *8 (granting motion because Plaintiff acknowledged he is without evidence of racial bias) (citation omitted). Plaintiff opposes the motion, asserting that Defendants will likely characterize the neighborhood as violent or where shots were frequently heard, and "Plaintiff should not be precluded from responding with fair context or arguing reasonable inferences the jury may draw from the way the area, the people in it, and Divonte himself were perceived." In addition, Plaintiff states that after Divonte Young was shot, officers purportedly left his body uncovered in the alley for hours, with his pants and underwear pulled down, while his body was exposed and disturbed. (Dkt 78 ¶¶ 30-34.) According to Plaintiff, that evidence is independently relevant, and "[i]f the evidence at trial supports an inference that race may have informed the indifference or devaluation reflected in that treatment, Plaintiff should not be precluded in advance from asking the jury to consider that inference." (Pl.'s Resp., Dkt. # 79, at 72-73.)

If Plaintiff has evidence of racial bias at this time, she should know what it is and whether she will be attempting to admit it. Without any specific evidence in hand to support Plaintiff's assertion, Defendants' motion is granted on the ground that the probative value of any such testimony or argument is substantially outweighed by the danger of unfair prejudice and confusing the issues. If Plaintiff believes a basis exists to raise the issue at trial, she may request the Court to reconsider its ruling, but only outside the jury's presence.

**Motion in Limine No. 27: To bar email re: relative of Illinois State Police employee and why the case was transferred to Joliet**

Defendants state that during discovery in this case, an email was exchanged between certain members of the Illinois State Police regarding the forensic testing of certain items of evidence that were recovered. (8/10/12 email, attached to Defs.' MILs as Ex. D, Dkt. # 706-3.) The email states that the case "involves a relative of a FSC-C" and that the evidence would then be examined and tested in Joliet rather than Chicago. During discovery, nobody was able to determine who the person is or was. Defendants seek to exclude the email. Plaintiff states she will not seek to introduce the email itself, but if witnesses from the Illinois State Police testify for Watts, she would like to question those employees about the email.

Because neither party will seek to admit the email, the motion is denied as moot. Any anticipated questions by Plaintiff regarding the email must be raised before the Court outside the

presence of the jury. Given the unanswered nature of this issue, the Court does not favor allowing questioning on a topic that is seemingly irrelevant, and unguided questioning may result in irrelevant or improperly prejudicial testimony at trial.

**Motion in Limine No. 28: To bar evidence or argument that the post-shooting investigation was insufficient**

Defendant Watts believes Plaintiff intends to introduce evidence or raise arguments that the investigation conducted by the Chicago Police Department into Divonte Young's shooting was insufficient, improper, or unlawful. Such evidence is immaterial to the claim that Defendant Watts improperly shot Divonte Young, and to the extent it is relevant, Defendants argue the probative value is substantially outweighed by the danger of unfair prejudice and jury confusion. For example, Defendants note, Chicago Police conducted its own investigation into Divonte Young's shooting and, as part of that investigation, deployed various people to secure the scene, document it in photographs and other means, and collect evidence. Defendant Watts anticipates that Plaintiff will seek to argue, among other things, that it was somehow problematic that John Zalewski, one of the people who collected evidence, was an evidence technician rather than a forensic investigator. Plaintiff has listed five exhibits, 7-10, and 13, to address this point. Defendants further note that Plaintiff proposes to introduce various photos from the aftermath of the scene, including multiple pictures of Young's body and pictures of bullet strikes. *See* Plaintiff's proposed trial exhibits 40-51. Defendant Watts contends that even if the evidence is relevant, which he argues it is not, the evidence should be excluded because any probative value is substantially outweighed by the danger of prejudice, cumulativeness, and jury confusion. Defendant Watts contends exclusion is proper because he had no influence or involvement in what the CPD employees who investigated the aftermath of Divonte Young's shooting did. By extension, Defendant Watts requests that the Court limit testimony by the following witnesses: John Zalewski (an evidence technician who was at the scene and performed testing of Divonte Young's body for gunshot residue); Marvin Otten (a forensic investigator who helped create a scan of the shooting scene), Lorenzo Sandoval (a CPD detective), and James Scannell (another CPD detective). Watts requests that the Court limit their testimony/questioning to their involvement and bar any implication that there was misconduct.

Plaintiff opposes the motion, arguing that evidence from the investigation should be allowed because "Watts not only benefited from the corrupt investigation but was a willing participant in the purportedly corrupted investigation." (Pl.'s Resp., Dkt. # 709, at 75.) Plaintiff asserts that Watts changed his initial account as to how this shooting transpired to correspond with the story fabricated by investigators, including the spent shell evidence that Plaintiff suggests was planted at the scene. According to Plaintiff, "If Watts is allowed to put into evidence that PGSR was collected from Divonte's hands, Plaintiff must be allowed to show that the technician, Zalewsky, was not competent. In the same vein, Plaintiff should be allowed to utilize the testimony of forensic investigator Otten, who was duly trained and at the scene but not asked to collect the PGSR." (*Id.* at 76.) Plaintiff asserts that

> the evidence of the investigation is relevant not only to the integrity of the investigation but also to witness credibility, rebuts Watts' narrative, and supports Plaintiff's theory of the case. Plaintiff

> intends to use all of the evidence to demonstrate that the physical evidence does not reliably corroborate defendant Watts' version of events and undermines claims that Divonte fired a weapon, while supporting Plaintiff's contention that Watts' new account during the IPRA interview was shaped to align with the fabricated investigation.

(*Id*. at 78.)

Everything up until "the fabricated investigation" will be allowed. Court noted difference between a "fabricated" investigation and a "sloppy" investigation. Pursuant to the discussion in open court, the Court may allow some questions on a "sloppy" investigation, but not a fabricated one. The Court reserves a specific ruling for any objection made in the context of trial.

**Motion in Limine No. 29: To bar testimony of Marshawn Austell and Plaintiff's Exhibit 72**

Defendants move to bar Plaintiff's witness Marshawn Austell and the related Exhibit No. 72 as improper character evidence and propensity evidence under Fed. R. Evid. 404 and 408 and further as irrelevant and unduly prejudicial under Fed. R. Evid. 401 and 403. According to Defendants:

> Austell alleged that on June 17, 2010, during the execution of a search warrant, unknown officers beat him and strip searched him. Multiple officers were on scene, including Defendant Officer Watts, and Austell did not ever identify the officer or officers who allegedly committed these acts. Following an investigation, the Independent Police Review Authority determined that the allegations were "not sustained" and the allegations always remained against "unknown officers."

(Defs.' Mots. Limine, Dkt. # 706, at 48.) Defendants refer to the following four-pronged test for admitting propensity evidence under Rule 404(b), and assert that Plaintiff fails the first prong:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

*United States v. Asher*, 178 F.3d 486, 492 (7th Cir. 1999). Defendants assert that the allegations by Austell are not similar to the facts of this case since they involve the execution of a search warrant, an alleged physical beating, and the search itself, as opposed to the discharge of a firearm. Moreover, Defendants note, it was never established that Defendant Watts was one of the officers who engaged in the conduct. In addition to being improper propensity evidence, Defendants assert

that the probative value of this evidence is far outweighed by the danger of unfair prejudice. Finally, Defendants assert that presenting this witness is a waste of time and judicial resources.

Plaintiff contends that after chasing Austell into the house, beating him, and doing a cavity search on him, "the officers" asked him why he ran if he didn't have a gun or drugs, and after explaining he was scared from his prior experience, Austell "was told" that being "jumpy" like that was "stupid… We could have killed you or shot you…." But Plaintiff never responds to Defendants' contention that Watts was not identified as one of the officers who participated in the beating or that Watts made the relevant comments to Austell. According to Plaintiff, the Austell incident "demonstrates a predisposition to interpret ambiguous conduct—such as flight—as justification for the use of significant, even deadly, force," and "is not offered to show propensity, but rather to establish intent, absence of mistake, and the officer's subjective interpretation of perceived threats." (Pl.'s Resp., Dkt. # 709, at 80.) Plaintiff further asserts that any potential for misuse by the jury can be adequately mitigated through a limiting instruction directing the jury to consider the evidence solely for permissible purposes such as intent, knowledge, or absence of mistake, and that the Austell complaint bears on Watts's credibility and "reveal[s] a bias toward viewing civilians as inherently suspect and deserving of forceful treatment when they do not immediately comply." (*Id.*)

Plaintiff's position is unavailing. The current case is based on Watts's use of deadly force after being in the vicinity of shots fired, not an alleged beating. Watts does not argue that he fired because Divonte Young was running, but because he perceived Young to be firing a weapon in his direction. Defendants' motion to exclude any testimony, argument, or evidence as to Marshawn Austell is granted; the evidence is irrelevant, violates Rule 404(b), and any probative value is substantially outweighed by the danger of under prejudice.

**<u>Motion in Limine No. 30: To bar argument that the City should be punished or that the jury should send a message to the City with the verdict</u>**

Defendants contend that although the City is a defendant, as a matter of law, Plaintiff cannot recover punitive damages from it in this case, *see* 745 ILCS 10/2-102, and sending a message or punishment cannot form the basis for any damages other than punitive damages. *See Cobige v. City of Chi.,* No. 06 CV 3807, at Dkt. 215, (N.D. Ill. Jan. 14, 2010) (St. Eve, J.). Plaintiff asserts that Plaintiff can argue that a verdict would hold the City accountable for the constitutional violations of its employees and send a message that this sort of conduct will not be tolerated. Plaintiff cites *Betts v. City of Chicago*, 784 F. Supp. 2d 1020 (N.D. Ill. 2011), in which Judge Gottschall stated:

> Given that compensatory damages are limited to actual losses, this court agrees that Betts' argument that the jury should "send a message" is a punitive damages argument. Nevertheless, this court is not persuaded that Betts should not be able to argue that he is attempting to deter the defendant officers and other Chicago police officers from future misconduct. However, any argument that he would like to "send a message" to the City implies that the city has a policy or practice of condoning such misconduct, which is

> precisely the question at issue in Betts' *Monell* claim that is not being addressed in this trial. Accordingly, the defendants' motion *in limine* is granted insofar as Betts is barred from any argument that the jury should "send a message" to the City of Chicago. However, the defendants' motion *in limine* is denied insofar as Betts will be permitted to argue that he is attempting to deter the defendant officers and other Chicago police officers from future misconduct.

*Id.* at 1033; *see also Bruce v. City of Chi.*, No. 09 C 4837, 2011 WL 3471074 (N.D. Ill. July 29, 2011).

Like the arguments related to the jury's role in resolving the Young's family quest for redress, this motion will be informed at trial based on the nuance of the argument presented. Arguments such as "send the City of message" will generally not be acceptable, but arguments along the lines of "this trial is the Young family's opportunity to hold the City accountable for this type of conduct" is appropriate. Any objections as to the propriety of this type of argument should be raised at trial.

**Date:** October 8, 2026

M. David Weisman

**M. David Weisman**
**United States Magistrate Judge**